UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| TEXAS BRINE COMPANY, LLC | LEAD: CIVIL ACTION: 2:15-CV-01102 |
| PLAINTIFF | C/W   CIVIL ACTION: 2:15-CV-03324 |
| VERSUS | SEC. N: CHIEF JUDGE KURT D. ENGELHARDT |
| THE DOW CHEMICAL COMPANY, ET AL. | DIV. 1:  MAG. JUDGE JANIS VAN MEERVELD |
| DEFENDANTS | * APPLIES TO ALL CASES |

---

## DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO COMPEL

---

Respectfully submitted by:

BIENVENU, BONNECAZE, FOCO, VIATOR & HOLINGA, APLLC

By:
David M. Bienvenu, Jr., #20700
John Allain Viator, #25915
Phillip E. Foco, #25670
Lexi T. Holinga, #30096
Anthony J. Lascaro, #32546
Patrick H. Hunt, #34599
Erin Percy Tadie, #33627
4210 Bluebonnet Blvd.
Baton Rouge, LA 70809
Phone:  (225) 388-5600
Fax:  (225) 388-5622
*Attorneys for The Dow Chemical Company and Dow Hydrocarbons & Resources, LLC, and Clifton Land Corporation*

76667

# TABLE OF CONTENTS

Table of Contents ...................................................................................................1

Table of Authorities ..............................................................................................2

Introduction ...........................................................................................................3

Discussion ..............................................................................................................4

I.   TBC's responses to certain requests for admission are insufficient because they either do not respond to the substance of the question or are inconsistent with the established testimony. ...................................................................................................................5

    A.   First Set of Discovery Requests, Request for Admission number 18: TBC's response does not fairly respond to the substance of the question. ...................................6

    B.   First Set of Discovery Requests, Request for Admission number 19: TBC's response fails to respond to the substance of the request. ...................................7

    C.   Second Set of Discovery Requests, Requests for Admission numbers 1 and 2: TBC's responses interpret John Sergo's email in a way that stands in direct contrast with his own deposition testimony. ...................................8

II.  TBC's responses to certain Interrogatories and Requests for Production in Defendants' Second Set of Discovery Requests are incomplete. ...............................................11

    A.   Second Set of Discovery Requests, Interrogatory numbers 1 and 2; Request for Production number 1. ...................................12

    B.   Defendants' Second Set of Discovery Requests, Interrogatory number 4 ........................14

III. Plaintiffs' responses to Defendants' Fourth Set of Discovery Requests to Texas Brine Company, LLC and First Set of Discovery Requests to Louisiana Salt, LLC are incomplete. ...................................15

    A.   Fourth Set of Discovery Requests to TBC, Interrogatory Number 10, Requests for Production numbers 14 and 34; First Set of Discovery Requests to Louisiana Salt, LLC, Interrogatory Number 13, Requests for Production numbers 2 and 18 ...................16

    B.   Fourth Set of Discovery Requests to TBC, Interrogatory Number 21. ...........................18

    C.   Fourth Set of Discovery Requests to TBC, Interrogatory number 22; Request for Production numbers 7–12; First Set of Discovery Requests to Louisiana Salt, Interrogatory number 21, Request for Production numbers 12–17. ...................19

    D.   Fourth Set of Discovery Requests to TBC, Request for Production numbers 30, 32, 33; First Set of Discovery Requests to Louisiana Salt, Request for Production numbers 27, 29–30. ...................21

IV.  Plaintiffs are obligated to provide Defendants with a Rule 26(a)(2)(B) expert report for Wayne Sneed. ...................22

Conclusion ...................23

79061

## TABLE OF AUTHORITIES

**CASES**

*ArcelorMittal Cleveland, Inc. v. Jewell Coke Co., L.P.*, 2010 WL 5230862 (N.D. Ohio 2010) .. 12

*Bartholomew v. Avalon Capital Group, Inc.*, 278 F.R.D. 441 (D. Minn. 2011) ......................... 12

*Edwards v. City of Bossier City*, No. 15-18252, 2016 WL 3951216 ............................................. 3

*McLaughlin v. GlaxoSmithKline, L.L.C.*, 601 Fed. Appx. 312 (5th Cir. 215) ............................... 6

*Medtronic Sofamor Danek, Inc. v. Michelson*, 2002 WL 33003691 (W.D. Tenn. 2002) ............. 12

*Melchior v. Hilite Intern., Inc.*, 2013 WL 2238754 (E.D. Mich. 2013) ....................................... 12

*Neonatal Prod. Group, Inc. v. Shields*, 2015 WL 7078796 (D. Kan. 2015) ................................. 12

*Orion Power Midwest, L.P. v. Am. Coal Sales Co.*, 2008 WL 4462301 (W.D. Penn. 2008) ....... 12

*XL Specialty Ins. Co. v. Bollinger Shipyards, Inc.*, No. 12-2071, 2014 WL 295053 (E.D. La. Jan. 27, 2014). ...................................................................................................................................... 5

**RULES**

Fed. R. Civ. Proc. 26(a)(2)(B) ...................................................................................................... 20

Fed. R. Civ. Proc. 26(b)(1). ............................................................................................................ 2

Fed. R. Civ. Proc. 33(a)(2) .............................................................................................................. 2

Fed. R. Civ. Proc. 33(b)(2) .............................................................................................................. 3

Fed. R. Civ. Proc. 33. ...................................................................................................................... 2

Fed. R. Civ. Proc. 34(a)(1)(A) & (B) .............................................................................................. 2

Fed. R. Civ. Proc. 34(B)(2)(A). ...................................................................................................... 3

Fed. R. Civ. Proc. 34. ...................................................................................................................... 2

Fed. R. Civ. Proc. 36 ....................................................................................................................... 2

