## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **TEXAS BRINE COMPANY, LLC** | * | **LEAD CASE NO. 15-01102** |
| | * | **C/W CASE NO. 15-03324** |
| **VERSUS** | * | **APPLIES TO ALL CASES** |
| | * | **JUDGE KURT D. ENGELHARDT** |
| **THE DOW CHEMICAL COMPANY,** | * | |
| **DOW HYDROCARBONS & RESOURCES,** | | **MAGISTRATE SALLY** |
| **LLC, AND CLIFTON LAND CORPORATION** | * | **SHUSHAN** |

*********************************************

TO:   **The Dow Chemical Company**
      *Through its Counsel of Record*
      John Allain Viator
      Bienvenu, Bonnecaze, Foco, Viator & Holinga, APLLC
      4210 Bluebonnet Boulevard
      Baton Rouge, Louisiana 70809

Texas Brine Company, LLC ("TBC") hereby responds to the First Set of Requests for Admission, Interrogatories, and Requests for Production of Documents ("Discovery") propounded by The Dow Chemical Company ("Dow") as follows:

## <u>GENERAL OBJECTIONS</u>

1.   All the responses set forth below are (subject to the qualifications identified) based solely upon the information and documents presently available to TBC.  Formal and informal discovery will continue as long as permitted by statute, rule, or stipulation of the parties, and the investigation by TBC, TBC's attorneys, and TBC's agents will continue throughout the trial of this action.  As that investigation and discovery proceeds, witnesses, facts, documents, and evidence may be discovered that are not set forth herein but that may be responsive to the Discovery.  The following responses are given without prejudice to

1

TBC's right to alter or amend these responses as the result of subsequently discovered evidence and to present evidence at trial, including, but not limited to, expert testimony, discovered or obtained after the date of these responses. TBC reserves the right to supplement its responses to the Discovery in the future.

2.      Nothing herein shall be construed as an admission by TBC with respect to the admissibility or relevance of any documents produced.

3.      TBC objects to the Discovery to the extent it seeks information that is in the public domain and/or to which Dow has equal or greater access.

4.      TBC objects to the Discovery to the extent it seeks the disclosure or production of confidential, proprietary, trade secret, and/or constitutionally protected business information or documents. TBC further objects to the Discovery to the extent it seeks confidential sensitive financial information, including personal financial information, tax documents, confidential financial information, trade secret financial information, and/or bank records, all of which must be narrowly tailored to the discrete issues presented by the case to avoid undue burden, undue hardship, loss, damage, annoyance, and embarrassment, and all of which are protected from disclosure unless the requesting party has shown good cause.

5.      TBC objects to the Discovery to the extent it seeks information or documents the production of which would violate any constitutional, statutory, or other privacy interest of any current or former employee or representative of TBC or any other person or entity.

6.      TBC objects to the Discovery to the extent it seeks the production of information or documents that are protected by the attorney client privilege, work product doctrine, and/or any other applicable privilege or protection, including information obtained by or on behalf

of counsel for TBC in preparation for this litigation, or documents prepared in anticipation of this litigation and/or subsequent to the time this litigation was filed.  TBC considers all communications and documents generated in preparation for this litigation on or after the date the lawsuit was filed as privileged and/or protected work product, not subject to production or inclusion in a privilege log.

7.      TBC objects to the Discovery to the extent it contains vague and/or ambiguous terms.  TBC further objects to the Discovery to the extent it is vague, ambiguous, overbroad, unduly burdensome, harassing, and/or seeking information that is irrelevant to the subject matter involved in this litigation and/or not reasonably calculated to lead to the discovery of admissible evidence.  TBC further objects to the Discovery to the extent it assumes allegations are accepted facts, and to the extent the Discovery calls for speculation.  TBC further objects to the Discovery to the extent that it is premature.

8.      TBC's responses are made without in any way waiving the right to object on the grounds of competency, relevancy, materiality, hearsay, or any other proper ground to the use of such information for any purpose, in whole or in part, in any subsequent proceeding in this action or any other action, or the right to object on any and all grounds at any time to any other discovery procedure related to the subject matter of the Discovery.

9.      TBC incorporates the foregoing General Objections into each and every objection and/or individualized response contained herein and set forth below and into each and every amendment, supplement, and/or modification to these responses hereinafter provided to the specific request.  TBC does not waive any General Objections in response to any specific request.

**All information produced herewith or referenced herein that is not already part of the public record is produced subject to the September 29, 2015 Protective Order in this matter and designated as "Confidential- Subject to Protective Order."**

## RESPONSES TO REQUESTS FOR ADMISSIONS

### REQUEST FOR ADMISSION NO. 1:

Please admit that Texas Brine Company, LLC retained the services of Joe Ratigan, Ph.D., PE to satisfy the requirements for Commissioner of the Office of Conservation Injection and Mining Divisions directive of January 30, 2013.

