## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **TEXAS BRINE COMPANY, LLC AND LOUISIANA SALT, LLC** | * | **LEAD CASE: NO. 15-1102** |
| | * | **C/W CASE NO. 15-3324** |
| | * | **APPLIES TO ALL CASES** |
| **VERSUS** | | |
| | * | **JUDGE KURT D. ENGELHARDT** |
| **THE DOW CHEMICAL COMPANY, DOW HYDROCARBONS & RESOURCES, LLC, AND CLIFTON LAND CORPORATION** | * * | **MAGISTRATE JANIS VAN MEERVELD** |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

### TEXAS BRINE COMPANY, LLC'S RESPONSES TO DOW'S FOURTH SET OF DISCOVERY

TO:    **The Dow Chemical Company**
       *Through its Counsel of Record*
       John Allain Viator
       Bienvenu, Bonnecaze, Foco, Viator & Holinga, APLLC
       4210 Bluebonnet Boulevard
       Baton Rouge, Louisiana 70809

Texas Brine Company, LLC ("TBC") hereby responds to the Fourth Set of Interrogatories and Requests for Production of Documents ("Discovery") propounded by The Dow Chemical Company ("Dow") as follows:

### GENERAL OBJECTIONS

1.     All the responses set forth below are (subject to the qualifications identified) based solely upon the information and documents presently available to TBC.  Formal and informal discovery will continue as long as permitted by statute, rule, or stipulation of the parties, and the investigation by TBC, TBC's attorneys, and TBC's agents will continue throughout the trial of this action.  As that investigation and discovery proceeds, witnesses, facts, documents, and evidence may be discovered that are not set forth herein but that may be

Exhibit C

responsive to the Discovery.  The following responses are given without prejudice to TBC's right to alter or amend these responses as the result of subsequently discovered evidence and to present evidence at trial, including, but not limited to, expert testimony, discovered or obtained after the date of these responses.  TBC reserves the right to supplement its responses to the Discovery in the future.

2.     Nothing herein shall be construed as an admission by TBC with respect to the admissibility or relevance of any documents produced.

3.     TBC objects to the Discovery to the extent it seeks information that is in the public domain and/or to which Dow has equal or greater access.

4.     TBC objects to the Discovery to the extent it seeks the disclosure or production of confidential, proprietary, trade secret, and/or constitutionally protected business information or documents.  TBC further objects to the Discovery to the extent it seeks confidential sensitive financial information, including personal financial information, tax documents, confidential financial information, trade secret financial information, and/or bank records, all of which must be narrowly tailored to the discrete issues presented by the case to avoid undue burden, undue hardship, loss, damage, annoyance, and embarrassment, and all of which are protected from disclosure unless the requesting party has shown good cause.

5.     TBC objects to the Discovery to the extent it seeks information or documents the production of which would violate any constitutional, statutory, or other privacy interest of any current or former employee or representative of TBC or any other person or entity.

6.     TBC objects to the Discovery to the extent it seeks the production of information or documents that are protected by the attorney client privilege, work product doctrine, and/or

any other applicable privilege or protection, including information obtained by or on behalf of counsel for TBC in preparation for this litigation, or documents prepared in anticipation of this litigation and/or subsequent to the time this litigation was filed.  TBC considers all communications and documents generated in preparation for this litigation on or after the date the lawsuit was filed as privileged and/or protected work product, not subject to production or inclusion in a privilege log.

7.     TBC objects to the Discovery to the extent it contains vague and/or ambiguous terms.  TBC further objects to the Discovery to the extent it is vague, ambiguous, overbroad, unduly burdensome, harassing, and/or seeking information that is irrelevant to the subject matter involved in this litigation and/or not reasonably calculated to lead to the discovery of admissible evidence.  TBC further objects to the Discovery to the extent it assumes allegations are accepted facts, and to the extent the Discovery calls for speculation.  TBC further objects to the Discovery to the extent that it is premature.

8.     TBC's responses are made without in any way waiving the right to object on the grounds of competency, relevancy, materiality, hearsay, or any other proper ground to the use of such information for any purpose, in whole or in part, in any subsequent proceeding in this action or any other action, or the right to object on any and all grounds at any time to any other discovery procedure related to the subject matter of the Discovery.

9.     TBC objects to the discovery requests to the extent that they attempt to require the production by TBC of documents in the possession or under the control of persons or entities legally distinct from TBC.

10.    TBC incorporates the foregoing General Objections into each and every objection and/or individualized response contained herein and set forth below and into each and every

amendment, supplement, and/or modification to these responses hereinafter provided to the specific request.  TBC does not waive any General Objections in response to any specific request.

**RESPONSES TO FOURTH SET OF INTERROGATORIES**

**INTERROGATORY NO. 1:**

Please state the name, address, and relationship to TBC of every person you know to have knowledge of any facts relevant to the claims or defenses of any party to this litigation. For each person, please provide the individual's address, employer, position, and a summary of the facts known by each individual.

**ANSWER TO INTERROGATORY NO. 1:**

TBC objects to Interrogatory No. 1 as vague, ambiguous, overbroad, and duplicative.  TBC further objects to Interrogatory No. 1 to the extent it seeks information subject to the attorney-client privilege and/or work product protections.  Without waiving such objections, see persons identified in TBC's previous Responses to Dow's discovery.  In further response, TBC identifies the following individuals:

- Wayne Sneed;

- Joel Warneke;

- Brian Rapp;

- Matt Slezak;

- Ted Grabowski;

- AB Trevino;

- Andrew McKay;

- Mark Cartwright;

- Jeff McCartney;

- John Sergo.

## INTERROGATORY NO. 2:

Please provide the name, address, telephone number, and a summary of expected testimony for each fact witness you may call at trial.

## ANSWER TO INTERROGATORY NO. 2:

TBC objects to Interrogatory No. 2 as vague, ambiguous, overbroad, and premature.  TBC reserves the right to identify witnesses in compliance with the Court's February 23, 2017 Order. Without waiving such objections, see response to Interrogatory No. 1.

## INTERROGATORY NO. 3:

Please provide the name, address, telephone number, and area of expertise for every expert witness you may call at trial. For each expert identified, please provide a summary of their expected testimony.

## ANSWER TO INTERROGATORY NO. 3:

TBC objects to Interrogatory No. 3 as vague, ambiguous, and overbroad.  TBC reserves the right to identify witnesses in compliance with the Court's February 23, 2017 Order.  Without waiving such objection, see the Rule 26-compliant expert report of Charles Chabannes produced January 13, 2017[1] in connection with this matter.  See also Rule-26 compliant expert reports of Charles Chabannes, Joel Warneke, R. Wayne Sneed, and Holly Sharp produced June 15, 2017.

---

[1] The report was inadvertently dated January 13, 2016.

**INTERROGATORY NO. 4:**

Please provide the name, address, telephone number, and area of expertise for every expert you have retained as a consultant in this litigation, even if you do not intend to call him or her at trial.

**ANSWER TO INTERROGATORY NO. 4:**

TBC objects to Interrogatory No. 4 as overbroad and to the extent it seeks information protected by the attorney-client privilege and/or work product protection.  Without waiving such objection:

- Michael Truax, 3045 Ridgelake Dr., Ste. 100, Metairie, LA 70002

**INTERROGATORY NO. 5:**

Please identify with specificity every document TBC relied upon in drafting the Complaint filed on April 7, 2015, as well each Supplemental and Amending Complaint. For each document listed, please provide the date the document was drafted, the date TBC received each document, and any previous versions of each document.

**ANSWER TO INTERROGATORY NO. 5:**

TBC objects to Interrogatory No. 5 as vague, ambiguous, overbroad, and unduly burdensome.  TBC further objects to the extent Interrogatory No. 5 seeks information protected by the attorney-client privilege and/or work product protection.  Without waiving such objections, see all documents, information, and witnesses identified in TBC's Responses to Dow's previous Discovery and Responses herein.

**INTERROGATORY NO. 6:**

Please identify each person who has supplied any information or assisted in locating any documents or tangible things used in answering or responding to this discovery, and provide a year-by-year list of all positions or job titles held by each person.

**ANSWER TO INTERROGATORY NO. 6:**

TBC objects to Interrogatory No. 6 as vague, ambiguous, overbroad, and duplicative. TBC further objects to Interrogatory No. 6 to the extent it seeks information protected by the attorney-client privilege and/or work product protections. Without waiving such objections, see Response to Interrogatory No. 1.

**INTERROGATORY NO. 7:**

Please identify your correct name, as well as all of TBC's prior names and predecessor entities. For each entity identified please include the date of incorporation, any prior names (including the dates during which the prior names were in effect), any mergers (including the dates of such mergers), and any acquisitions (including the dates of such acquisitions).

**ANSWER TO INTERROGATORY NO. 7:**

TBC objects to Interrogatory No. 6 to the extent it seeks information publically available and/or to which Dow has equal access. Without waiving such objections, TBC's correct name is "Texas Brine Company, LLC."

**INTERROGATORY NO. 8:**

Please state whether you provided notices of encroachment, or a similar notice, to an adjoining landowner pursuant to La. Administrative Code § 43:3315(B)(1) concerning the following wells:

    a.    Well serial number 142314

b.      Well serial number 142315

c.      Well serial number 142316

d.      Well serial number 158778

e.      Well serial number 973089

f.      Well serial number 973515

g.      Well serial number 151645

h.      Well serial number 151646

i.      Well serial number 180708

For each of the foregoing wells, please identify the documents relied upon in determining whether such notice was required, the date notice was sent if applicable, and the landowner to whom notice was sent if applicable.