Fed. R. Civ. Proc. 36(a)(1)(A). ....................................................................................................... 6

**OTHER AUTHORITIES**

Black's Law Dictionary (8th Edition 2004) .................................................................................... 6

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL

### INTRODUCTION

Texas Brine Company filed this lawsuit on April 7, 2015 seeking damages in connection with the proximity of the Dow 18 solution mining well cavern owned and operated by The Dow Chemical Company and Dow Hydrocarbons & Resources, LLC to property then-owned by Texas Brine Company.  From the inception of this litigation, a critical issue has been whether Texas Brine Company's claim is prescribed.  Defendants filed a motion for summary judgment raising the issue of prescription, arguing that an email from TBC's Manager of Wells to TBC's President should have been sufficient to commence the running of prescription.  This motion was denied because the Court, "on the showing made" was not "convinced that TBC was required, *as a matter of law*, to file suit against Dow on or before March 26, 2015."[1]  Nevertheless, Defendants maintain that this lawsuit is prescribed and intend to raise the issue at trial.  Accordingly, much of the discovery in this case to this point has been tailored to identifying the date TBC discovered in the information that led to filing this case.

This motion to compel is focused on Plaintiffs' insufficient responses to discovery requests in the First, Second, and Fourth sets of Discovery issued to Texas Brine Company, LLC, and the First Set of Discovery Requests issued to Louisiana Salt.  Throughout the discovery process, Plaintiffs have attempted to provide as little information as possible, while continuing to push off their obligation to provide documents responsive to these requests.

The parties have held multiple telephone conferences in an attempt to resolve the disputes presented herein.  Additionally, Defendants sent written correspondence dated July 14, 2017, July 27, 2017, August 9, 2017, and August 28, 2017, laying out Defendants' position regarding these

---

[1] Rec. Doc. 111 at p. 12.

issues.[2]  On September 18, 2017, Plaintiffs responded in letter form to Defendants' August 28, 2017 correspondence.[3]  Notably, Plaintiffs' did not produce a single additional document with their September 18, 2017 letter. Rather, Plaintiffs generally concluded that their prior responses were adequate or advised that they would continue to search for and evaluate whether they have additional responsive information.  At this point, with the November 3, 2017 deadline for Defense expert reports quickly approaching, Defendants cannot wait any longer to move to compel these responses.  Accordingly, Defendants move for an order compelling Plaintiffs to respond to the below discovery requests, for the reasons that follow.

## DISCUSSION

The Federal Rules of Civil Procedure generally allow for broad discovery, permitting discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense."[4] Parties may propound interrogatories,[5] requests for production,[6] and requests for admission.[7] Pursuant to Rule 33, an "interrogatory may relate to any matter that may be inquired into under Rule 26(b)."[8] "A party may under Rule 34 "serve on any other party a request within the scope of Rule 26(b) . . . to produce . . . any designated documents or electronically stored information . . . or any designated tangible things" that are within the "party's possession, custody, or control."[9]  Rule 34's definition of "possession, custody, or control includes more than actual possession or control of the materials; it also contemplates a party's legal right or practical ability

---

[2] Exhibit E, Email correspondence from Patrick Hunt to Eric Blevins et al, *in globo*; Exhibit F, Letter from Patrick Hunt to Jim Garner et al. (Aug. 28, 2017).
[3] Exhiibt G, Letter from TJ Madigan to John Viator et al. (Sept. 18, 2017).
[4] Fed. R. Civ. Proc. 26(b)(1).
[5] Fed. R. Civ. Proc. 33.
[6] Fed. R. Civ. Proc. 34.
[7] Fed. R. Civ. Proc. 36.
[8] Fed. R. Civ. Proc. 33(a)(2).
[9] Fed. R. Civ. Proc. 34(a)(1)(A) & (B).

to obtain the materials from a nonparty to the action."[10] A party is required to "make a reasonable search of all sources reasonably likely to contain responsive documents."[11] Both Rule 33 and Rule 34 require the responding party to serve its answers within 30 days of being served.[12]

Federal Rule of Civil Procedure 37(a)(4) provides that "an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer or respond." Rule 37(a)(1)-(3) provides that a party may move for an order compelling discovery responses if another party fails to produce documents as requested if the requesting party has given notice to all affected persons and has conferred in good faith the with party failing to produce discovery "in an effort to obtain it without court action." The party resisting discovery bears the burden of demonstrating how each request is not relevant or is otherwise objectionable. Defendants, pursuant to Rule 37, move for an order compelling Plaintiffs to completely respond to, or supplement responses as needed, the following requests.

## I. TBC's responses to certain requests for admission are insufficient because they either do not respond to the substance of the question or are inconsistent with the established testimony.

A party can serve requests for admission under Rule 36, requesting the truth of any matters within the scope of Rule 26(b)(1), relating to the facts, the application of law to the facts, or opinions about either. The answer to a request for admission "must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it." "A denial must fairly respond to the substance of the matter; and when good faith requires that a party qualify an answer or deny only a part of a matter, the answer must specify the part admitted and qualify or deny the rest." Rule 36(a)(6) authorizes a party to move for a determination as to the sufficiency of a party's

---

[10] *Edwards v. City of Bossier City*, No. 15-18252, 2016 WL 3951216, at *3 (W.D. La. July 20, 2016), citing, *White v. State Farm Mut. Auto. Ins. Co.*, 2011 WL 3423388 (M.D. La. Aug. 4, 2011).
[11] *Id.*
[12] Fed. R. Civ. Proc. 33(b)(2); Fed. R. Civ. Proc. 34(B)(2)(A).

response or objection.  If the Court determines that the answer does not comply with Rule 36, the matter may be deemed admitted or the Court may order an amended answer.