### RESPONSE TO REQUEST FOR ADMISSION NO. 1:

Denied as written.  TBC did not individually retain Joe Ratigan, Ph.D., PE to satisfy the requirements for Commissioner of the Office of Conservation Injection and Mining Divisions directive of January 30, 2013.  Rather, Joe Ratigan, Ph.D., PE was involved in the preparation of the July 25, 2013 report intended to satisfy the directive. [R. Doc. 21-4].  The July 2013 report was not prepared solely for TBC, but for seven separate solution-mine operators on the Napoleonville Salt Dome including both TBC and Dow. [R. Doc. 21-4 at 12].  The DNR directive sought information regarding "the proximity of the outer walls of [each operator's] respective salt caverns to the periphery of the salt stock." [R. Doc. 21-4 at 17].  The report notes that its purpose was "to provide a single, dome-wide operator response to the LA DNR directive."  [R. Doc. 21-4 at 17].  Accordingly, the report's purpose was entirely unrelated to the proximity of well caverns to any property boundaries.

**REQUEST FOR ADMISSION NO. 2:**

Please admit that Texas Brine Company, LLC retained the services of Ratigan Engineering & Consulting LLC to satisfy the requirements of Commissioner of the Office of Conservation Injection and Mining Divisions directive of January 30, 2013.

**RESPONSE TO REQUEST FOR ADMISSION NO. 2:**

Denied as written.  TBC did not individually retain Ratigan Engineering & Consulting LLC to satisfy the requirements for Commissioner of the Office of Conservation Injection and Mining Divisions directive of January 30, 2013.  Rather, Ratigan Engineering & Consulting LLC was involved in the preparation of the July 25, 2013 report intended to satisfy the directive.  [R. Doc. 21-4].  The July 2013 report was not prepared solely for TBC, but for seven separate solution-mine operators on the Napoleonville Salt Dome including both TBC and Dow. [R. Doc. 21-4 at 12]. The DNR directive sought information regarding "the proximity of the outer walls of [each operator's] respective salt caverns to the periphery of the salt stock." [R. Doc. 21-4 at 17].  The report notes that its purpose was "to provide a single, dome-wide operator response to the LA DNR directive." [R. Doc. 21-4 at 17].  Accordingly, the report's purpose was entirely unrelated to the proximity of well caverns to any property boundaries.

**REQUEST FOR ADMISSION NO. 3:**

Please admit that Texas Brine Company, LLC retained the services of Kevin B. Hill to satisfy the requirements of Commissioner of the Office of Conservation Injection and Mining Divisions directive of January 30, 2013.

**RESPONSE TO REQUEST FOR ADMISSION NO. 3:**

Denied as written.  TBC did not individually retain Kevin B. Hill to satisfy the requirements for Commissioner of the Office of Conservation Injection and Mining Divisions directive of

January 30, 2013.  Rather, Kevin B. Hill was involved in the preparation of the July 25, 2013 report intended to satisfy the directive.  [R. Doc. 21-4].  The July 2013 report was not prepared solely for TBC, but for seven separate solution-mine operators on the Napoleonville Salt Dome including both TBC and Dow. [R. Doc. 21-4 at 12].  The DNR directive sought information regarding "the proximity of the outer walls of [each operator's] respective salt caverns to the periphery of the salt stock."  [R. Doc. 21-4 at 17].  The report notes that its purpose was "to provide a single, dome-wide operator response to the LA DNR directive."  [R. Doc. 21-4 at 17].  Accordingly, the report's purpose was entirely unrelated to the proximity of well caverns to any property boundaries.

**REQUEST FOR ADMISSION NO. 4:**

Please admit that Texas Brine Company, LLC retained the services of Hill Geophysical to satisfy the requirements of Commissioner of the Office of Conservation Injection and Mining Divisions directive of January 30, 2013.

**RESPONSE TO REQUEST FOR ADMISSION NO. 4:**

Denied as written.  TBC did not individually retain Hill Geophysical to satisfy the requirements for Commissioner of the Office of Conservation Injection and Mining Divisions directive of January 30, 2013.  Rather, Hill Geophysical was involved in the preparation of the July 25, 2013 report intended to satisfy the directive.  [R. Doc. 21-4].  The July 2013 report was not prepared solely for TBC, but for seven separate solution-mine operators on the Napoleonville Salt Dome including both TBC and Dow. [R. Doc. 21-4 at 12].  The DNR directive sought information regarding "the proximity of the outer walls of [each operator's] respective salt caverns to the periphery of the salt stock."  [R. Doc. 21-4 at 17].  The report notes that its purpose was "to provide a single, dome-wide operator response to the LA DNR directive."  [R. Doc. 21-4 at 17].

6

Accordingly, the report's purpose was entirely unrelated to the proximity of well caverns to any property boundaries.

**REQUEST FOR ADMISSION NO. 5:**

Please admit that Texas Brine Company, LLC retained the services of PB Energy Storage Services, Inc. to satisfy the requirements of Commissioner of the Office of Conservation Injection and Mining Divisions directive of January 30, 2013.