## ANSWER TO INTERROGATORY NO. 8:

TBC objects to Interrogatory No. 8 as vague, ambiguous, and overbroad.  TBC further objects to the extent Interrogatory No. 8 seeks information protected by the attorney-client privilege and/or work product protections.  TBC specifically objects that communications among TBC employees, including communications with TBC's corporate counsel, regarding the applicability of La. Administrative Code § 43:3315 and TBC's response to Louisiana regulatory directives are attorney-client privileged and/or protected work product.  *See Upjohn Co. v. U.S.*, 449 U.S. 383, 394 (1981); *Yankee Atomic Elec. Co. v. U.S.*, 54 Fed.Cl. 306, 313-4 (2002); *Lacefield v. U.S.*, 1993 WL 268392, at *4 (D. Colo. 1993); *A.N.S.W.E.R. Coalition v. Jewell*, 292 F.R.D. 44, 48 (D.D.C. 2013).  Without waiving such objections, TBC responds as follows:

a.      Well serial number 142314- see February 19, 2015 notice letter addressed to Daniel Craft, produced at TBC-4571-4572; and February 19, 2015 notice letter addressed to Texas Brine Company, LLC, produced at TBC-4567-4568.

b.      Well serial number 142315- see February 19, 2015 notice letter addressed to Daniel Craft, produced at TBC-4571-4572; and February 19, 2015 notice letter addressed to Texas Brine Company, LLC, produced at TBC- TBC-4567-4568.

c.      Well serial number 142316- see February 19, 2015 notice letter addressed to Daniel Craft, produced at TBC-4571-4572; and February 19, 2015 notice letter addressed to Texas Brine Company, LLC, produced at TBC- TBC-4567-4568.

d.      Well serial number 158778- see February 19, 2015 notice letter addressed to Daniel Craft, produced at TBC-4571-4572.

e.      Well serial number 973089- see February 19, 2015 notice letter addressed to Craig Kleinpeter, produced at TBC-4575-4576; and February 19, 2015 notice letter addressed to Mark Steven Newchurch, produced at TBC-4565-4566; and February 19, 2015 notice letter addressed to Texas Brine Company, LLC, produced at TBC- TBC-4567-4568.

f.      Well serial number 973515- none

g.      Well serial number 151645- see February 19, 2015 notice letter addressed to Dugas & Leblanc, Ltd. produced at TBC-4573-4574; and February 19, 2015 notice letter addressed to Texas Brine Company, LLC, produced at TBC-4569-4570.

h.      Well serial number 151646- none

i.      Well serial number 180708- none

In further response, see documents produced at TBC-2176-2177, 2191-2192, 2207-2209, 2212-2217, 2222-2223, 2234-2237, 2242-2246, 2249-2256, 2269-2270, 2272, 2618, 2626-2627, 2636-

9

2637, 2638-2639, 2717, 2774-2779, 2782-2783, 3506-3513, 3520-3521, 3523-3552, 3559-3570, 3572-3573, 3684.

**INTERROGATORY NO. 9:**

Please identify the following information related to the April 7, 2014 map attached to the original petition as Exhibit "1":

    a.    The person who created the map;

    b.    The base map used to generate this map;

    c.    The dates of all prior versions of the map;

    d.    The data source used for the outline for the Dow #18 Cavern as depicted on the map; and

    e.    All documents relied on to create this map.

**ANSWER TO INTERROGATORY NO. 9:**

TBC objects to Interrogatory No. 9 as vague, ambiguous, and duplicative.   TBC specifically objects to the terms "relied on" as vague and confusing.   TBC further objects to Interrogatory No. 9 to the extent it seeks information protected by the attorney-client privilege and/or work product protections.   Without waiving such objections, the April 7, 2014 map attached to the original Complaint as Exhibit "1" was generated by AB Trevino.   The data for creation of the Exhibit "1" map, including cavern outlines, were drawn from two sources: 1) a data file provided by Joe Ratigan previously used in a 2013 report generated by Joe Ratigan, entitled "Proximity of Class II and Class III Well Caverns to the Edge of the Napoleonville Salt Dome" (the "Ratigan Report"); and 2) an "Assessed Ownership Plat" previously produced at TBC-1553. See also native file, which TBC will provide via supplemental production as soon as possible.

10

**INTERROGATORY NO. 10:**

Please outline and describe any written or oral communications that TBC had with Louisiana Salt, LLC between October 1, 2014 and the date of trial regarding the following information:

      a.      The condition of the Property, including but not limited to the proximity of the exterior wall of the Dow #18 Cavern to the property boundary;

      b.      All calculations and/or valuations of salt reserves on the Property;

      c.      The Dow #18 Well and the Dow #18 Cavern;

      d.      Potential encroachments by any solution-mining caverns on any property owned by TBC;

      e.      Any potential encroachments upon adjoining property by solution-mined caverns owned or operated by TBC upon;

      f.      All maps, drawings, surveys, plats, or other schematics of the Property;

      g.      The potential number of solution mining caverns that could be located on The Property and the design parameters of such caverns; and

      h.      Other valuable consideration given by TBC to Louisiana Salt, LLC for The Property.

**ANSWER TO INTERROGATORY NO. 10:**

TBC objects to Interrogatory No. 10 as vague, ambiguous, overbroad, and unduly burdensome. TBC specifically objects that the request for "[o]ther valuable consideration given by TBC to Louisiana Salt, LLC for The Property" is confusing and frustrates TBC's ability to respond. TBC specifically objects to the term "salt reserves" as vague and confusing and reserves its right to supplement this response. TBC further objects to Interrogatory No. 10 to the extent it

11

seeks communications protected by the attorney-client privilege and/or work product protections. TBC specifically objects to any request for communications by and between TBC and Louisiana Salt, including communications with their lawyers, regarding the litigation because such communications are protected by the attorney-client privilege under the "common interest" doctrine established by the United States Court of Appeal for the Fifth Circuit. *See BCR Safeguard Holding, L.L.C. v. Morgan Stanley Real Estate Advisor, Inc.*, 614 Fed. Appx. 690 (5th Cir. 2015).

Without waiving such objections, and in the spirit of cooperation, see documents TBC-2218-2221, 4581-4676. See also document previously produced at TBC-1596.

## INTERROGATORY NO. 11:

Please identify all investigations conducted by or on behalf of TBC into whether the exterior cavern wall of any solution-mined caverns owned or operated by TBC were located within 100 feet of property owned by others on the Napoleonville Salt Dome within the five years preceding April 7, 2015. For the purposes of this interrogatory, it is immaterial whether such investigation was conducted directly in response to the revision of Administrative Code article 43:3315. For each investigation, please provide:

a.   The dates the investigation commenced and terminated;

b.   If the investigation was conducted by TBC or one of its subsidiaries, the person in charge of conducting the investigation;

c.   If the investigation as conducted by a third party, the entity charged with conducting the investigation;

d.   The serial number of the well investigated;

e.   Whether the investigation concluded that the solution-mined cavern extended to within 100 feet of property owned by a third party;

12

    f.      If the investigation concluded that a solution-mined cavern was located within 100 feet of the property boundary, please describe all remedial steps taken by Louisiana Salt, LLC;

    g.      Whether notice of any potential encroachment was sent to a third party landowner as a result of the investigation; and

    h.      All data sets, maps, plats, schematics, or other documentation or information relied upon in assessing whether the solution-mined cavern was within 100 feet of property owned by a third party.

**ANSWER TO INTERROGATORY NO. 11:**

    TBC objects to Interrogatory No. 11 as vague, ambiguous, overbroad, unduly burdensome, and duplicative.  TBC specifically objects to the term "investigations" as so vague, ambiguous, and confusing as to frustrate TBC's ability to respond.  TBC objects to the reference to Louisiana Salt in sub-part (f) and responds as to TBC.  TBC objects to the request to the extent that it attempts to require the production by TBC of documents in the possession or under the control of persons or entities legally distinct from TBC.  TBC further objects to Interrogatory No. 11 to the extent it seeks information subject to the attorney-client privilege and/or work product protections.  TBC specifically objects that communications among TBC employees, including communications with TBC's corporate counsel, regarding the applicability of La. Administrative Code § 43:3315 and TBC's response to Louisiana regulatory directives are attorney-client privileged and/or protected work product.  *See Upjohn Co. v. U.S.*, 449 U.S. 383, 394 (1981); *Yankee Atomic Elec. Co. v. U.S.*, 54 Fed.Cl. 306, 313-4 (2002); *Lacefield v. U.S.*, 1993 WL 268392, at *4 (D. Colo. 1993); *A.N.S.W.E.R. Coalition v. Jewell*, 292 F.R.D. 44, 48 (D.D.C. 2013).

    Without waiving such objections, TBC responds as follows:

13

Interrogatory No. 11's request for an identification of "investigations" does not reflect TBC's ordinary course of business.   As TBC understands the term, the only responsive "investigations" engaged by TBC into the proximity of solution-mined caverns owned or operated by TBC to property lines relate to TBC's response to Louisiana regulations.   However, in the spirit of cooperation, see the following documents: TBC-1843-1844, 2186, 2208, 2222-2225, 2230-2231, 2238-2246, 2257-2270, 2272, 2276, 2283-2284, 2615, 2618, 2624-2627, 2758, 2761-2762, 2774-2776, 2780-2783, 2792-2803, 2810-2813, 2988-2989, 3199-3201, 3512-3513, 3523-3524, 3541-3552, 3571-3576, 3685-3691.