### A. First Set of Discovery Requests, Request for Admission number 18: TBC's response does not fairly respond to the substance of the question.

Request for Admission number 18 sought an admission that the cavern outline for Dow 18 on the Ratigan Map was identical to the cavern outline for Dow 18 shown on the map attached to TBC's Complaint:[13]

**REQUEST FOR ADMISSION NO. 18:**

> Please admit that the outline of the cavern associated with Dow Well #18 shown on the map contained in Exhibit 1 to your original petition is identical to the outline of the cavern associated with Dow Well #18 on the map contained in Appendix D to the report entitled "Proximity of Class II and Class III Well Caverns to the Edge of the Napoleonville Salt Dome (PB-0374)" dated July 2013.

**RESPONSE TO REQUEST FOR ADMISSION NO. 18:**

> Denied as written; the maps are not identical.

TBC's response denied the request as written, noting that the maps are not identical.[14] In response to an interrogatory in Defendants' Fourth Set of Discovery Requests, TBC explained that the TBC map was generated from "two sources: 1) a data file provided by Joe Ratigan previously used in a 2013 report generated by Joe Ratigan, entitled 'Proximity of Class II and Class III Well Caverns to the Edge of the Napoleonville Salt Dome' (the 'Ratigan Report'); and 2) an 'Assessed Ownership Plat' previously produced as TBC-1553."[15] In recent correspondence, TBC acknowledged that "the images of the cavern outlines on both the map attached as Exhibit 1 to the original complaint and the map contained in Appendix D to the Ratigan Report are the same (since

---

[13] Exhibit A, Texas Brine Company's Responses to Defendants' First Set of Discovery Requests, p. 11.
[14] Exhibit A, Texas Brine Company's Responses to Defendants' First Set of Discovery Requests at p. 11.
[15] Exhibit C, Texas Brine Company's Responses to Defendants' Fourth Set of Discovery Requests at p. 10.

the outlines in each derive from the data file used by Joe Ratigan in the Ratigan Report)….”[16] Despite this admission, TBC has not supplemented its response to Request for Admission number 18.   Further, TBC posited that, because it contends both maps fail to accurately depict the proximity of Dow 18 to the southern property line, this request is irrelevant and TBC intends to supplement its response to this end.[17]

Respectfully, TBC has admitted that the cavern outline in both maps is identical. Because there is no ambiguity as to what TBC's response should be, the inquiry should stop there.  Where the request for admission is not vague or ambiguous, or where a party does not claim an inability to respond to a request for one reason or another, Rule 36 does not contemplate a response with qualifying language.[18]  Accordingly, Defendants request this Court issue an order compelling TBC to supplement its response to Request for Admission number 18.

### B. First Set of Discovery Requests, Request for Admission number 19: TBC's response fails to respond to the substance of the request.

In Request for Admission number 19, Defendants requested that TBC admit that it had knowledge that the cavern of the Dow Well # 18 had been mined to within approximately one foot of TBC's property line on or before July 26, 2013:[19]

---

[16] Exhibit G, Letter from TJ Madigan et al to John Viator et al (Sept. 18, 2017) at p. 2.
[17] Exhibit G, Letter from TJ Madigan et al to John Viator et al (Sept. 18, 2017) at p. 2.
[18] *XL Specialty Ins. Co. v. Bollinger Shipyards, Inc.*, No. 12-2071, 2014 WL 295053, at *4–*5 (E.D. La. Jan. 27, 2014).
[19] Exhibit A, Texas Brine Company's Responses to Defendants' First Set of Discovery Requests at p. 12.

**REQUEST FOR ADMISSION NO. 19:**

Please admit that Texas Brine Company, LLC had knowledge that the cavern of Dow Well #18 (Serial No. 971667) had been solution mined to within approximately one foot of Texas Brine Company, LLC's property line on or before July 25, 2013.

**RESPONSE TO REQUEST FOR ADMISSION NO. 19:**

Denied as written.  TBC objects to the term "knowledge" as vague, ambiguous, and calling for a legal conclusion.

TBC's response fails to comply with Rule 36 for several reasons. First, TBC's response does not fairly respond to the substance of the request, as it does not even attempt to answer the Request. Second, the term "knowledge" is not vague.  Black's Law Dictionary defines "knowledge" as "having an awareness or understanding of a fact or circumstance."[20] Knowledge, for the purpose of prescription, is "whatever notice is enough to excite attention and put the injured party on guard and call for inquiry."[21] Finally, TBC's objection to Request 19 on the grounds that it calls for a legal conclusion completely overlooks the scope of Rule 36.  In addition to requesting the truth of certain facts, a party may request an admission as to "the application of law to fact."[22] Because TBC's response to Request for Admission 19 fail to comply with Rule 36, Defendants respectfully request that this Court determine the sufficiency of the response and either deem the matter admitted or order a supplemental response.

**C. Second Set of Discovery Requests, Requests for Admission numbers 1 and 2: TBC's responses interpret John Sergo's email in a way that stands in direct contrast with his own deposition testimony.**

Defendants issued Requests for Admission numbers 1 and 2 in Defendants Second Set of Discovery Requests in response to TBC's position that around the time of Joel Warneke's March

---

[20] Black's Law Dictionary (8th Edition 2004).
[21] *McLaughlin v. GlaxoSmithKline, L.L.C.*, 601 Fed. Appx. 312, 314 (5th Cir. 215).
[22] Fed. R. Civ. Proc. 36(a)(1)(A).

26, 2014 email, TBC did not know the location of the property boundaries of the properties it owned.[23] These requests sought an admission that TBC knew that it owned the property at issue in this case and, in fact, had documents that established its ownership prior to April 6, 2014:[24]

> **REQUEST FOR ADMISSION NO. 1:**
>
> Considering your response to Interrogatory 6 to Dow's First Set of Requests for Admission, Interrogatories, and Requests for Production of Documents, please admit that prior to April 6, 2014, Texas Brine Company had knowledge that it owned the property in Section 46, Township 12 South, Range 13 East, Assumption Parish, Louisiana which is shaded in on the map attached to the Complaint as Exhibit 1 [Rec. Doc. 1-1].