**RESPONSE TO REQUEST FOR ADMISSION NO. 5:**

Denied as written.  TBC did not individually retain PB Energy Storage Services, Inc. to satisfy the requirements for Commissioner of the Office of Conservation Injection and Mining Divisions directive of January 30, 2013.  Rather, PB Energy Storage Services, Inc. was involved in the preparation of the July 25, 2013 report intended to satisfy the directive.  [R. Doc. 21-4].  The July 2013 report was not prepared solely for TBC, but for seven separate solution-mine operators on the Napoleonville Salt Dome including both TBC and Dow. [R. Doc. 21-4 at 12].  The DNR directive sought information regarding "the proximity of the outer walls of [each operator's] respective salt caverns to the periphery of the salt stock." [R. Doc. 21-4 at 17].  The report notes that its purpose was "to provide a single, dome-wide operator response to the LA DNR directive." [R. Doc. 21-4 at 17].  Accordingly, the report's purpose was entirely unrelated to the proximity of well caverns to any property boundaries.

**REQUEST FOR ADMISSION NO. 6:**

Please admit that the report entitled "Proximity of Class II and Class III Well Caverns to the Edge of the Napoleonville Salt Dome (PB-0374)" dated July 2013 attached hereto as Exhibit "1" was prepared for a group of companies, which included Texas Brine Company, LLC.

**RESPONSE TO REQUEST FOR ADMISSION NO. 6:**

      Admitted.

**REQUEST FOR ADMISSION NO. 7:**

      Please admit that Texas Brine Company, LLC is one of the "Napoleonville Operators" referenced on the "cc:" line of the cover letter to the report entitled "Proximity of Class II and Class III Well Caverns to the Edge of the Napoleonville Salt Dome (PB-0374)" dated July 2013 attached hereto as Exhibit "1".

**RESPONSE TO REQUEST FOR ADMISSION NO. 7:**

      Admitted.

**REQUEST FOR ADMISSION NO. 8:**

      Please admit that the report entitled "Proximity of Class II and Class III Well Caverns to the Edge of the Napoleonville Salt Dome (PB-0374)" dated July 2013 attached hereto as Exhibit "1" was received by an officer, director, manager, member, agent, or employee of Texas Brine Company, LLC on or before July 25, 2013.

**RESPONSE TO REQUEST FOR ADMISSION NO. 8:**

      Admitted.

**REQUEST FOR ADMISSION NO. 9:**

      Please admit that the report entitled "Proximity of Class II and Class III Well Caverns to the Edge of the Napoleonville Salt Dome (PB-0374)" dated July 2013 attached hereto as Exhibit "1" was sent to an officer, director, manager, member, agent, or employee of Texas Brine Company, LLC on or before July 25, 2013.

**RESPONSE TO REQUEST FOR ADMISSION NO. 9:**

      Admitted.

**REQUEST FOR ADMISSION NO. 10:**

Please admit that an officer, director, manager, member, agent or employee of Texas Brine Company, LLC received a copy of the email from Joe Ratigan, Ph.D., P.E., to Stephen Lee on July 25, 2013, a copy of which is attached hereto as Exhibit "2".

**RESPONSE TO REQUEST FOR ADMISSION NO. 10:**

Admitted.

**REQUEST FOR ADMISSION NO. 11:**

Please admit that the report entitled "Proximity of Class II and Class III Well Caverns to the Edge of the Napoleonville Salt Dome (PB-0374)" dated July 2013 attached hereto as Exhibit "1" was received by an officer, director, manager, member, agent, or employee of United Brine Services, LLC on or before July 25, 2013.

**RESPONSE TO REQUEST FOR ADMISSION NO. 11:**

Admitted.

**REQUEST FOR ADMISSION NO. 12:**

Please admit that the report entitled "Proximity of Class II and Class III Well Caverns to the Edge of the Napoleonville Salt Dome (PB-0374)" dated July 2013 attached hereto as Exhibit "1" was sent to an officer, director, manager, member, agent, or employee of United Brine Services, LLC on or before July 25, 2013.

**RESPONSE TO REQUEST FOR ADMISSION NO. 12:**

Admitted.

**REQUEST FOR ADMISSION NO. 13:**

Please admit that United Brine Services, LLC is a wholly owned subsidiary of Texas Brine Company, LLC.

9

**RESPONSE TO REQUEST FOR ADMISSION NO. 13:**

Admitted.

**REQUEST FOR ADMISSION NO. 14:**

Please admit that Mark Cartwright was the President of United Brine Services, LLC on July 25, 2013.

**RESPONSE TO REQUEST FOR ADMISSION NO. 14:**

Admitted.

**REQUEST FOR ADMISSION NO. 15:**

Please admit that on July 25, 2013, Mark Cartwright was the owner of the email address mcartwright@unitedbrine.com.

**RESPONSE TO REQUEST FOR ADMISSION NO. 15:**

Denied as written.  TBC objects to the term "owner."  TBC admits that Mark Cartwright received emails at the address mcartwright@unitedbrine.com on July 25, 2013.

**REQUEST FOR ADMISSION NO. 16:**

Please admit that an officer, director, manager, member, agent, or employee of United Brine Services, LLC received a copy of the email from Joe Ratigan, Ph.D., P.E., to Stephen Lee on July 25, 2013, a copy of which is attached hereto as Exhibit "2."

**RESPONSE TO REQUEST FOR ADMISSION NO. 16:**

Admitted.