## INTERROGATORY NO. 12:

Please identify all investigations conducted by or on behalf of TBC into whether the exterior cavern wall of any solution-mined caverns owned or operated by entities other than TBC were located within 100 feet of property owned by TBC within the five years preceding April 7, 2015. For the purposes of this interrogatory, it is immaterial whether such investigation was conducted directly in response to the revision of Administrative Code article 43:3315. For each investigation, please provide:

a.    The dates the investigation commenced and terminated;

b.    If the investigation was conducted by TBC or one of its subsidiaries, the person in charge of conducting the investigation;

c.    If the investigation was conducted by a third party, the entity charged with conducting the investigation;

d.    The serial number of the well investigated;

e.    Whether the investigation concluded that the solution-mined cavern extended to within 100 feet of property owned by TBC; and

14

   f.  All data sets, maps, plats, schematics, or other documentation or information relied upon in assessing whether the solution-mined cavern was within 100 feet of property owned by a third party.

**ANSWER TO INTERROGATORY NO. 12:**

  TBC objects to Interrogatory No. 12 as vague, ambiguous, overbroad, unduly burdensome, and duplicative. TBC specifically objects to the term "investigations" as vague, ambiguous, and confusing so as to frustrate TBC's ability to respond. TBC objects to the request to the extent that it attempts to require the production by TBC of documents in the possession or under the control of persons or entities legally distinct from TBC. TBC also objects to the lack of parameters in Interrogatory No. 12 and responds as to operations on the Napoleonville Salt Dome, as specified in Interrogatory No. 11. TBC further objects to Interrogatory No. 12 to the extent it seeks information subject to the attorney-client privilege and/or work product protections. TBC specifically objects that communications among TBC employees, including communications with TBC's corporate counsel, regarding the applicability of La. Administrative Code § 43:3315 and TBC's response to Louisiana regulatory directives are attorney-client privileged and/or protected work product. *See Upjohn Co. v. U.S.*, 449 U.S. 383, 394 (1981); *Yankee Atomic Elec. Co. v. U.S.*, 54 Fed.Cl. 306, 313-4 (2002); *Lacefield v. U.S.*, 1993 WL 268392, at *4 (D. Colo. 1993); *A.N.S.W.E.R. Coalition v. Jewell*, 292 F.R.D. 44, 48 (D.D.C. 2013).

  Without waiving such objections, TBC responds as follows:

  Interrogatory No. 12's request for an identification of "investigations" does not reflect TBC's ordinary course of business. However, in the spirit of cooperation, see the following documents: TBC-1680-1683, 1877-1884, 1917-1921, 1954-1956, 2062-2064, 2184-2186, 2206-2208, 2210-2211, 2214-2217, 2232, 2234-2236, 2247-2256, 2273, 2283-2284, 2291-2293, 2615,

2618, 2621-2627, 2636-2639, 2758-2762, 2790-2791, 2949-2950, 2985-2987, 3052-3055, 3233-3237, 3241-3246, 3248, 3262-3263, 3296-3310, 3343, 3376-3378, 3414-3420, 3504-3511, 3514-3517, 3520-3521, 3525-3540, 3553-3578, 3641-3643, 3676-3683, 3685-3692, 3694-3696, 3700-3702, 4577-4580.

**INTERROGATORY NO. 13:**

In Paragraph 4 of the Declaration of Ted Grabowski's [sic] from January 23, 2017, he attested that "Mr. Warneke's [March 26, 2014] e-mail was the preliminary identification of an issue as to whether or not other caverns were encroaching in violation of new Louisiana solution-mining regulations promulgated in February of 2014." Regarding Joel Warneke's search to identify whether caverns were encroaching in violation of new Louisiana solution-mining regulations promulgated in February of 2014, referenced in the Declaration of Ted Grabowski, please identify the following:

      a.      The date Mr. Warneke's search began;

      b.      All other individuals who participated in Mr. Warneke's search;

      c.      All documents reviewed in Mr. Warneke's search;

      d.      All documents relied upon for the preliminary identification referenced in Paragraph 4 of Grabowski's January 23, 2017 Declaration; and

      e.      All documents in your possession that reference Mr. Warneke's search in any way.

**ANSWER TO INTERROGATORY NO. 13:**

TBC objects to Interrogatory No. 13 as vague, ambiguous, overbroad, unduly burdensome, and duplicative. TBC specifically objects to the terms "Mr. Warneke's search" and "documents reviewed in Mr. Warneke's search," and "all documents relied upon" as vague, ambiguous, and confusing. Without waiving such objections, see TBC's Responses to Dow's First, Second and

16

Third Set of Discovery including, but not limited to, TBC's Response to Interrogatory No. 6 of Dow's First Set of Discovery.  In further response, Mr. Warneke's preliminary identification of a possible encroachment issue was raised in his March 26, 2014 e-mail that has been produced by TBC.  Mr. Warneke did not direct any other individuals to develop this issue.

**INTERROGATORY NO. 14:**

In Paragraph 4 of the Declaration of Ted Grabowski from January 23, 2017, he attested that "[i]n response to Mr. Warneke's March 26, 2014 e-mail, recognizing the uncertainty of the proximity of the Dow#18 cavern to TBC's property line, as President of TBC, I instructed another employee, John Sergo, to begin investigating the location of TBC's property lines on the Napoleonville salt dome to understand whether the Dow #18 cavern was or was not encroaching on or near TBC's property." Regarding the Sergo investigation referenced in Ted Grabowski's Declaration, please identify the following:

      a.      All people involved in John Sergo's investigation;

      b.      All documents reviewed by John Sergo and others involved in the investigation into the location of TBC's property lines on the Napoleonville salt dome to understand whether the Dow #18 cavern was encroaching on or near TBC's property; and

      c.      All documents generated as a result of the investigation into the location of TBC's property lines on the Napoleonville salt dome to understand whether the Dow #18 cavern was encroaching on or near TBC's property.

**ANSWER TO INTERROGATORY NO. 14:**

TBC objects to Interrogatory No. 14 as vague, ambiguous, overbroad, unduly burdensome, and duplicative.  TBC further objects to the extent Interrogatory No. 14 seeks information protected by the attorney-client privilege and/or work product protections.

Without waiving such objections, see TBC's Responses to Dow's First, Second and Third Set of Discovery including, but not limited to, TBC's Response to Interrogatory No. 6 of Dow's First Set of Discovery.  In further response, the document attached to John Sergo's April 17, 2014 e-mail (attachment titled "09M109-A-TBC.pdf") was generated by AB Trevino.  The data sources for creation of document "09M109-A-TBC.pdf", including cavern outlines, were drawn from two sources: 1) a data file provided by Joe Ratigan that was previously used in the Ratigan Report; and 2) an "Assessed Ownership Land Plat" previously produced at TBC-1553.  See also documents produced at TBC-1680-1683, 1879-1884, 1917-1921, 1954-1956, 2062-2064, 2129-2131, 2144-2145, 2291-2293.

**INTERROGATORY NO. 15:**

Please provide the following information for Andrew McKay:

a       Employer;

b.      Job title; and

c.      Job duties

**ANSWER TO INTERROGATORY NO. 15:**

a.      Andrew McKay's current employer is United Brine Services;

b.      Senior Landman;

c.      All land related activities, land files, and land related consulting services that United Brine Services provides to affiliated and unaffiliated customers.

**INTERROGATORY NO. 16:**

With regards to the plot plans produced as TBC-1519-1525, please identify the following:

a.      The person who created, drafted, or finalized each of the plans;

b.      The number of prior versions and the dates of each version;

18

c.      The software used to create each map;

d.      The date each plan was completed;

e.      The base map utilized for the property boundaries depicted on the plans;

f.      The source for the depiction of the outlines for each solution-mined cavern;

g.      The reason these plot plans were generated; and

h.      Describe what these plot plans are intended to depict.

## ANSWER TO INTERROGATORY NO. 16:

TBC objects to Interrogatory No. 16 as vague, ambiguous, overbroad, and unduly burdensome.  TBC further objects to Interrogatory No. 16 to the extent it seeks information protected by the attorney-client privilege and/or work product protections.  Without waiving such objections, the documents produced as TBC-1519-1525 were generated by AB Trevino.  The data for creation of documents TBC-1519-1523 and TBC-1525, including cavern outlines, were drawn from two sources: 1) a data file provided by Joe Ratigan that was previously used in the Ratigan Report; and 2) an "Assessed Ownership Plat" previously produced at TBC-1553.  The document produced as TBC-1524 was sourced from Google Maps.  Documents TBC-1519-1525 were created using AutoCAD software.  The dates of each document are notated on the face of each document.  The depictions of these documents are best evidence of their own contents.  See also native files, which TBC will provide via supplemental production as soon as possible.

## INTERROGATORY NO. 17:

Please identify all salt reserve estimates for TBC's Property and any documents that reference the salt reserve estimates for TBC's property.

**ANSWER TO INTERROGATORY NO. 17:**

TBC objects to the term "salt reserve estimates" as vague, ambiguous, and confusing and reserves the right to supplement this response.  TBC objects to Interrogatory No. 17 to the extent it seeks information protected by the attorney-client privilege and/or work product protections. Without waiving such objection, see expert reports of R. Wayne Sneed and Joel Warneke, produced June 15, 2017.

**INTERROGATORY NO. 18:**

Please identify all sketches, plot plans, drawings, depictions, maps, surveys, or other schematics identifying the location of potential future solution-mining caverns on the Property. For each document identified, please identify the date drafted, the author, and the base map used.