In response to Request for Admission number 1, TBC denied the request as written and objected to "knowledge" as vague, ambiguous, and calling for a legal conclusion.[25]  TBC then noted that, "as demonstrated in a [sic] April 17, 2014 internal TBC e-mail drafted by John Sergo previously produced as TBC-1183, TBC was in the process of ongoing due diligence regarding the boundary lines of the property it owned in Section 46 at the Napoleonville salt dome at the time."[26]

The referenced email states: "Ted, Sorry this took so long. It was surprisingly difficult to get everyone to agree on what we actually own at GB!"[27] During his deposition, Mr. Sergo made clear there was no doubt TBC owned the subject property at the time he sent the email TBC relies on:

> 9   Q.   As you sit here today, do you have any
> 10  information to say that the words written in your
> 11  e-mail of April 17, 2014 are not accurate?
> 12              MR. MADIGAN:  Object to form.  Go
> 13  ahead.
> 14     A.  I mean, again, I'm not -- I'm having trouble
> 15  figuring out what you're going for.  I can expand on
> 16  it.  "Surprisingly difficult to get everyone to agree"
> 17  was kind of tongue in cheek because there were a

---

[23] Exhibit A, TBC's Responses to Defendants First Set of Discovery Requests at pp. 15–16.
[24] Exhibit B, TBC's Responses to Defendants Second Set of Discovery Requests at p. 4.
[25] Exhibit B, TBC's Responses to Defendants Second Set of Discovery Requests at p. 4.
[26] Exhibit B, TBC's Responses to Defendants Second Set of Discovery Requests at p. 4.
[27] Exhibit A-1, TBC-1183.

18   couple of pieces of property, little slivers of land
19   not in this section of land related to this case where
20   there was some discussion about whether we owned them
21   or not.
22        There was some debate about whether we owned
23   or leased the driveway going to the Oxy.  Just little
24   nits that Kenneth and A.B. couldn't agree on.  So
25   maybe I was being a little tongue in cheek there.  And
                111
1   that's why I went on to say that there may be a sliver
2   or two missing from what you asked for, but to draw
3   our property boundaries on, this will work.
4   BY MR. VIATOR:
5      Q.  I think you clarified.  One of the questions
6   I have is with regards to the difficulty to get
7   everyone to agree on what we owned.  Am I correct that
8   there was no disagreement on Texas Brine's ownership
9   of the property at issue in this case?
10             MR. MADIGAN:  Object to form.
11      A.  That is correct.[28]

Mr. Sergo's testimony is clear: there was no disagreement that TBC owned the property at issue

in this case at the time Mr. Sergo sent his April 17, 2014 email.  Nevertheless, TBC maintains that

its response to Request for Admission number 1 is appropriate, noting its disagreement with

Defendants "interpretation of Mr. Sergo's testimony."[29] Defendants move this Court to determine

the sufficiency of TBC's response to Request for Admission number 1 based on the undisputed

testimony of Mr. Sergo.

Again, in light of TBC's prior discovery responses, Request for Admission number 2 sought

an admission that TBC was in possession of documents proving TBC's ownership of the Property

at issue in this litigation prior to April 6, 2014:[30]

---

[28] Exhibit I, Excerpts from the deposition of John Sergo at pp. 110–111.
[29] Exhibit G, Letter from TJ Madigan et al to John Viator et al (Sept. 18, 2017) at p. 3.
[30] Exhibit B, TBC's Responses to Defendants Second Set of Discovery Requests at p. 5.

**REQUEST FOR ADMISSION NO. 2:**

> Considering your response to Interrogatory 6 to Dow's First Set of Requests for Admission, Interrogatories, and Requests for Production of Documents, please admit that prior to April 6, 2014, Texas Brine Company was in possession of documents proving or establishing Texas Brine Company, LLC's fee ownership of the property in Section 46, Township 12 South, Range 13 East, Assumption Parish, Louisiana which is shaded in on the map attached to the Complaint as Exhibit 1 [Rec. Doc. 1-1].

In response, TBC asserted that this request was vague because it refers to unidentified documents and used the words "proving" and "establishing." TBC nevertheless referred to its responses to Interrogatory numbers 1 and 2.[31]

Defendants contend this response is deficient as vague, ambiguous, and non-responsive. This is particularly true because, as discussed below, TBC referred to a number of documents in response to Interrogatory numbers 1 and 2 that appear to be dated before April 6, 2014. TBC nevertheless has refused to identify the date it obtained those documents.[32] Request for Admission number 2 is clear—TBC either had documents proving or establishing its fee ownership of the property before April 6, 2014 or not. Either way, TBC is required to specifically admit or deny the request. Defendants contend that TBC's response fails to satisfy Rule 36 and, accordingly, request a determination as to the sufficiency of these responses.

## II.    TBC's responses to certain Interrogatories and Requests for Production in Defendants' Second Set of Discovery Requests are incomplete.

Generally, Defendants' Second Set of Discovery was issued in response to TBC's response to Interrogatory number 6 in the First Set of Discovery, wherein TBC essentially claimed that it did

---

[31] Interrogatory numbers 1 and 2 requested identification of all documents in TBC's possession that depict the property boundary at issue, and requested the dates TBC first obtained those documents. Exhibit B, TBC's Responses to Defendants Second Set of Discovery Requests at pp. 5–7.