**REQUEST FOR ADMISSION NO. 17:**

Please admit that Appendix D to the report entitled "Proximity of Class II and Class III Well Caverns to the Edge of the Napoleonville Salt Dome (PB-0374)" dated July 2013 includes a

map which depicts the encroachment of Dow Well #18 complained of in the above referenced litigation.

**RESPONSE TO REQUEST FOR ADMISSION NO. 17:**

Denied as written.  The map in Appendix D to the report entitled "Proximity of Class II and Class III Well Caverns to the Edge of the Napoleonville Salt Dome (PB-0374)" dated July 2013 depicts numerous well cavern outlines on the Napoleonville Salt Dome, including an outline of the Dow # 18 Well.  However, the purpose of the report was entirely unrelated to the location or encroachment of any well cavern with respect to any property boundary.  Rather, as the title indicates, the purpose of the report was to demonstrate "the proximity of the outer walls of [each operator's] respective salt caverns to the periphery of the salt stock" at the Napoleonville Salt Dome.  [R. Doc. 21-4 at 17].

Moreover, the precise location of the Dow # 18 Well and its proximity to any property lines is not definitively established by Appendix D.  The notations in the bottom right corner of the map contained in Appendix D of the July 2013 report explicitly state that "Location of property boundaries, highways, roads, and bayous are approximate." [R. Doc. 21-4 at 41].

**REQUEST FOR ADMISSION NO. 18:**

Please admit that the outline of the cavern associated with Dow Well #18 shown on the map contained in Exhibit 1 to your original petition is identical to the outline of the cavern associated with Dow Well #18 on the map contained in Appendix D to the report entitled "Proximity of Class II and Class III Well Caverns to the Edge of the Napoleonville Salt Dome (PB-0374)" dated July 2013.

**RESPONSE TO REQUEST FOR ADMISSION NO. 18:**

Denied as written; the maps are not identical.

**REQUEST FOR ADMISSION NO. 19:**

Please admit that Texas Brine Company, LLC had knowledge that the cavern of Dow Well #18 (Serial No. 971667) had been solution mined to within approximately one foot of Texas Brine Company, LLC's property line on or before July 25, 2013.

**RESPONSE TO REQUEST FOR ADMISSION NO. 19:**

Denied as written.  TBC objects to the term "knowledge" as vague, ambiguous, and calling for a legal conclusion.

## RESPONSES TO INTERROGATORIEES

**INTERROGATORY NO. 1:**

If your response to Request for Admissions No. 8 is anything other than an unqualified admission, please provide the date that the report entitled "Proximity of Class II and Class III Well Caverns to the Edge of the Napoleonville Salt Dome (PB-0374)" dated July 2013 attached hereto as Exhibit "1" was received by an officer, director, manager, member, agent, or employee of Texas Brine, LLC.

**RESPONSE TO INTERROGATORY NO. 1:**

Request for Admissions No. 8 is admitted.

**INTERROGATORY NO. 2:**

If your response to Request for Admissions No. 11 is anything other than an unqualified admission, please provide the date that the report entitled "Proximity of Class II and Class III Well Caverns to the Edge of the Napoleonville Salt Dome (PB-0374)" dated July 2013 attached hereto

as Exhibit "1" was received by an officer, director, manager, member, agent, or employee of United Brine Services, LLC.

**RESPONSE TO INTERROGATORY NO. 2:**

Request for Admissions No. 11 is admitted.

**INTERROGATORY NO. 3:**

If your response to Request for Admissions No. 13 is anything other than an unqualified admission, please detail the business relationship between Texas Brine, LLC and United Brine Services, LLC.

**RESPONSE TO INTERROGATORY NO. 3:**

Request for Admissions No. 13 is admitted.

**INTERROGATORY NO. 4:**

If your response to Request for Admissions No. 18 is anything other than an unqualified admission, please identify every way that the outline of the cavern associated with Dow Well #18 shown on the map contained in Exhibit 1 to your original petition differs from the outline of the cavern associated with Dow Well #18 on the map contained in Appendix D to the report entitled "Proximity of Class II and Class III Well Caverns to the Edge of the Napoleonville Salt Dome (PB-0374)" dated July 2013.

**RESPONSE TO INTERROGATORY NO. 4:**

The map attached as Exhibit 1 to TBC's original complaint contains shading of the property adjacent to the outline of the Dow # 18 Well cavern that is not present on the map contained in Appendix D of the July 2013 report.  [R. Doc. 1-1].  Further, the map contained in Appendix D of the July 2013 report contains a notation in the bottom right corner that explicitly states that "Location of property boundaries, highways, roads, and bayous are approximate."  [R. Doc. 21-4

at 41]. The map attached as Exhibit 1 to TBC's original complaint does not contain this notation. Instead, the notations in the bottom right corner of the map attached as Exhibit 1 to TBC's original complaint is dated April 7, 2014 and state that it is "preliminary." [R. Doc. 1-1].

**INTERROGATORY NO. 5:**

If your response to Request for Admissions No. 19 is anything other than an unqualified admission, please identify the date that Texas Brine, LLC obtained knowledge that the cavern of Dow Well #18 (Serial No. 971667) had been solution mined to within at least one hundred feet of Texas Brine, LLC's property line.