**ANSWER TO INTERROGATORY NO. 18:**

TBC objects to Interrogatory No. 18 to the extent it seeks information protected by the attorney-client privilege and/or work product protections.  Without waiving such objections, see expert report of Joel Warneke produced on June 15, 2017.   See also documents previously produced at TBC-1521-23; TBC-1596, and produced herewith at TBC-1684-1685, 1962, 2157-2159, 2166-2167, 2187, 2218-2221, 2227-2231, 2277-2281, 2618, 2715-2716, 2718, 2722-2723, 3239-3240, 3249-3250, 3256-3257, 3259-3261, 3697, 3699.

**INTERROGATORY NO. 19:**

Please identify and describe TBC's policies, procedures, manuals, guidelines, rules, regulations, memoranda, or other documents and tangible things concerning solution-mining cavern designs for caverns owned or operated by TBC on the Napoleonville Salt Dome, including but not limited to, cavern size and spacing requirements.

**ANSWER TO INTERROGATORY NO. 19:**

TBC objects to Interrogatory No. 19 as vague, ambiguous, overbroad, and unduly burdensome.  TBC further objects to Interrogatory No. 19 to the extent it seeks information protected by the attorney-client privilege and/or work product protections.  TBC specifically objects that the request for "policies, procedures . . . or other documents . . . concerning solution-mining cavern designs" is vague and confusing, and TBC reads this interrogatory to request documents describing TBC's general "policies, procedures" as to "solution-mining cavern designs."  Without waiving such objections, TBC does not possess any written general policies, and procedures concerning general solution-mining cavern designs.  TBC follows all Louisiana regulations applicable to caverns owned or operated by TBC on the Napoleonville Salt Dome, including those regulations related to cavern design, size, and spacing.

**INTERROGATORY NO. 20:**

Please identify and describe TBC's policies and procedures for monitoring, maintaining, and regulating pressure in solution-mined caverns which have been taken out of service.

**ANSWER TO INTERROGATORY NO. 20:**

TBC objects to Interrogatory No. 20 as vague, ambiguous, overbroad, and unduly burdensome.  TBC further objects to Interrogatory No. 20 to the extent it seeks information protected by the attorney-client privilege and/or work product protections.  Without waiving such objections, TBC does not possess any written general policies or procedures for monitoring, maintaining, and regulating pressure in solution-mined caverns which have been taken out of service.  TBC follows all Louisiana regulations applicable to caverns owned or operated by TBC on the Napoleonville Salt Dome.

21

**INTERROGATORY NO. 21:**

Please identify all information in TBC's possession which supports TBC's position that a zone of more water soluble potassium chloride minerals such as sylvite in the vicinity of the wing that developed in Dow #18 well.

**ANSWER TO INTERROGATORY NO. 21:**

TBC objects to Interrogatory No. 21 as vague, ambiguous, overbroad, and unduly burdensome. TBC further objects to Interrogatory No. 21 to the extent it seeks information protected by the attorney-client privilege and/or work product protections. Without waiving such objections, see expert report of Charles Chabannes produced January 13, 2017.

**INTERROGATORY NO. 22:**

Please identify every item of damages you intend to seek at trial and provide an estimate for the value of each item of damages you intend to seek at trial.

**ANSWER TO INTERROGATORY NO. 22:**

See expert reports previously produced by Charles Chabannes, R. Wayne Sneed, Joel Warneke, and Holly Sharp.

**INTERROGATORY NO. 23:**

Please identify every exhibit you intend to introduce at trial, including all impeachment evidence.

**ANSWER TO INTERROGATORY NO. 23:**

TBC objects to Interrogatory No. 23 as premature. TBC will produce an exhibit list in compliance with the Court's February 23, 2017 Order.

## RESPONSES TO FOURTH SET OF REQUESTS FOR PRODUCTION

**REQUEST FOR PRODUCTION NO. 1:**

Please produce all documents that were reviewed, consulted, or generated in connection with any and all investigations that were performed by TBC to determine the location of the Dow # 18 Cavern in relation to the Property, including but not limited to all documents identified in your responses to Interrogatory Numbers 9, 12, 13, 14, and 16.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 1:**

TBC objects to Request for Production No. 1 as vague, ambiguous, overbroad, unduly burdensome, and duplicative. TBC specifically objects to the term "investigations" as vague, ambiguous, and confusing so as to frustrate TBC's ability to respond. TBC objects to Request for Production No. 1 to the extent it seeks information protected by the attorney-client privilege and/or work product protections.

Without waiving such objections, TBC responds as follows:

Request for Production No. 1's request for "documents that were reviewed, consulted, or generated in connection with any and all investigations" does not reflect TBC's ordinary course of business. TBC did not maintain a duty to investigate the location of Dow's # 18 cavern, and Dow owed a duty to TBC to inform TBC if and when its cavern encroached on TBC's property. *See* August 1, 2016 Declaration of Joel Warneke. In the spirit of cooperation, see the following documents: TBC-1680-1683, 1879-1884, 1917-1921, 1954-1956, 2062-2064, 2129-2131, 2144-2145, 2291-2293. In the further spirit of cooperation, the following documents relate to the Dow # 18 cavern: TBC-1686-1687, 1960-1963, 2150-2152, 2155-2156, 2165-2167, 2185, 2226, 2228, 2247-2248, 2714-2716, 2721-2723, 2790-2791, 2805, 3234, 3246-3247, 3252-3255, 3258, 3379, 3676-3677, 3698. See also TBC's Responses to Interrogatories No. 9, 12, 13, 14, and 16.

**REQUEST FOR PRODUCTION NO. 2:**

Please produce all documents that were reviewed, consulted, or generated in connection with any and all investigations that were performed by TBC as a result of the 2013 report entitled "Proximity of Class II and Class III Well Caverns to the Edge of the Napoleonville Salt Dome."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 2:**

TBC objects to Request for Production No. 2 as vague, ambiguous, overbroad, unduly burdensome, and duplicative.  TBC specifically objects to the terms "investigations" as vague and confusing and the terms "as a result of" as vague, ambiguous, confusing, and calling for legal conclusions. TBC also objects to Request for Production No. 2 to the extent it seeks information protected by the attorney-client privilege and/or work product protections.  Without waiving such objections, see TBC's Responses to Dow's First, Second, and Third Sets of Discovery including, but not limited to, TBC's Response to Interrogatory No. 6 of Dow's First Set of Discovery.

**REQUEST FOR PRODUCTION NO. 3:**

Please produce all documents that were reviewed, consulted, or generated in connection with any and all investigations that were performed by TBC as a result of the February 15, 2015 notice of encroachment from Dow regarding Dow #18 well.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 3:**

TBC objects to Request for Production No. 3 as vague, ambiguous, overbroad, unduly burdensome, and duplicative.  TBC specifically objects to the terms "investigations" as vague and confusing and the terms "as a result of" as vague, ambiguous, confusing, and calling for legal conclusions. TBC also objects to Request for Production No. 3 to the extent it seeks information protected by the attorney-client privilege and/or work product protections.  TBC specifically objects that communications among TBC employees, including communications with TBC's

24

corporate counsel, regarding the applicability of La. Administrative Code § 43:3315(B)(1) and TBC's response to Louisiana regulatory directives are attorney-client privileged and/or protected work product. *See Upjohn Co. v. U.S.*, 449 U.S. 383, 394 (1981); *Yankee Atomic Elec. Co. v. U.S.*, 54 Fed.Cl. 306, 313-4 (2002); *Lacefield v. U.S.*, 1993 WL 268392, at *4 (D. Colo. 1993); *A.N.S.W.E.R. Coalition v. Jewell*, 292 F.R.D. 44, 48 (D.D.C. 2013).

Without waiving such objections, see TBC's Responses to Dow's First, Second, and Third Sets of Discovery including, but not limited to, TBC's Response to Interrogatory No. 6 of Dow's First Set of Discovery.

## REQUEST FOR PRODUCTION NO. 4:

Please produce all documents that were reviewed, consulted, or generated in connection with any and all investigations that were referenced in your opposition to Dow's Motion for Partial Summary Judgment filed on January 24, 2017, specifically "TBC's investigation after filing suit" as referenced on page 9 of your opposition.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 4:

TBC objects to Request for Production No. 4 as vague, ambiguous, overbroad, unduly burdensome, and duplicative. TBC also objects to Request for Production No. 4 to the extent it seeks information protected by the attorney-client privilege and/or work product protections. Without waiving such objections, see expert report of Charles Chabannes produced January 13, 2017.

## REQUEST FOR PRODUCTION NO. 5:

Please produce all documents supporting TBC's salt reserve estimation for the Property, including but not limited to any and all documents identified in your responses to Interrogatory Numbers 17 and 18.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 5:**

TBC objects to the term "salt reserve estimations" as vague and confusing and reserves the right to supplement this response.  TBC objects to Request for Production No. 5 to the extent it seeks information protected by the attorney-client privilege and/or work product protections. Without waiving such objections, see expert reports of Charles Chabannes produced January 13, 2017 and June 15, 2017, and expert reports of R. Wayne Sneed, Joel Warneke, and Holly Sharp produced June 15, 2017.

**REQUEST FOR PRODUCTION NO. 6:**

Please produce all documents that support the allegations in your Complaints, including all documents identified in your response to Interrogatory number 5.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 6:**

TBC objects to Request for Production No. 6 as vague, ambiguous, overbroad, and unduly burdensome.  Without waiving such objections, see all documents and expert reports produced by TBC in response to any or all of Dow's discovery requests.

**REQUEST FOR PRODUCTION NO. 7:**

Please produce a copy of all documents which you contend support your claim for damages related to the value of salt on TBC's Property that TBC can no longer mine ("dead salt") as referenced in Paragraph 50 and your prayer for relief of your Third Supplemental, Amended, and Restated Complaint.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 7:**

TBC objects to Request for Production No. 7 as vague and duplicative.  Without waiving such objections, see all documents produced by TBC and/or Dow, as well as expert reports of

Charles Chabannes produced January 13, 2017 and June 15, 2017, and expert reports of R. Wayne Sneed, Joel Warneke, and Holly Sharp produced June 15, 2017.