[32] *See* Exhibit B, TBC's Responses to Defendants Second Set of Discovery Requests at pp. 6–7.

not know where the property boundary was for the property at issue on April 6, 2014.[33] Generally, TBC's responses to this set of discovery mask any information that could be used to identify when TBC knew that it owned this property.   Because TBC's objections and responses to these interrogatories and requests for production fail to directly respond to the discovery requests, Defendants move for a more complete response in order to clarify what should be a preliminary issue in this litigation: when did TBC have knowledge that it owned the Property.

## A. Second Set of Discovery Requests, Interrogatory numbers 1 and 2; Request for Production number 1.

Defendants issued these requests to explore TBC's claim that, until April 18, 2014, it was conducting due diligence as to the location of the property boundary.  In particular, these requests were issued as companion requests to Requests for Admission numbers 1 and 2.

Interrogatory Number 1 requested identification of any and all "plats, maps, surveys, title opinions, or deeds or other documents" in TBC's possession that depict or describe the property boundaries for the property at issue.[34] Although TBC issued lengthy objections to this straightforward interrogatory, TBC nevertheless identified documents TBC-1530–1630 as responsive to Interrogatory number 1 and Request for Production number 1.

Interrogatory number 2 was issued as a follow up to Interrogatory number 1, requesting the dates TBC obtained the documents identified in Interrogatory number 1:

> **INTERROGATORY NO. 2:**
>
> Considering your response to Interrogatory 6 to Dow's First Set of Requests for Admission, Interrogatories, and Requests for Production of Documents, please identify with particularity the date that you **first** obtained each document identified in Interrogatory Number 1 of Dow's Second Set of Requests for Admission, Interrogatories and Requests for Production of Documents.

---

[33] *See* Exhibit A, TBC's Responses to Defendants First Set of Discovery Requests at pp. 15–16.
[34] Exhibit B, TBC's Responses to Defendants' Second Set of Discovery Requests at p. 5.

Again, TBC issued lengthy objections to this Interrogatory.  TBC nevertheless failed to provide

any of the requested information. Instead, TBC appears to suggest that the documents speak for

themselves:

> **RESPONSE TO INTERROGATORY NO. 2:**
>
> TBC objects to Interrogatory No. 2 to the extent it seeks information subject to the attorney-client privilege and/or work product protection.  TBC further objects to Interrogatory No. 2 as vague, ambiguous, overbroad, and unduly burdensome.  TBC has already produced hundreds of pages of documents and these documents speak for themselves.  TBC is not required by the Federal Rules to engage in the unduly burdensome task of searching through documents it has produced and determine whether a given document meets Dow's vague and undefined phrase "depict or describe" as stated in Interrogatory No. 1, referenced by this Interrogatory. *See, e.g. Breeland v. Yale & Town Mfg. Co.*, 26 F.R.D. 119, 120 (E.D.N.Y. 1960) ("[I]nterrogatories are not to be used in an oppressive manner.  An adverse party should not be required to perform burdensome labors or to execute difficult and expensive tasks, in searching for facts and classifying and compiling data.  A litigant may not compel his adversary to go to work for him." (quoting *Aktiebolaget Vargos v. Clark*, 8 F.R.D. 635, 636 (D.D.C. 1949).
>
> TBC also objects to the term "obtained" as vague and ambiguous, to the extent that any documents containing property boundaries were created or generated by TBC-affiliated personnel. Without waiving such objections, see documents identified in Interrogatory No. 1.

Defendants contend that this response falls short of TBC's obligation under Rule 33. Notably, any

objection as to the wording of Interrogatory number 1 should be addressed in response to that

interrogatory.  Although TBC did object to the wording of Interrogatory number 1, it identified

100 pages of documents that it believed were responsive.  TBC was required, therefore, to identify

the dates it obtained each of those documents. Because it failed to do so, Defendants move for an

order compelling a complete response to Interrogatory number 2.

Finally, TBC produced several redacted documents in response to Request for Production

number 1: TBC-1587-1591 and TBC-1596.  TBC has advised that it redacted "confidential pricing

information."[35] TBC has not claimed the redaction is based on any privilege.  Finally, TBC has

not moved for a protective order to justify the redactions. As TBC has on several occasions argued

to Dow, redaction of documents for reasons other than privilege are inappropriate, particularly

where a protective order is in place:

> Defendants' novel interpretation of their discovery obligations is not
> supported by the text of Fed.R.Civ.P. 34 and would open a fertile
> new field for discovery battles. Rule 34 talks about production of
> "documents," as opposed to the relevant information contained in
> those documents. It is at least implicit that the duty to "produce
> documents as they are kept in the usual course of business" includes
> the substantive contents of those documents. See also Fed.R.Civ.P.
> 34(b)(2)(E)(ii) (party must produce information "in a form or forms
> in which it is ordinarily maintained"). Certainly, a party that seeks
> to "inspect" a document would anticipate being able to inspect the
> entire document. This interpretation of Rule 34 is consistent with
> the guidance in Fed.R.Civ.P. 1 that the Rules be construed to
> advance the just, speedy and inexpensive determination of cases.
> There is no express or implied support for the insertion of another
> step in the process (with its attendant expense and delay) in which a
> party would scrub responsive documents of non-responsive
> information. In sum, the Court cannot countenance Defendants'
> 'redaction campaign.'[36]

Accordingly, Defendants request an order compelling TBC to produce TBC-1587–1591 and TBC-

1596 in full.