**RESPONSE TO INTERROGATORY NO. 5:**

TBC objects to the phrase "obtained knowledge" as vague, ambiguous, and calling for a legal conclusion. Without waiving such objection, TBC responds to Interrogatory No. 5 as follows:

On or about February 16, 2015, TBC received a notice from Dow that the Dow # 18 well was approximately one foot from TBC's property line. Until Dow's affirmative representation on or about February 16, 2015, TBC lacked sufficient information to put it on notice that its legal rights were infringed based on the location of the Dow # 18 Well cavern.

The July 25, 2013 report titled "Proximity of Class II and Class III Well Caverns to the Edge of the Napoleonville Salt Dome (PB-0374)" was generated for operators on the Napoleonville dome for the purpose demonstrating "the proximity of the outer walls of [each operator's] respective salt caverns to the periphery of the salt stock" at the Napoleonville Salt Dome. [R. Doc. 21-4 at 17]. It was not created nor intended for the purpose of putting any operator on notice as to the proximity of any well cavern to an adjacent property line. Accordingly, TBC did not consider the July 25, 2013 report for the purpose of considering the proximity of the Dow

# 18 Well cavern to TBC's property line and was not on notice of the proximity of the Dow # 18 Well cavern on or before that date.

**INTERROGATORY NO. 6:**

Please identify the [sic] who first obtained knowledge on behalf of Texas Brine Company, LLC that the cavern of Dow Well #18 (Serial No. 971667) had been solution mined within at least one hundred feet of Texas Brine Company, LLC's property line.

**RESPONSE TO INTERROGATORY NO. 6:**

TBC objects to the phrase "obtained knowledge" as vague, ambiguous, and calling for a legal conclusion.  TBC also objects to Interrogatory No. 6 to the extent it seeks information protected by the attorney-client privilege and/or work product protection.  Without waiving such objections, TBC responds as follows:

This interrogatory implicates La. Admin. Code § 43:3315(B)(1).  La. Admin. Code § 43:3315(B)(1) imposes an obligation on solution-mine operators to notify adjacent property owners if the operator's cavern is within one hundred feet of the property line.  This regulation was promulgated in February 2014.  After the regulation was promulgated, TBC personnel began investigating the ramifications of the regulation's limitations on the caverns at the Napoleonville Salt Dome.

An April 17, 2014 internal TBC e-mail drafted by John Sergo with the subject line "RE: Dow wells in relationship to GG and TBC properties" demonstrates that TBC was in the process of ongoing due diligence at that time.  As noted in this e-mail, TBC's due diligence included not only determining the relative location of well caverns, but also determining the location of the boundaries of properties owned by TBC.  Similarly, an April 30, 2014 e-mail from Ted Grabowski

to Steve Mims of Dow demonstrates that TBC was still investigating and discussing potential encroachment issues related to La. Admin. Code § 43:3315(B)(1) at that time.

As an operator of the Dow # 18 Well cavern, which was within one hundred feet of TBC's property line, Dow was obligated to notify TBC of the precise location it believed the cavern rested. Accordingly, it was not until Dow sent this required notice to TBC, in a letter sent on or about February 16, 2015, that TBC had sufficient knowledge to put them on guard of the damage caused by the location of the Dow # 18 Well cavern. The February 16, 2015 letter was first received by Brian Rapp, an employee of a TBC affiliate.

**INTERROGATORY NO. 7:**

Please identify the [sic] any documents, including, but not limited to emails, in Your possession relating to Your knowledge that the cavern of Dow Well #18 (Serial No. 971667) had been solution mined within at least one hundred feet of Texas Brine Company, LLC's property line.

**RESPONSE TO INTERROGATORY NO. 7:**

TBC objects to this interrogatory to the extent that it seeks materials protected by the attorney-client privilege and/or work product protection. Without waiving such objection, see Response to Request for Documents No. 14.

**INTERROGATORY NO. 8:**

Please identify all witnesses whose affidavits or other documents you intend to submit in opposition to Dow's Motion for Summary Judgment [Rec. Doc. 21], whether fact, lay, or expert testimony, and state the subject matter of their anticipated testimony. If you have not yet finalized selection of all witnesses, please lit those presently contemplated, and supplement this answer as others are identified.

16

**RESPONSE TO INTERROGATORY NO. 8:**

TBC objects to this Interrogatory as overly broad, unduly burdensome, and premature. TBC reserves the right to rely on any witness or material obtained in the course of discovery. Without waiving such objections, TBC presently contemplates the use of the following witnesses to submit affidavits or documents on behalf of TBC with respect to Dow's Motion for Summary Judgment [Rec. Doc. 21]:

- Charles Chabannes, expert witness, regarding damage to TBC's property;
- Matt Slezak, fact witness, regarding TBC's understanding of the location of the Dow # 18 Well cavern.

TBC reserves the right to supplement this Response if necessary.

**INTERROGATORY NO. 9:**

Please identify all experts you have consulted or retained regarding the issues presented in Dow's Motion for Summary Judgment [Rec. Doc. 21] and state which of those experts you may or will call at trial, as well as their areas of expertise.