**REQUEST FOR PRODUCTION NO. 8:**

Please produce all documents relating to your calculation, investigation, and determination of the damages related to value of salt on TBC's Property that TBC can no longer mine ("dead salt") as referenced in Paragraph 50 and your prayer for relief of your Third Supplemental, Amended, and Restated Complaint.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 8:**

TBC objects to Request for Production No. 8 as vague, ambiguous, duplicative, and overbroad.  Without waiving such objections, see Response to Request for Production No. 7.

**REQUEST FOR PRODUCTION NO. 9:**

Please produce a copy of all documents which you contend support your claim for deprivation of use as referenced in Paragraph 57 of your Third Supplemental, Amended, and Restated Complaint.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 9:**

TBC objects to Request for Production No. 9 as vague, ambiguous, duplicative, and overbroad.  Without waiving such objections, see Response to Request for Production No. 7.

**REQUEST FOR PRODUCTION NO. 10:**

Please produce all documents relating to your calculation, investigation and determination of damages related to your deprivation of use claims as referenced in Paragraph 14 of your Third Supplemental, Amended, and Restated Complaint.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 10:**

TBC objects to Request for Production No. 10 as vague, ambiguous, duplicative, and overbroad.  Without waiving such objections, see Response to Request for Production No. 7.

**REQUEST FOR PRODUCTION NO. 11:**

Please produce all documents which you contend support your claim for unjust enrichment as referenced in Paragraph 52 of your Third Supplemental, Amended, and Restated Complaint.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 11:**

TBC objects to Request for Production No. 11 as vague, ambiguous, duplicative, and overbroad.  Without waiving such objections, see Response to Request for Production No. 7.

**REQUEST FOR PRODUCTION NO. 12:**

To the extent not previously produced, please produce all documents which support any and all claims for damages contained in any of TBC's complaints.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 12:**

TBC objects to Request for Production No. 12 as vague, ambiguous, duplicative, and overbroad.  TBC further objects to this Request to the extent it seeks information already produced by TBC.  Without waiving such objections, see Response to Request for Production No. 7.

**REQUEST FOR PRODUCTION NO. 13:**

Please produce all documents identified in your response to Interrogatory Number 16. Additionally, please produce a copy of each map identified with bates numbering TBC-1519–1525 in native format with all metadata preserved.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 13:**

TBC objects to Request for Production No. 13 to the extent it seeks information protected by the attorney-client privilege and/or work product protections.  Without waiving such objections, see native files, which TBC will provide via supplemental production as soon as possible.

28

**REQUEST FOR PRODUCTION NO. 14:**

Please produce all documents associated with the sale of the Property from TBC to Louisiana Salt, LLC, including all diligence documents generated in anticipation of the sale, including but not limited to documents concerning the following subjects:

    a.      The condition of TBC's Property;

    b.      Any and all calculations and/or valuations of salt reserves on TBC's Property;

    c.      The proximity of Dow #18 or other solution-mined caverns to TBC's Property;

    d.      All maps, plats, schematics, surveys, and drawings of the Property;

    e.      Documents concerning salt reserves on the Property, including but not limited to the potential location of future solution-mined caverns that could be located on the Property;

    f.      All documents concerning the transfer of title to the Property;

    g.      The Act of Sale and Deed to the Property;

    h.      Any consideration given by Louisiana Salt, LLC to TBC for the Property;

    i.      Any communication between TBC and Louisiana Salt, LLC regarding the fair market value of the Property;

    j.      Any and all communications between TBC and Louisiana Salt, LLC related to Dow #18 well;

    k.      Any and all communications between TBC and Louisiana Salt, LLC related to litigation with Dow regarding TBC's property;

**RESPONSE TO REQUEST FOR PRODUCTION NO. 14:**

TBC objects to Request for Production No. 14 as vague, ambiguous, and overbroad.  TBC further objects to Request for Production No. 14 to the extent it seeks information protected by the

29

attorney-client privilege and/or work product protections.  TBC specifically objects to the term "salt reserves" as vague and ambiguous and reserves its right to supplement this response.  TBC specifically objects to the request for "[a]ny and all communications between TBC and Louisiana Salt, LLC related to litigation with Dow regarding TBC's property" because such communications are protected by the "common interest" doctrine of the attorney-client privilege established by the United States Court of Appeal for the Fifth Circuit.  *See BCR Safeguard Holding, L.L.C. v. Morgan Stanley Real Estate Advisor, Inc.*, 614 Fed. Appx. 690 (5th Cir. 2015).

Without waiving such objection, see Response to Interrogatory No. 10 and documents produced as referenced therein. See also document previously produced at TBC-1596.

## REQUEST FOR PRODUCTION NO. 15:

Please produce all documents related to discussions and/or communications with Louisiana Salt, LLC concerning the property including but not limited to the documents identified in your response to Interrogatory number 10.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 15:

Louisiana Salt objects to Request for Production No. 15 as vague, ambiguous, and overbroad.  Louisiana Salt further objects to Request for Production No. 15 to the extent it seeks information protected by the attorney-client privilege and/or work product protections.  TBC specifically objects to this request to the extent it seeks communications that are protected by the "common interest" doctrine of the attorney-client privilege established by the United States Court of Appeal for the Fifth Circuit.  *See BCR Safeguard Holding, L.L.C. v. Morgan Stanley Real Estate Advisor, Inc.*, 614 Fed. Appx. 690 (5th Cir. 2015).

30

Without waiving such objection, see Response to Interrogatory No. 10 and documents produced as referenced therein.

**REQUEST FOR PRODUCTION NO. 16:**

Please produce all documents related to monitoring the locations of solution mining caverns owned or operated by TBC relative to neighboring property lines.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 16:**

TBC objects to Request for Production No. 16 as vague, ambiguous, and overbroad.  TBC specifically objects that the term "monitoring" is so vague and confusing as to frustrate TBC's ability to respond.  TBC also objects to the lack of parameters regarding time or location as overbroad and unduly burdensome, and TBC responds to this Request with respect to its operations on the Napoleonville Salt Dome.  TBC objects to the request to the extent that it attempts to require the production by TBC of documents in the possession or under the control of persons or entities legally distinct from TBC.  TBC further objects to Request for Production No. 16 to the extent it seeks information protected by the attorney-client privilege and/or work product protections.  TBC specifically objects that communications among TBC employees, including communications with TBC's corporate counsel, regarding the applicability of La. Administrative Code § 43:3315(B)(1) and TBC's response to Louisiana regulatory directives are attorney-client privileged and/or protected work product.  *See Upjohn Co. v. U.S.*, 449 U.S. 383, 394 (1981); *Yankee Atomic Elec. Co. v. U.S.*, 54 Fed.Cl. 306, 313-4 (2002); *Lacefield v. U.S.*, 1993 WL 268392, at *4 (D. Colo. 1993); *A.N.S.W.E.R. Coalition v. Jewell*, 292 F.R.D. 44, 48 (D.D.C. 2013).

Without waiving such objections, see the following documents:  TBC-4565-4576.

**REQUEST FOR PRODUCTION NO. 17:**

Please produce any documents reviewed, consulted, or generated in connection with any and all investigations into whether solution-mined caverns owned or operated by TBC are located within 100 feet of property owned by third parties. Your response to this request should include, but not be limited to, any documents identified in your response to Interrogatory numbers 8 and 11.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 17:**

TBC objects to Request for Production No. 17 as vague, ambiguous, and overbroad.  TBC specifically objects to the lack of parameters regarding time or location as overbroad and unduly burdensome, and TBC responds to this Request with respect to its operations on the Napoleonville Salt Dome.  TBC objects to the request to the extent that it attempts to require the production by TBC of documents in the possession or under the control of persons or entities legally distinct from TBC.  TBC further objects to Request for Production No. 17 to the extent it seeks information protected by the attorney-client privilege and/or work product protections.  Without waiving such objections, see documents produced at TBC-2176-2177, 2191-2192, 2207-2209, 2212-2217, 2222-2223, 2234-2237, 2242-2246, 2249-2256, 2269-2270, 2272, 2618, 2626-2627, 2636-2637, 2638-2639, 2717, 2774-2779, 2782-2783, 3506-3513, 3520-3521, 3523-3552, 3559-3570, 3572-3573, 3684 and TBC-1843-1844, 2186, 2208, 2222-2225, 2230-2231, 2238-2246, 2257-2270, 2272, 2276, 2283-2284, 2615, 2618, 2624-2627, 2758, 2761-2762, 2774-2776, 2780-2783, 2792-2803, 2810-2813, 2988-2989, 3199-3201, 3512-3513, 3523-3524, 3541-3552, 3571-3576, 3685-3691.