### B.  Defendants' Second Set of Discovery Requests, Interrogatory number 4.

Again, Request for Admission number 2 in Defendants' Second Set of Discovery sought an

admission that TBC was in possession of documents proving its ownership of the property in

question before April 6, 2014.   Foreseeing TBC's refusal to admit, Defendants requested

---

[35] Exhibit H, Letter from TJ Madigan to Patrick Hunt (Nov. 10, 2016).
[36] *Orion Power Midwest, L.P. v. Am. Coal Sales Co.*, 2008 WL 4462301, at *2 (W.D. Penn. 2008).  *See also Neonatal Prod. Group, Inc. v. Shields*, 2015 WL 7078796, at *4 (D. Kan. 2015); *Melchior v. Hilite Intern., Inc.*, 2013 WL 2238754, at *3 (E.D. Mich. 2013); *Bartholomew v. Avalon Capital Group, Inc.*, 278 F.R.D. 441, 451-52 (D. Minn. 2011); *ArcelorMittal Cleveland, Inc. v. Jewell Coke Co., L.P.*, 2010 WL 5230862, at *3 (N.D. Ohio 2010); *Medtronic Sofamor Danek, Inc. v. Michelson*, 2002 WL 33003691 at *4-5 (W.D. Tenn. 2002).

identification of every document obtained after April 6, 2014 that put TBC on notice that it owned the property at issue.

TBC did not offer an unqualified admission to RFA number 2. Even so, TBC did not identify the documents obtained after April 6, 2014 that supposedly put it on notice that it owned the property at issue. Instead, TBC referred to, "as an example, John Sergo's April 17, 2104 e-mail found at document TBC-1183 demonstrating TBC's due diligence in determining the location of the boundaries of properties owned by TBC up to and including the date of that email." Defendants have not requested "examples" of documents obtained after April 6, 2014 that put TBC on notice that it owned the property at issue. Defendants have requested that TBC identify *every* document at issue.  <u>If there are no such documents, TBC should so state</u>.  The ambiguity surrounding TBC's responses to the Second Set of Discovery is needless. TBC's ownership of the property at the time this suit was filed is a foundational element of this case—it was alleged in the Complaint. Defendants therefore request an order compelling straightforward responses to each of these requests in order to resolve what should have been a preliminary issue.

### III. Plaintiffs' responses to Defendants' Fourth Set of Discovery Requests to Texas Brine Company, LLC and First Set of Discovery Requests to Louisiana Salt, LLC are incomplete.

Defendants' Fourth Set of Discovery Requests to Texas Brine Company and First Set of Discovery Requests to Louisiana Salt, LLC contained general discovery requests and requests directed specifically towards the relationship between Texas Brine Company and Louisiana Salt. Defendants move for an order compelling a more complete response from both plaintiffs to the below requests because Plaintiffs' responses appear to be incomplete.  Additionally, in the event Plaintiffs do not have any additional information, Defendants request the Court order a response that specifically indicates that there are no additional documents to be produced.

A. **Fourth Set of Discovery Requests to TBC, Interrogatory Number 10, Requests for Production numbers 14 and 34; First Set of Discovery Requests to Louisiana Salt, LLC, Interrogatory Number 13, Requests for Production numbers 2 and 18.**

TBC and Louisiana Salt have asserted that they are separate legal entities.[37]   According to Plaintiffs, Louisiana Salt acquired the Property at issue through an act of sale executed on September 16, 2016, effective on October 1, 2015.[38] As part of these discovery requests, Defendants sought documents associated with the sale of the Property from TBC to Louisiana Salt, issuing similar interrogatories and requests for production to both plaintiffs:[39]

---

[37] Exhibit D, Louisiana Salt, LLC's Responses to Defendants' First Set of Discovery at pp. 7–8.
[38] Rec. Doc. 92, ¶ 10.
[39] Exhibit C, Texas Brine Company's Responses to Defendants' Fourth Set of Discovery Requests at pp. 11, 29, 43; Exhibit D, Louisiana Salt, LLC's Responses to Defendants' First Set of Discovery at pp. 10–11, 17–18, 26–27.

79061

**REQUEST FOR PRODUCTION NO. 14:**

Please produce all documents associated with the sale of the Property from TBC to Louisiana Salt, LLC, including all diligence documents generated in anticipation of the sale, including but not limited to documents concerning the following subjects:

a.   The condition of TBC's Property;

b.   Any and all calculations and/or valuations of salt reserves on TBC's Property;

c.   The proximity of Dow #18 or other solution-mined caverns to TBC's Property;

d.   All maps, plats, schematics, surveys, and drawings of the Property;

e.   Documents concerning salt reserves on the Property, including but not limited to the potential location of future solution-mined caverns that could be located on the Property;

f.   All documents concerning the transfer of title to the Property;

g.   The Act of Sale and Deed to the Property;

h.   Any consideration given by Louisiana Salt, LLC to TBC for the Property;

i.   Any communication between TBC and Louisiana Salt, LLC regarding the fair market value of the Property;

j.   Any and all communications between TBC and Louisiana Salt, LLC related to Dow #18 well;

k.   Any and all communications between TBC and Louisiana Salt, LLC related to litigation with Dow regarding TBC's property;

Additionally, RFP number 34 to TBC sought "any and all communications between TBC and Louisiana Salt concerning this litigation, the Dow # 18 Well, or the Dow # 18 Cavern."[40]

In response, Plaintiffs referred to the Act of Sale, a property Appraisal, and an Act of Correction to Act of Sale. Defendants have pressed Plaintiffs on more than one occasion as to whether additional responsive materials exist. Although most requests have gone unanswered, Plaintiffs recently advised that they are "searching for and evaluating whether [Plaintiffs] possess

---

[40] Exhibit C, Texas Brine Company's Responses to Defendants' Fourth Set of Discovery Requests at p. 43.

any further responsive information to Interrogatory No. 10/RPDs No. 14 and 34."[41] At this point, Defendants request an order compelling Plaintiffs to either certify that they have no additional documents, or produce whatever documents have been withheld.