**RESPONSE TO INTERROGATORY NO. 9:**

TBC objects to this Interrogatory as premature to the extent it seeks information outside the agreed-upon scope of discovery, which is limited to Dow's Motion for Summary Judgment. TBC also objects to Interrogatory No. 9 to the extent it seeks information protected by the attorney-client privilege and/or work product protection. TBC reserves the right to consult with and/or retain additional experts in the course of this litigation. Without waiving such objections, see Response to Interrogatory No. 8.

**INTERROGATORY NO. 10:**

Please identify all witnesses and documents that you contend support any of your claims, allegations, arguments, assertions, or positions in opposition to Dow's Motion for Summary Judgment [Rec. Doc. 21].

**RESPONSE TO INTERROGATORY NO. 10:**

TBC objects to this Interrogatory as overly broad, unduly burdensome, and premature. TBC also objects to Interrogatory No. 10 the extent it seeks information protected by the attorney-client privilege and/or work product protection.  TBC reserves the right to rely on any witness, document, or other material obtained in the course of discovery.  Without waiving such objections, see TBC's Response to Interrogatory No. 8, as well as TBC's Responses to Requests for Production of Documents Nos. 3-5.

**INTERROGATORY NO. 11:**

Please identify all persons you have interviewed and/or from whom you have obtained an oral, written, or otherwise documented or recorded statement regarding the allegations, claims, and/or defenses regarding the issues presented in Dow's Motion for Summary Judgment [Rec. Doc. 21].  In addition to identifying those persons, please state the content of the interview or statement, state the date of each such interview or statement, identify the person conducting the interview or taking the statement, and, if the interview or statement was written or recorded, state who has present custody of the statement or documentation of the interview.

**RESPONSE TO INTERROGATORY NO. 11:**

TBC objects to this Interrogatory as vague, overly broad, and unduly burdensome.  TBC further objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege and/or work product protection.  Without waiving such objections, TBC does not possess any material subject to production in response to Interrogatory No. 11.

**INTERROGATORY NO. 12:**

Please identify all government representatives, whether State or federal, with whom you communicated regarding the proximity of the Dow #18 Well to TBC's property.

**RESPONSE TO INTERROGATORY NO. 12:**

TBC objects to this Interrogatory as vague and overly broad.  TBC also objects to Interrogatory No. 12 the extent it seeks information protected by the attorney-client privilege and/or work product protection.  Without waiving such objections, TBC retained a consultant to acquire Louisiana public records regarding the Dow # 18 Well cavern.  These documents are produced in response to Request for Production of Documents No. 9.

**INTERROGATORY NO. 13:**

If, in support of your claims in this action, you intend to rely on any statement made by or on behalf of Dow, or if you contend that any such statement is an admission, please:

    a.    State the date on which the statement was made:

    b.    Identify the person who made the statement and all persons who were present when the statement was made; and

    c.    Describe the substance of the statement.

**RESPONSE TO INTERROGATORY NO. 13:**

TBC objects to this Interrogatory as premature and TBC reserves the right to rely on any documents or statements made by Dow in the course of discovery.  Without waiving such

objection, TBC intends to rely on Dow's February 16, 2015 notice letter in which Dow put TBC on notice of the location and proximity of the Dow # 18 Well cavern to TBC's property. This document is produced in response to Requests for Production of Documents No. 8.

**INTERROGATORY NO. 14:**

Please identify all contractors or other entities that have performed any measurements of the proximity of Dow #18 Well cavern to Your property referenced in Your petition at any time.

**RESPONSE TO INTERROGATORY NO. 14:**

TBC objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege and/or work product protection. Without waiving such objection, TBC has not hired any contractor or other entity to measure the proximity of the Dow # 18 Well cavern to TBC's property. TBC reserves the right to hire an entity to perform such measurements at any time and will supplement this Response if necessary.

**INTERROGATORY NO. 15:**

Please identify all witnesses, documents or other information that supports the allegation contained in Your petitions that "Dow's current operations and monitoring of Well Serial #971667 is causing further encroachment of the well cavern towards and/or upon TBC's Property."

**RESPONSE TO INTERROGATORY NO. 15:**

TBC objects to this Interrogatory as vague, overly broad, and unduly burdensome. TBC further objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege and/or work product protection. Without waiving such objections, see Responses to Interrogatory No. 8 and to Request for Production of Documents No. 7.

<u>RESPONSES TO REQUESTS FOR PRODUCTION</u>

**<u>REQUEST FOR PRODUCTION NO. 1:</u>**

Please produce all documents identified in your answers to the accompanying Interrogatories propounded upon you by Dow.

**<u>RESPONSE TO REQUEST FOR PRODUCTION NO. 1:</u>**

TBC objects to this Request as vague, overly broad, and unduly burdensome.  Without waiving such objection, all documents responsive to Request for Production No. 1 are produced in the subsequent Reponses to Requests for Production.

**<u>REQUEST FOR PRODUCTION NO. 2:</u>**

Please produce all documents that you reviewed or consulted or upon which you relied in answering the accompanying Interrogatories propounded upon you by Dow.