**REQUEST FOR PRODUCTION NO. 18:**

Please produce any documents reviewed, consulted, or generated in connection with any and all investigations into whether solution-mined caverns owned or operated by third parties are located within 100 feet of property owned by TBC. Your response to this request should include, but not be limited to, any documents identified in your response to Interrogatory number 12.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 18:**

TBC objects to Request for Production No. 18 as vague, ambiguous, and overbroad.  TBC specifically objects to the lack of parameters regarding time or location as overbroad and unduly burdensome, and TBC responds to this Request with respect to its operations on the Napoleonville Salt Dome.  TBC objects to the request to the extent that it attempts to require the production by TBC of documents in the possession or under the control of persons or entities legally distinct from TBC.  TBC further objects to Request for Production No. 17 to the extent it seeks information protected by the attorney-client privilege and/or work product protections.  Without waiving such objections, see documents produced at TBC-1680-1683, 1877-1884, 1917-1921, 1954-1956, 2062-2064, 2184-2186, 2206-2208, 2210-2211, 2214-2217, 2232, 2234-2236, 2247-2256, 2273, 2283-2284, 2291-2293, 2615, 2618, 2621-2627, 2636-2639, 2758-2762, 2790-2791, 2949-2950, 2985-2987, 3052-3055, 3233-3237, 3241-3246, 3248, 3262-3263, 3296-3310, 3343, 3376-3378, 3414-3420, 3504-3511, 3514-3517, 3520-3521, 3525-3540, 3553-3578, 3641-3643, 3676-3683, 3685-3692, 3694-3696, 3700-3702, 4577-4580.

**REQUEST FOR PRODUCTION NO. 19:**

To the extent not previously produced, please produce all blueprints, maps, plats, plot plans, surveys, photographs and architectural renderings related to TBC's property. For any

33

documents which were generated by or on behalf of TBC after January 1, 2015, please produce the document in portable document format (.pdf) and in native format with the metadata preserved.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 19:**

TBC objects to Request for Production No. 19 as vague, ambiguous, overbroad, and duplicative. TBC specifically objects to the request for "maps. . . related to TBC's property" as so overbroad and ambiguous as to frustrate TBC's ability to respond. TBC objects to the request without parameters as overbroad and responds only as to the property that is the subject of this litigation. TBC also objects to Request for Production No. 19 to the extent it seeks information protected by the attorney-client privilege and/or work product protections. Without waiving such objections, and in the spirit of cooperation, see the following documents: TBC-1683-1687, 1841-1842, 1960-1962, 2132-2143, 2146-2149, 2151, 2153-2177, 2184-2185, 2187-2190, 2193-2195, 2226-2231, 2274-2282, 2285-2287, 2289-2290, 2601, 2624-2625, 2713-2717, 2719-2723, 2786-2789, 2804-2805, 3233-3237, 3239-3240, 3244-3246, 3248-3261, 3379, 3420-3422, 3518-3519, 3522, 3577-3578, 3684, 3692-3694, 3697-3698.

**REQUEST FOR PRODUCTION NO. 20:**

Please produce all of TBC's policies, procedures, manuals, guidelines, rules, regulations, memoranda, or other documents and tangible things concerning cavern design, including but not limited to, cavern size and spacing requirements, as identified in your response to Interrogatory number 19.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 20:**

TBC objects to Request for Production No. 20 as vague, overbroad, unduly burdensome. TBC further objects to Request for Production No. 20 to the extent it seeks information protected

34

by the attorney-client privilege and/or work product protections. Without waiving such objections, see TBC's Response to Interrogatory No. 19.

**REQUEST FOR PRODUCTION NO. 21:**

Please produce all of TBC's policies, procedures, manuals, guidelines, rules, regulations, memoranda, or other documents related to monitoring, maintaining, and regulating pressure in solution-mined caverns which have been taken out of service.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 21:**

TBC objects to Request for Production No. 21 as vague, overbroad, unduly burdensome. TBC further objects to Request for Production No. 21 to the extent it seeks information protected by the attorney-client privilege and/or work product protections. Without waiving such objections, see TBC's Response to Interrogatory No. 20.

**REQUEST FOR PRODUCTION NO. 22:**

Please produce all documents and tangible things relating to cost-risk analyses, cost-benefit analyses, or any other study, analysis, report, or document generated or obtained by you, that discusses the cost of encroachment of any solution mining caverns on your property or the encroachment of any of TBC's solution mining caverns onto property owned by other entities.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 22:**

TBC objects to Request for Production No. 22 as vague, ambiguous, overbroad, unduly burdensome.  TBC specifically objects to the term "cost of encroachment" as so vague and confusing as to frustrate TBC's ability to respond.  TBC specifically objects to the lack of parameters regarding time or location as overbroad and unduly burdensome, and TBC responds to this Request with respect to the property that is the subject of this litigation and the Napoleonville Salt Dome.  TBC further objects to Request for Production No. 22 to the extent it seeks information

protected by the attorney-client privilege and/or work product protections.  Without waiving such objects, TBC is not presently aware of any documents in its possession responsive to Request for Production No. 22.

**REQUEST FOR PRODUCTION NO. 23:**

Please produce all documents in your possession, including but not limited to, sketches, plot plans, drawings or depictions in any manner for future potential solution mining caverns on the Property.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 23:**

TBC objects to Request for Production No. 23 as vague and overbroad.  TBC further objects to Request for Production No. 23 to the extent it seeks information protected by the attorney-client privilege and/or work product protections.  Without waiving such objections, see expert report of Joel Warneke produced June 15, 2017 and TBC's Response to Interrogatory No. 18, including documents produced herewith as referenced.

**REQUEST FOR PRODUCTION NO. 24:**

Please produce all documents reviewed and/or relied upon by Joel Warneke to prepare his March 26, 2014 email to Ted Grabowski, Brian Rapp, Matt Slezak, Mark Cartwright and John Sergo.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 24:**

TBC objects to Request for Production No. 24 as vague, ambiguous, confusing, overbroad, and duplicative.  TBC specifically objects to the terms "reviewed and/or relied upon" as vague, ambiguous, and calling for legal conclusions.  TBC further objects to Request for Production No. 24 to the extent it seeks information protected by the attorney-client privilege and/or work product protections.

Without waiving such objections, Mr. Warneke's March 26, 2014 e-mail was the preliminary identification of the possibility of an encroachment issue. The map referenced in Mr. Warneke's March 26, 2014 e-mail derives from the Ratigan Report. The map is factually incorrect, and thus Dow cannot impute knowledge of the Dow # 18 cavern's location to TBC based on a map that does not even accurately depict the location of the cavern. Additionally, nothing in the Ratigan Report could trigger TBC's knowledge of the Dow # 18 cavern's encroachment on TBC's property because the Ratigan Report had nothing to do with the proximity of the Dow # 18 cavern to TBC's property, or the proximity of any cavern to any property line. The Ratigan Report is already in Dow's possession.

**REQUEST FOR PRODUCTION NO. 25:**

In Paragraph 4 of the Declaration of Ted Grabowski's from January 23, 2017, he attested that "Mr. Warneke's [March 26, 2014] e-mail was the preliminary identification of an issue as to whether or not other caverns were encroaching in violation of new Louisiana solution-mining regulations promulgated in February of 2014." Regarding Joel Warneke's search to identify whether or not caverns were encroaching in violation of new Louisiana solution-mining regulations promulgated in February of 2014, referenced in the Declaration of Ted Grabowski, please produce all documents used in or generated from the investigation including but not limited to the following:

a.   All documents reviewed in Mr. Warneke's search;

b.   All documents relied upon for the preliminary identification referenced in Paragraph 4 of Declaration of Ted Grabowski's from January 23, 2017; and

c.   All documents that reference Mr. Warneke's search in any way.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 25:**

TBC objects to Request for Production No. 25 as vague and ambiguous. TBC specifically objects that the terms "Mr. Warneke's search" are vague and confusing so as to frustrate TBC's ability to respond. TBC further objects that the terms "relied upon for the preliminary identification" are vague, confusing, and call for legal conclusions. TBC specifically objects that the request for "[a]ll documents that reference Mr. Warneke's search in any way" is vague, confusing, overbroad, and unduly burdensome so as to frustrate TBC's ability to respond. Without waiving such objections, see Responses to Interrogatory No. 13 and Request for Production No. 24.

**REQUEST FOR PRODUCTION NO. 26:**

In Paragraph 4 of the Declaration of Ted Grabowski's from January 23, 2017, he attested that "[i]n response to Mr. Warneke's March 26, 2014 e-mail, recognizing the uncertainty of the proximity of the Dow#18 cavern to TBC's property line, as President of TBC, I instructed another employee, John Sergo, to begin investigating the location of TBC's property lines on the Napoleonville salt dome to understand whether the Dow #18 cavern was or was not encroaching on or near TBC's property." Regarding the Sergo investigation referenced in Ted Grabowski's Declaration, please produce all the documents used in or generated from the investigation including but not limited to the following:

a. All documents reviewed by John Sergo and others involved in the investigation into the location of TBC's property lines on the Napoleonville salt dome to understand whether the Dow #18 cavern was or was not encroaching on or near TBC's property; and

b. All documents generated as a result of the investigation into the location of TBC's property lines on the Napoleonville salt dome to understand whether the Dow #18 cavern was or was not encroaching on or near TBC's property.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 26:**

TBC objects to Request for Production No. 26 as vague and ambiguous. TBC also objects to Request for Production No. 26 to the extent it seeks information protected by the attorney-client privilege and/or work product protections.

Without waiving such objections, see TBC's Response to Interrogatory No. 14 and documents produced as referenced therein.

**REQUEST FOR PRODUCTION NO. 27:**

Please produce all documents relating to the April 7, 2014 map attached to the original petition as Exhibit "1,"including but not limited to, prior versions of the map, the base map used to generate this map, and documents relied upon and/or reviewed to create the map.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 27:**

TBC objects to Request for Production No. 27 as vague, ambiguous, overly broad, and unduly burdensome. TBC specifically objects to the term "all documents relating to" as overbroad, vague, and ambiguous. TBC further objects to Request for Production No. 27 to the extent it seeks information protected by the attorney-client privilege and/or work product protections. Without waiving such objections, see TBC's Response to Interrogatory No. 9.