### B.  Fourth Set of Discovery Requests to TBC, Interrogatory Number 21.

In his January 2017 report, Charles Chabannes opined that a "protrusion/extension" in the Dow 18 Cavern "may be a result of a weaker zone of salt which dissolves faster. It may also be a result of encountering a zone which involves some amount of more water soluble potassium chloride minerals such as sylvite."[42] Accordingly, Defendants requested identification of all information supporting the existence of a zone of water soluble potassium chloride minerals existed in the vicinity of the wing of the Dow 18 Cavern:[43]

> **INTERROGATORY NO. 21:**
>
> Please identify all information in TBC's possession which supports TBC's position that a zone of more water soluble potassium chloride minerals such as sylvite in the vicinity of the wing that developed in Dow #18 well.
>
> **ANSWER TO INTERROGATORY NO. 21:**
>
> TBC objects to Interrogatory No. 21 as vague, ambiguous, overbroad, and unduly burdensome. TBC further objects to Interrogatory No. 21 to the extent it seeks information protected by the attorney-client privilege and/or work product protections. Without waiving such objections, see expert report of Charles Chabannes produced January 13, 2017.

In circular fashion, TBC pointed to Mr. Chabannes' report, which only hypothesized that the protrusion at issue might be the result of such a zone. Defendants have pressed TBC on this issue, noting that Mr. Chabannes's report does not provide any support for the position that a zone of water soluble minerals actually exists in the salt stock. In response, TBC responded that it is

---

[41] Exhibit G, Letter from TJ Madigan et al to John Viator et al (Sept. 18, 2017) at p. 3.
[42] Exhibit J, Expert Report of Charles Chabannes (Jan. 13, 2017) at p. 8.
[43] Exhibit C, Texas Brine Company's Responses to Defendants' Fourth Set of Discovery Requests at p. 22; Exhibit D, Louisiana Salt, LLC's Responses to Defendants' First Set of Discovery at p. 15.

"continuing to search for information that may be responsive to this Interrogatory."[44] Defendants

request an order compelling Plaintiffs to supplement their response to remove the reference to Mr.

Chabannes's report, and either provide the requested information or advise that they do not have

any information to support Mr. Chabannes's theory.

### C. Fourth Set of Discovery Requests to TBC, Interrogatory number 22; Request for Production numbers 7–12; First Set of Discovery Requests to Louisiana Salt, Interrogatory number 21, Request for Production numbers 12–17.

Interrogatory number 22 and 21 to TBC and Louisiana Salt, respectively, sought an explanation

from Plaintiffs as to every item of damages they intend to seek at trial and for an estimation as to

each:

> **INTERROGATORY NO. 22:**
>
> Please identify every item of damages you intend to seek at trial and provide an estimate
> for the value of each item of damages you intend to seek at trial.

Both TBC and Louisiana Salt responded by referring to their expert reports.  Similarly, Defendants

issued requests for production of documents that support Plaintiffs' claims for damages related to

the value of dead salt, deprivation of use, unjust enrichment, or any other claims for damages.[45]

Again, Plaintiffs responded by referring to their expert reports.

Plaintiffs' CPA, Holly Sharp, provides the cumulative figure for the damages Plaintiffs'

claim.  It does not, however, differentiate between the damages claimed by TBC and those claimed

by Louisiana Salt.  Defendants followed up on these requests and were informed that Plaintiffs

maintain that their responses are appropriate.  Plaintiffs further refer to their initial disclosures

where they claim damages in the amount of $109.2 million, and advised that they would "apportion

---

[44] Exhibit G, Letter from TJ Madigan et al to John Viator et al (Sept. 18, 2017) at p. 4.
[45] Exhibit C, Fourth Set of Discovery Requests to TBC, Requests for Production numbers 7–12; Exhibit D, First Set of Discovery Requests to Louisiana Salt, Requests for Production numbers 12–17.

any recovery at trial between themselves."[46] That is, Plaintiffs suggest that they are entitled to a lump sum judgment over $109 million, and upon collecting, the plaintiffs will divide the money as they see fit.  This suggestion is a gross deviation from standard procedure.

TBC and Louisiana Salt are distinct legal entities.  Importantly, TBC is the former owner of the property and Louisiana Salt is the current owner of the property.  The damages to which each entity is entitled are distinct.  When this matter is presented to a jury, the verdict form will have separate line items for Texas Brine Company and Louisiana Salt, with separate line items for each category of damages. Louisiana law is settled that the owner of property and the former owner of property have different rights insofar as damages to immovable property are concerned.[47] Importantly, Defendants litigation strategy, and traversal of Plaintiffs' individual damages claims, may vary based on which entity is claiming which damages.  For instance, Mr. Wayne Sneed's report discusses TBC's negotiations with an unrelated counterparty to allow TBC to mine salt for a royalty value of $0.63 per ton.[48] The royalty rate Louisiana Salt can obtain may be drastically different given its inexperience in the solution mining field. Whether either plaintiff is entitled to the enormous damages claimed will be heavily dependent upon the nature of the right each party claims, the basis for their damages claims, and the actual damages suffered by each party. Plaintiffs are attempting to ignore the fact that they are two distinct legal entities, proceeding as if they are entitled to impute all of Texas Brine's experience in the solution-mining industry with no explanation as to why.

---

[46] Exhibit G, Letter from TJ Madigan et al to John Viator et al (Sept. 18, 2017) at p. 4.
[47] *See, e.g., Guilbeau v. Hess Corporation*, 854 F.3d 310, 312 (5th Cir. 2017) (citing *Eagle Pipe & Supply, Inc. v. Amerada Hess Corp.*, 10-2267 (La. 2011); 79 So.3d 246).
[48] Exhibit K, Report of Wayne Sneed at p. 2.