**<u>RESPONSE TO REQUEST FOR PRODUCTION NO. 2:</u>**

TBC objects to this Request as vague, overly broad, and unduly burdensome.  TBC further objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege and/or work product protection.  Without waiving such objection, all documents responsive to Request for Production No. 2 are produced in the subsequent Reponses to Requests for Production.

**<u>REQUEST FOR PRODUCTION NO. 3:</u>**

Please produce all documents that you contend support any of your claims, allegations, arguments, assertions, or positions in opposition to Dow's Motion for Summary Judgment [Rec. Doc. 21].

**RESPONSE TO REQUEST FOR PRODUCTION NO. 3:**

TBC objects to this Request as vague, overly broad, and unduly burdensome.  TBC reserves the right to rely on any information or document produced in discovery, including documents produced by Dow or any other party.  TBC further objects to this Request as premature and reserves the right to rely on additional documents that may be discovered later in the course of discovery and to supplement this Response as necessary.  Without waiving such objection, see enclosed documents Bates-labelled TBC-1176-TBC-1190.

**REQUEST FOR PRODUCTION NO. 4:**

Please produce all documents that you anticipate consulting, utilizing, referring to, or offering into evidence in opposition to Dow's Motion for Summary Judgment [Rec. Doc. 21].

**RESPONSE TO REQUEST FOR PRODUCTION NO. 4:**

TBC objects to this Request as vague, overly broad, and unduly burdensome.  TBC further objects to this Request to the extent it seeks information protected by the attorney-client privilege and/or work product protection.  TBC objects to this Request as premature and reserves the right to consult, utilize in any way, and offer into evidence any relevant documents discovered in the course of this litigation and to supplement this Response as necessary.  Without waiving such objection, see enclosed documents Bates-labelled TBC-1176-TBC-1190.

**REQUEST FOR PRODUCTION NO. 5:**

Please produce all exhibits, including demonstrative exhibits, which you may use at the hearing on Dow's Motion for Summary Judgment [Rec. Doc. 21].

**RESPONSE TO REQUEST FOR PRODUCTION NO. 5:**

TBC objects to this Request as vague, overly broad, and unduly burdensome.  TBC further objects to this Request as premature.  TBC objects to this Request as premature and reserves the

right to consult, utilize in any way, and offer into evidence any relevant documents discovered in the course of this litigation and to supplement this Response as necessary.  Without waiving such objection, see enclosed documents Bates-labelled TBC-1176-TBC-1190.

**REQUEST FOR PRODUCTION NO. 6:**

Please produce all affidavits you intend to present in opposition to Dow's Motion for Summary Judgment [Rec. Doc. 21].

**RESPONSE TO REQUEST FOR PRODUCTION NO. 6:**

TBC objects to this Request as premature.  TBC will produce any affidavits in support of its opposition to Dow's Motion for Summary Judgment [R. Doc. 21] in a timely manner in the discovery process on Dow's Motion for Summary Judgment.

**REQUEST FOR PRODUCTION NO. 7:**

Please produce all documents relating to any expert identified in Your answer to Interrogatory No. 9, including, without limitation, the following:

| | |
|---|---|
| a. | All documents reflecting any expert's opinions, analysis, methodology, and conclusions, |
| b. | All experts' reports; |
| c. | All experts' curricula vitae; |
| d. | All experts' entire files; |
| e. | All experts' reliance materials; |
| f. | All experts' work papers; |
| g. | All documents containing any instructions, assumptions, and/or parameters provided to any expert and/or regarding any assumptions of any expert; |
| h. | Lists of all the experts' publications over the past 10 years; |
| i. | Lists of all cases in which each expert has been retained over the past four years and copies of all transcripts of each expert's trial and deposition testimony in the past four years; |
| j. | All documents reflecting the experts' qualifications; |
| k. | All experts' licenses and certifications; |
| l. | All documents reviewed by any expert in connection with this action; |
| m. | All documents on which any expert relies; |
| n. | All documents reflecting any research and investigation done by, done for, or provide to any expert; |
| o. | All documents reflecting any calculations performed by any expert; |

p.      All documents containing or reflecting formulas or equations used by any expert;

q.      All notes or markups generated by any expert;

r.      All documents referenced in each expert's report;

s.      All exhibits planned for use with any expert, including demonstrative exhibits, charts, graphs, drawings, powerpoints, and spreadsheets;

t.      All exhibits prepared by any expert or in which any expert assisted in the preparation, including demonstrative exhibits, charts, graphs, drawings, powerpoints, and spreadsheets;

u.      All documents summarizing any expert's opinions, conclusions, or testimony;

v.      All documents any expert contends support his or her opinions; and

w.      All documents regarding the experts' compensation in connection with this action, including, without limitation, the experts' contracts, rate sheets, and invoices.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 7:**

TBC objects to this Request as overly broad and unduly burdensome.  TBC further objects to this Request to the extent it seeks information protected by the attorney-client privilege and/or work product protection.  Without waiving such objections, TBC intends to designate Charles Chabannes as an expert in conjunction with its opposition to Dow's Motion for Summary Judgment [R. Doc. 21].