**REQUEST FOR PRODUCTION NO. 28:**

Please produce all documents, including but not limited to, emails in your possession to and from Kevin Hill and/or Joe Ratigan regarding the Report prepared by Joe Ratigan and Kevin

Hill titled "Proximity of Class II and Class III Well Caverns to the Edge of the Napoleonville Salt Dome."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 28:**

TBC objects to Request for Production No. 28 as vague, ambiguous, overly broad, and unduly burdensome.  TBC further objects to this Request to the extent it seeks information protected by the attorney-client privilege and/or work product protections.  Without waiving such objections, see documents produced herewith as TBC-1643-1679, 1688-1959, 1964-2133, 2357-2389, 2476, 2493-2590, 2648-2680, 2724-2757, 2806-2807, 2949-2987, 3052-3055, 3241-3243, 3262-3378, 3380-3416, 3423-3461, 3470-3501, 3642-3675, 3678-3683.

**REQUEST FOR PRODUCTION NO. 29:**

Please produce each and every document you may use as an exhibit at the trial of this matter.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 29:**

TBC objects to Request for Production No. 29 as premature.  TBC will comply with this Court's February 23, 2017 Order with respect to exhibit lists.  TBC reserves the right to use any document or information produced to Dow, including documents produced as TBC-0001-4676 or any document or information produced by Dow as an exhibit at trial.

**REQUEST FOR PRODUCTION NO. 30:**

Please produce a copy of each and every document which was supplied to, collected by or reviewed by each expert witness in connection with his/her work in this matter.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 30:**

TBC objects to Request for Production No. 30 as vague, ambiguous, overly broad, and unduly burdensome.  TBC further objects to Request for Production No. 30 to the extent it seeks

information protected by the attorney-client privilege and/or work product protections.  Without waiving such objections, TBC responds as follows:

- Joel Warneke reliance materials- Items 1 and 3-8 referenced in Mr. Warneke's report are already in Dow's possession or control and/or are publically available documents and TBC objects to their production as duplicative.  In addition, see documents produced herewith at TBC-3703-4564.

- Holly Sharp reliance materials- Items 1-5 and 7-10 referenced in Ms. Sharp's report are already in Dow's possession or control and/or are publically available documents.  Item 6 is produced herewith at TBC-4662-4676.  Items 11-14 contain highly confidential and sensitive financial information; TBC and Louisiana Salt have offered to produce these materials pursuant to TBC's June 30 and July 3, 2017 correspondence attached hereto *in globo* as Exhibit "1."

- Charles Chabannes reliance materials- Items 1-4 and 7-9 referenced in Mr. Chabannes June 15, 2017 report are already in Dow's possession or control and/or are publically available documents.  TBC will supplement this response as soon as possible.

## REQUEST FOR PRODUCTION NO. 31:

Please produce all demonstrative aids that you plan to use at trial in this matter.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 31:

TBC objects to Request for Production No. 31 as premature.  TBC will comply with all Court orders regarding demonstratives.

## REQUEST FOR PRODUCTION NO. 32:

Please produce all documents and tangible things you or your counsel provided to any of your expert or fact witnesses regarding this case and/or the witnesses' testimony in this case.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 32:**

TBC objects to Request for Production No. 32 as vague, ambiguous, overly broad, and unduly burdensome. TBC further objects to Request for Production No. 32 to the extent it seeks information protected by the attorney-client privilege and/or work product protections. Without waiving such objections, TBC's experts— R. Wayne Sneed, Charles Chabannes, Joel Warneke, and Holly Sharp — were all provided copies of each other's final reports previously produced to Dow. See also Response to Request for Production No. 30.

**REQUEST FOR PRODUCTION NO. 33:**

For any expert that you intend to call to testify at trial that is retained by, employed by, or otherwise subject to your control, please produce:

      (a)     all documents, tangible things, reports, models, or data compilations that have been provided to, reviewed by, or prepared by or for the expert in anticipation of the expert's testimony; and

      (b)     the expert's current resume and bibliography.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 33:**

TBC objects to Request for Production No. 33 as vague, ambiguous, overbroad, and duplicative. TBC further objects to this Request to the extent it seeks information protected by the attorney-client privilege and/or work product protections. TBC further objects to this Request to the extent it seeks information already produced by TBC. Without waiving such objections, TBC's experts' CV's were previously produced as required by Rule 26 on June 15, 2017. In further response, see Responses to Requests for Production Nos. 30 and 32.

**REQUEST FOR PRODUCTION NO. 34:**

Please produce any and all communication between TBC and Louisiana Salt concerning this litigation, the Dow #18 Well, or the Dow #18 Cavern.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 34:**

TBC objects to Request for Production No. 34 as vague, ambiguous, overbroad, and unduly burdensome. TBC further objects to this Request to the extent it seeks information protected by the attorney-client privilege and/or work product protections. TBC specifically objects that communications by and between TBC and Louisiana Salt, including communications with their lawyers, regarding the litigation are protected by the attorney-client privilege under the "common interest" doctrine established by the United States Court of Appeal for the Fifth Circuit. *See BCR Safeguard Holding, L.L.C. v. Morgan Stanley Real Estate Advisor, Inc.*, 614 Fed. Appx. 690 (5th Cir. 2015). Without waiving such objections, see Response to Interrogatory No. 10.

**REQUEST FOR PRODUCTION NO. 35:**

Please produce all documents identified in response to any of the above referenced Interrogatories.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 35:**

TBC objects to Request for Production No. 34 as vague, ambiguous, overbroad, and unduly burdensome. TBC further objects to this Request to the extent it seeks information protected by the attorney-client privilege and/or work product protections. Without waiving such objections, see documents TBC-1643-4676 produced herewith.

Respectfully submitted,


/s/ James M. Garner
LEOPOLD Z. SHER # 12014
JAMES M. GARNER # 19589
THOMAS J. MADIGAN # 28132
ERIC J. BLEVINS # 34209
**SHER GARNER CAHILL RICHTER KLEIN &
HILBERT, L.L.C.**
909 Poydras Street, 28th Floor
New Orleans, Louisiana  70112
Telephone: (504) 299-2100
Facsimile: (504) 299-2300
E-mail:  jgarner@shergarner.com
**ATTORNEYS FOR TEXAS BRINE
COMPANY, LLC AND LOUISIANA SALT,
LLC**

## CERTIFICATE OF SERVICE

I hereby certify that on this 3rd day of July, 2017, a copy of the above and foregoing has

been served via electronic mail on all counsel of record.


/s/ James M. Garner
JAMES M. GARNER

**Blevins, Eric**

| | |
|---|---|
| **From:** | Blevins, Eric |
| **Sent:** | Monday, July 03, 2017 11:17 AM |
| **To:** | 'John Viator' |
| **Cc:** | Patrick Hunt; Garner, James M.; Sher, Leopold; Jennifer Holtzclaw; Madigan, Thomas |
| **Subject:** | RE: Dow/TBC- Amended Stipulated Protective Order |

John,

Given your position in your recent motion, we feel our proposal is a reasonable solution to have provided you immediate access to the financials you requested as early as June 30.  Moreover, applicable authority shows that the "attorneys' eyes only" provision that TBC seeks is a widely accepted practice for trade secret materials such as the company financials.  There is no question that the company financials are of utmost sensitivity and contain highly confidential trade secrets and pricing information.  We also note that TBC has, to this point, only sought to apply the "attorneys' eyes only" designation to the four sets of financials.  TBC further notes that the provisions of the proposed amended protective order allows not only your non-party experts but also a designated representative of your client access to the materials under the terms of the order, which you suggested would be Dow's general counsel on our last phone discussion.

FRCP Rule 26(c)(1)(G) specifically contemplates protective orders that "requir[e] that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way."  *See Soule v. RSC Equip. Rental, Inc.*, 2012 WL 425166, *4 (E.D. La. 2012).  Magistrate Judge Wilkinson in the Eastern District has held that "[a]mple precedent exists for limiting disclosure of highly sensitive, confidential or proprietary information to attorneys and experts, particularly when there is some risk that a party might use the information or disseminate it to others who might employ it to gain a competitive advantage over the producing party."  *Westside-Marrero Jeep Eagle, Inc. v. Chrysler Corp., Inc.*, 1998 WL 186728, *2 (E.D. La. 1998) (citing *Doe v. District of Columbia*, 697 F.2d 1115, 1120 & n. 8 (D.C.Cir.1983); *Laitram Mach., Inc. v. Carnitech/AS*, No. 92–3841, 1993 WL 370624, at *2 (E.D.La. Sept.10, 1993) (Lemelle, M.J.); *GTE Products Corp. v. Gee*, No. 84–3936–T, 112 F.R.D. 169, 171 (D.Mass.1986); *In re "Agent Orange" Prod. Liab. Litig.*, 104 F.R.D. 559, 573 n. 12 (E.D.N.Y.1985); *Stillman v. Vassileff*, 100 F.R.D. 467, 468 (S.D.N.Y.1984); *Liberty Folder v. Curtiss Anthony Corp.*, 90 F.R.D. 80, 83–84 (S.D.Ohio 1981); *Chesa Int'l, Ltd. v. Fashion Assocs., Inc.*, 425 F.Supp. 234, 237 (S.D.N.Y.1977)).

Other authority in the Eastern District of Louisiana has noted that the "dual-tier" protection, of Confidential and Highly Confidential-Attorneys' Eyes Only information, is commonplace in cases where the parties are competitors and has approved the same type of protective order TBC seeks.  *See Blanchard and Co., Inc. v. Barrick Gold Corp.*, 2004 WL 737485, *8 (E.D. La. 2004).   The Manual for Complex Litigation, cited by the *Blanchard* Court, approves a restriction of commercially sensitive information to only attorneys and non-client experts.