Because Plaintiffs have distinct rights of action arising out of the property, Defendants move for an order compelling a complete response to Interrogatory 22 and Requests for Production numbers 7-12 in Defendants' Fourth Set of Discovery Requests to TBC, and Interrogatory 21 and Requests for Production numbers 12–17 in Defendants' First Set of Discovery Requests to Louisiana Salt.

### D. Fourth Set of Discovery Requests to TBC, Request for Production numbers 30, 32, 33; First Set of Discovery Requests to Louisiana Salt, Request for Production numbers 27, 29–30.

Finally, Request for Production numbers 30, 32, and 33 in Defendants' Fourth Set of Discovery Requests to TBC, and Request for Production numbers 27, 29, and 30 in Defendants First Set of Requests to Louisiana Salt collectively sought a copy of all documents or tangible things that were supplied to, collected by, or reviewed by each of Plaintiffs' expert witnesses.[49]  Although Plaintiffs have produced an expert report for Wayne Sneed, Plaintiffs failed to provide the documents supplied to or reviewed by Mr. Sneed in preparing his expert report.

Defendants raised this deficiency to Plaintiffs' attention in recent correspondence.  In response, Plaintiffs advised that Defendants' have also requested documents relating to Mr. Sneed's in the Fifth Set of Discovery Requests issued to TBC, and that those responses are forthcoming.[50]  In other words, TBC will not respond to the requests in the Fourth Set of Discovery Requests because Defendants had requested similar discovery in a subsequent set of discovery requests.  Tellingly, Plaintiffs still have not provided a timeline for when Defendants can expect TBC's responses to the Fifth Set of Discovery.[51]  More importantly, Defendants propounded the Fourth Set of Discovery Requests to TBC on April 24, 2017.  Accordingly, Plaintiffs' responses to the Fourth

---

[49] Exhibit C, Fourth Set of Discovery Requests to TBC, Requests for Production numbers 30, 32, 33; Exhibit D, First Set of Discovery Requests to Louisiana Salt, Requests for Production numbers 27, 29, 30.
[50] Exhibit G, Letter from TJ Madigan to John Viator et al (Sept. 18, 2017) at pp. 4–5.
[51] Defendants have filed a motion to compel in connection with this set of discovery.

Set of Discovery to Texas Brine Company and First Set of Discovery to Louisiana Salt were due four months ago on May 24, 2017. It is simply unacceptable to refuse to produce relevant, responsive documents simply because TBC will have to respond to an additional set of discovery in the coming days.

## IV. Plaintiffs are obligated to provide Defendants with a Rule 26(a)(2)(B) expert report for Wayne Sneed.

Plaintiffs—both TBC and Louisiana Salt—seemingly rely on the report of Wayne Sneed in support of their claims against Defendants. In recent correspondence, counsel for Plaintiffs stated that both Plaintiffs were offering Mr. Sneed's report under Rule 26(a)(2)(C), claiming Mr. Sneed did not meet the definition provided in Rule 26(a)(2)(B)—"Mr. Sneed is not a witness 'retained or specifically employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony' under Rule 26(a)(2)(B)."[52] While this may arguably be the case for TBC, it is certainly not accurate with regard to Louisiana Salt.

Mr. Sneed is the President and CEO of Texas United Corporation, which, through its subsidiary Texas United Management Corporation, provides services to all of Texas United Corporation's related entities, including TBC.[53] Importantly, and as discussed above, TBC and Louisiana Salt are distinct legal entities. While Mr. Sneed is employed by TBC's parent company, he is not an employee of Louisiana Salt. Thus, the only capacity in which Mr. Sneed's testimony may be offered by Louisiana Salt is as a witness "retained or specifically employed to provide expert testimony in the case."[54] Therefore, while Mr. Sneed may fall under the report requirements of Rule 26(a)(2)(C) in the context of his testimony on behalf of TBC, this cannot be the case as it

---

[52] Exhibit G, Letter from TJ Madigan et al to John Viator et al (Sept. 18, 2017) at p. 6.
[53] Exhibit K, Report of Wayne Sneed at p. 1.
[54] Fed. R. Civ. Proc. 26(a)(2)(B)

relates to any testimony on behalf of Louisiana Salt.  For this reason, Plaintiffs should be required to provide Defendants with a Rule 26(a)(2)(B) expert report for Wayne Sneed.

## CONCLUSION

Considering the foregoing, Defendants, The Dow Chemical Company, Dow Hydrocarbons & Resources, LLC, and Clifton Land Corporation, respectfully pray for an order from this Court compelling Plaintiffs, Texas Brine Company, LLC and Louisiana Salt Company, LLC, to completely respond to, and supplement as needed, the discovery requests discussed herein.

Submitted By:

**BIENVENU, BONNECAZE, FOCO, VIATOR & HOLINGA, APLLC**

**By:** _s/_*John Allain Viator*_____
David M. Bienvenu, Jr. (Bar Roll No.20700) T. A.
John Allain Viator (Bar Roll No. 25915)
Phillip E. Foco (Bar Roll No. 25670)
Erin Percy Tadie (Bar Roll No. 33627)
Patrick H. Hunt (Bar Roll No. 34599)
4210 Bluebonnet Blvd.
Baton Rouge, LA 70809
Phone:  (225) 388-5600
Fax:  (225) 388-5622
david.bienvenu@bblawla.com
john.viator@bblawla.com
phillip.foco@bblawla.com
erin.tadie@bblawla.com
patrick.hunt@bblawla.com

***Counsel for The Dow Chemical Company, Dow Hydrocarbons & Resources, LLC, and Clifton Land Corporation***

**CERTIFICATE OF SERVICE**

I certify that a copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to all counsel of record by operation of the Court's electronic filing system.

Baton Rouge, Louisiana, this 26th day of September, 2017.

_____
s/*John Allain Viator*
John Allain Viator

79061