**REQUEST FOR PRODUCTION NO. 8:**

If, in support of your claims in this action, you intend to rely on any statement made by or on behalf of Dow, or if you contend that any such statement is an admission, please produce all documents containing and/or relating to any such statement(s).

**RESPONSE TO REQUEST FOR PRODUCTION NO. 8:**

TBC objects to this Request as premature and reserves the right to rely on additional documents that may be discovered in the course of discovery and to supplement this Response as necessary.  Without waiving such objection, see Dow's February 16, 2015 notice Bates-labelled TBC-1181-1182.

**REQUEST FOR PRODUCTION NO. 9:**

Please produce all documents obtained by you through subpoenas, Freedom of Information Act or public records request, and/or other requests from third parties in connection with this action.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 9:**

TBC objects to this Request as vague, overly broad, and unduly burdensome. TBC further objects to this Request to the extent it seeks information protected by the attorney-client privilege and/or work product protection. Without waiving such objections, see documents Bates labelled SNRWIRE001-567 obtained from Sonarwire, Inc. and documents Bates labelled TBC-001-1175 obtained from the Louisiana DNR.

**REQUEST FOR PRODUCTION NO. 10:**

Please produce all documents related to any measurements taken of the proximity of Dow #18 Well cavern to Your property referenced in Your Petitions, at any time, whether performed by You or any other entity, including, but not limited to, any documents relating to the margin of error for any such measurements taken of the Dow #18 Well cavern.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 10:**

TBC objects to this Request as vague, overly broad, and unduly burdensome. TBC further objects to this Request to the extent it seeks information protected by the attorney-client privilege and/or work product protection. TBC also objects to this Request to the extent that documents responsive to this Request are primarily documents in the custody or control of Dow. Without waiving such objections, see documents Bates labelled TBC-1192-1500 and SNRWIRE001-567.

**REQUEST FOR PRODUCTION NO. 11:**

Please produce all documents relating to Dow's ongoing monitoring activities at the Dow #18 Well from the time Dow stopped solution-mining the Dow #18 Well cavern to present.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 11:**

TBC objects to this Request as vague, overly broad, and unduly burdensome.  TBC further objects to this Request to the extent it seeks information protected by the attorney-client privilege and/or work product protection.  TBC also objects to this Request to the extent that documents responsive to this Request are primarily documents in the custody or control of Dow.  Without waiving such objections, the only documents in TBC's custody or control that are responsive to Request for Production No. 11 are those produced by Dow in Dow's Responses to TBC's Requests for Production of Documents.

**REQUEST FOR PRODUCTION NO. 12:**

Please produce all e-mails, notes, logs, records, or other documents indicating the location of the Dow #18 Well cavern in relation to TBC's adjacent property at any time since the Dow #18 Well was spud in 1986.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 12:**

TBC objects to this Request as vague, overly broad, and unduly burdensome.  TBC further objects to this Request to the extent it seeks information protected by the attorney-client privilege and/or work product protection.  TBC also objects to this Request to the extent that documents responsive to this Request are primarily documents in the custody or control of Dow.  Without waiving such objections, see documents Bates labelled TBC-1190-1510 and SNRWIRE001-567.

**REQUEST FOR PRODUCTION NO. 13:**

Please produce all e-mails, notes, logs, records, or other documents evidencing Your knowledge that the cavern of Dow Well #18 (Serial No. 971667) had been solution mined to within at least one hundred feet of Texas Brine Company's property line.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 13:**

TBC objects to this Request as vague, overly broad, and unduly burdensome.  TBC further objects to this Request to the extent it seeks information protected by the attorney-client privilege and/or work product protection.  TBC objects to the term "knowledge" as vague, ambiguous, and calling for a legal conclusion.  Without waiving such objections, see documents Bates labelled TBC-1180-1182; TBC-1511-1523; TBC-1526-1529.

**REQUEST FOR PRODUCTION NO. 14:**

Please produce all e-mails, notes, logs, records, or other documents evidencing the date You first acquired knowledge that the cavern of Dow Well #18 (Serial No. 971667) had been solution mined to within at least one hundred feet of Texas Brine Company, LLC's property line.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 14:**

TBC objects to this Request as vague, overly broad, and unduly burdensome.  TBC also objects to the phrase "acquired knowledge" as vague, ambiguous, and calling for a legal conclusion.  TBC further objects to this Request to the extent it seeks information protected by the attorney-client privilege and/or work product protection.  Without waiving such objections, see documents Bates labelled TBC-1180-1182.

/s/ James M. Garner
LEOPOLD Z. SHER # 12014
JAMES M. GARNER # 19589
THOMAS J. MADIGAN # 28132
ERIC J. BLEVINS # 34209
**SHER GARNER CAHILL RICHTER KLEIN &
HILBERT, L.L.C.**
909 Poydras Street, 28th Floor
New Orleans, Louisiana  70112
Telephone: (504) 299-2100
Facsimile: (504) 299-2300
E-mail:  jgarner@shergarner.com
**ATTORNEYS FOR TEXAS BRINE
COMPANY, LLC**

## CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of February, 2016, a copy of the above and foregoing

has been served via electronic mail on all counsel of record.

/s/ James M. Garner
JAMES M. GARNER

28