The following opinions of other Louisiana federal courts have also approved protective orders with the "attorneys' eyes only" provisions sought by TBC: *Payne v. Forest River, Inc.*, 2014 WL 7359059, *8-9 (M.D. La. 2014); *SDT Indus., Inc. v. Pennington Seed, Inc.*, 2010 WL 2024735, *6 (W.D. La. 2010)

As additional justification, as we have told you previously, substantially similar protections exist in a protective order in the sinkhole litigation.  Considering this suit also relates to property on the Napoleonville salt dome, it is all the more reasonable for TBC to request the same protections in the present suit with *Dow*.

Considering this authority and these circumstances, please respond by close of business today whether you will accept the financials under the terms of the proposed amended protective order (attorneys' eyes only) in the meantime while the Court considers TBC's motion for protective order.

Regards,

Eric

**ERIC J. BLEVINS | ATTORNEY AT LAW | SHER GARNER CAHILL RICHTER KLEIN & HILBERT, L.L.C.**

 909 Poydras Street | Suite 2800 | New Orleans, LA 70112 | eblevins@shergarner.com | O: 504-299-2135 | F: 504-299-2335

The information contained in this electronic message may be attorney privileged and confidential information intended only for the use of the owner of the email address listed as the recipient of this message. If you are not the intended recipient, or the employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that any disclosure, dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this transmission in error, please immediately notify us by telephone at 504-299-2100 and return the original message to us at Sher Garner Cahill Richter Klein & Hilbert, L.L.C., Twenty-Eighth Floor, 909 Poydras Street, New Orleans, Louisiana 70112 via the United States Postal Service.

In accordance with 31 C.F.R. Section 10.35(b)(4), this message has not been prepared, and may not be relied upon by any person, for protection against any federal tax penalty.

---

**From:** John Viator [mailto:John.Viator@bblawla.com]
**Sent:** Monday, July 03, 2017 8:43 AM
**To:** Blevins, Eric <eblevins@shergarner.com>
**Cc:** Patrick Hunt <patrick.hunt@bblawla.com>; Garner, James M. <JGarner@SHERGARNER.com>; Sher, Leopold <LSher@shergarner.com>; Jennifer Holtzclaw <Jennifer.Holtzclaw@bblawla.com>; Madigan, Thomas <tmadigan@SHERGARNER.com>
**Subject:** RE: Dow/TBC- Amended Stipulated Protective Order

Eric,

We cannot agree.  If you can identify a justification and legal basis for the amendment to the current protective order, we will reconsider.  However, at this point I am not authorized to limit the information that can be disclosed to our clients in defense of this litigation.

Regards,

John Allain Viator
**Bienvenu, Bonnecaze, Foco, Viator & Holinga, APLLC**
4210 Bluebonnet Blvd.
Baton Rouge, LA  70809
(225) 388-5600  Main
(225) 388-5604  Direct
(225) 315-2547  Cell
(225) 388-5622  Fax
John.Viator@bblawla.com
Website: http://www.bblawla.com

---

**From:** Blevins, Eric [mailto:eblevins@shergarner.com]
**Sent:** Friday, June 30, 2017 5:39 PM
**To:** John Viator <John.Viator@bblawla.com>
**Cc:** Patrick Hunt <patrick.hunt@bblawla.com>; Garner, James M. <JGarner@SHERGARNER.com>; Sher, Leopold <LSher@shergarner.com>; Jennifer Holtzclaw <Jennifer.Holtzclaw@bblawla.com>; Madigan, Thomas

2

<tmadigan@SHERGARNER.com>
**Subject:** RE: Dow/TBC- Amended Stipulated Protective Order

John,

We are certainly surprised at your response given your indication on June 28 that such a protective order should be agreeable, as you note.  TBC and La. Salt intend to move the Court to enter the amended protective order with the provision for "Highly Confidential Information" without Dow's stipulation.

However, in the spirit of cooperation and in an effort to provide you with the requested documents as quickly as possible, TBC and La. Salt will agree to produce the requested financials to you promptly <u>if you agree to treat the documents as "Attorney's Eyes Only" pursuant to all terms of the proposed Amended Stipulated Protective Order until the Court has had opportunity to rule on the motion for protective order.</u>  We believe this is a reasonable and fair solution that will allow your non-party experts access to the information.

We will agree to request expedited consideration of the motion for protective order as well.  Please promptly indicate whether you are agreeable to this solution.

Regards,

Eric

**From:** John Viator [mailto:John.Viator@bblawla.com]
**Sent:** Friday, June 30, 2017 1:39 PM
**To:** Blevins, Eric <eblevins@shergarner.com>; Madigan, Thomas <tmadigan@SHERGARNER.com>
**Cc:** Patrick Hunt <patrick.hunt@bblawla.com>; Garner, James M. <JGarner@SHERGARNER.com>; Sher, Leopold <LSher@shergarner.com>; Jennifer Holtzclaw <Jennifer.Holtzclaw@bblawla.com>
**Subject:** RE: Dow/TBC- Amended Stipulated Protective Order

Gentlemen,

When we spoke on June 28th, the proposed amended stipulated protective order seemed workable in theory.  However, after review of the proposed language in Section 11 and further consideration, we cannot agree to amend the current Stipulated Protective Order for purposes of adding a Highly Confidential provision that would restrict certain information from being shared with our clients.  I am not authorized to limit the information that can be disclosed to our clients in defense of this litigation.  The purported "Highly Confidential Information" is information relied upon by your expert, Holly Sharp, in forming her opinions on the calculation of your damages.  Any analysis of the Highly Confidential Information by our experts will need to be shared with our clients, without limitation or prior approval from you.  That being said, our clients will comply with the current Stipulated Protective Order, which states that Confidential Information "shall be used for the sole purpose of conducting these Lawsuits and not for any business or other purpose."

Please advise whether you will produce Ms. Sharp's reliance materials under the current Stipulated Protective Order?

Regards,

John Allain Viator
**Bienvenu, Bonnecaze, Foco, Viator & Holinga, APLLC**
4210 Bluebonnet Blvd.
Baton Rouge, LA  70809
(225) 388-5600  Main
(225) 388-5604  Direct

(225) 315-2547  Cell
(225) 388-5622  Fax
John.Viator@bblawla.com
Website: http://www.bblawla.com

**From:** Blevins, Eric [mailto:eblevins@shergarner.com]
**Sent:** Thursday, June 29, 2017 8:34 PM
**To:** John Viator <John.Viator@bblawla.com>
**Cc:** Patrick Hunt <patrick.hunt@bblawla.com>; Garner, James M. <JGarner@SHERGARNER.com>; Sher, Leopold <LSher@shergarner.com>; Madigan, Thomas <tmadigan@SHERGARNER.com>
**Subject:** Dow/TBC- Amended Stipulated Protective Order

John, per our previous discussions, attached find an Amended Stipulated Protective Order.  As soon as Dow stipulates to its provisions and the Court enters the Amended Order we may produce the documents you requested.

Regards,

Eric

 **ERIC J. BLEVINS | ATTORNEY AT LAW | SHER GARNER CAHILL RICHTER KLEIN & HILBERT, L.L.C.**
909 Poydras Street | Suite 2800 | New Orleans, LA 70112 | eblevins@shergarner.com | O: 504-299-2135 | F: 504-299-2335

The information contained in this electronic message may be attorney privileged and confidential information intended only for the use of the owner of the email address listed as the recipient of this message. If you are not the intended recipient, or the employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that any disclosure, dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this transmission in error, please immediately notify us by telephone at 504-299-2100 and return the original message to us at Sher Garner Cahill Richter Klein & Hilbert, L.L.C., Twenty-Eighth Floor, 909 Poydras Street, New Orleans, Louisiana 70112 via the United States Postal Service.

In accordance with 31 C.F.R. Section 10.35(b)(4), this message has not been prepared, and may not be relied upon by any person, for protection against any federal tax penalty.

CONFIDENTIALITY MESSAGE Privileged: This e-mail contains PRIVILEGED and CONFIDENTIAL information intended only for the use of the specific individual or entity named above. If you or your employer is not the intended recipient of this e-mail or an employee or agent responsible for delivering it to the intended recipient, you are hereby notified that any unauthorized dissemination or copying of this e-mail is strictly prohibited. If you have received this transmission in error, please immediately delete the message.

CIRCULAR 230: Pursuant to federal tax regulations imposed on practitioners who render tax advice ("Circular 230"), we are required to advise you that any advice contained in this communication regarding federal taxes is not written or intended to be used, and cannot be used, by any person as the basis for avoiding federal tax penalties under the Internal Revenue Code, nor can such advice be used or referred to for the purpose of promoting, marketing or recommending any entity, investment, plan or arrangement.

CONFIDENTIALITY MESSAGE Privileged: This e-mail contains PRIVILEGED and CONFIDENTIAL information intended only for the use of the specific individual or entity named above. If you or your employer is not the intended recipient of this e-mail or an employee or agent responsible for delivering it to the intended recipient, you are hereby notified that any unauthorized dissemination or copying of this e-mail is strictly prohibited. If you have received this transmission in error, please immediately delete the message.

CIRCULAR 230: Pursuant to federal tax regulations imposed on practitioners who render tax advice ("Circular 230"), we are required to advise you that any advice contained in this communication regarding federal taxes is not written or intended to be used, and cannot be used, by any person as the basis for avoiding federal tax penalties under the Internal Revenue Code, nor can such advice be used or referred to for the purpose of promoting, marketing or recommending any entity, investment, plan or arrangement.