

PATRICK HAYES HUNT
(225) 388-5617 (Telephone)
(225) 388-5622 (Facsimile)
Patrick.Hunt@bblawla.com

**August 28, 2017**

James M. Garner                                                                 **Via Email**
Thomas J. Madigan
Eric J. Blevins
Sher Garner Cahill Richter Klein & Hilbert, LLC
909 Poydras Street
Suite 2800
New Orleans, Louisiana 70112

RE:   *Texas Brine Company, LLC et al. v. The Dow Chemical Company, et al.*
       United States District Court, Eastern District of Louisiana
       No. 15-1102 c/w 15-03324

Dear Gentlemen:

This letter is intended to serve as an outline for the issues we would like to address in our upcoming Rule 37 Conference. Dow reserves the right to identify additional issues with Plaintiffs' responses to discovery as discovery continues.

### Privilege Issues

Throughout your responses to Defendants' discovery requests, you frequently object to the requests "to the extent" the request seeks information protected by the attorney-client privilege, work product doctrine, or common interest privileges. It is challenging, if not impossible, in many cases to discern whether any documents were withheld in response to any particular request. This problem is compounded by the lengthy privilege log which does not connect any of the entries to a certain request. Please supplement your responses to identify which responses withhold documents.

Generally, Plaintiffs have asserted three types of privilege: attorney-client, work-product, and common interest. Attached to this letter is a reproduction of your privilege log with Dow's objections noted. Although Dow reserves its right to challenge other entries at a later date, Dow plans to traverse the privilege log where noted for the following reasons.



Exhibit F

August 28, 2017
Page 2 of 9

Attorney-client privilege

The party asserting the attorney-client privilege must prove "(1) that he made a *confidential* communication; (2) to a lawyer or his subordinate; (3) for the primary purpose of securing either a legal opinion or legal services, or assistance in some legal proceeding."[1] Furthermore, any ambiguity as to whether the privilege applies is construed against the proponent.[2] Blanket claims of privilege, generalized descriptions of a document, and conclusory statements that a document is privileged are not sufficient to prove a privilege claim. Critically, the privilege only applies to communications made for the purpose of obtaining or providing legal assistance.[3] There is no presumption that correspondence with a company's attorney is privileged. Further, "communications by a corporation with its attorney, who at the time is acting solely in his capacity as a business advisor, [are not] privileged," nor are "documents sent from one corporate officer to another merely because a copy is also sent to counsel."[4] At this point, many of your entries have insufficient information to establish that the communications at issue were made for the purpose of providing or obtaining legal counsel. Accordingly, we ask that you produce the items highlighted in orange or revise the privilege log.

Work-product doctrine

Many entries provide insufficient information to support invocation of the work-product privilege. The work-product doctrine protects materials prepared by or for an attorney in preparation of litigation.[5] It does not protect all materials prepared by a lawyer, or agent of the client. Instead, it protects only materials created in anticipation of litigation. Furthermore, it does not extend to the underlying facts relevant to the litigation.[6] The burden of showing the documents were prepared in anticipation of litigation falls on the party seeking to protect the documents from discovery. As with the above-referenced entries invoking the attorney-client privilege, many of the entries regarding work-product on the privilege log lack sufficient information to

---

[1] *EEOC v. BDO USA, L.L.P.,* 856 F.3d 356, 362 (5th Cir. 2017) (*quoting United States v. Robinson,* 121 F.3d 971, 974 (5th Cir. 1997)) (emphasis in original).

[2] *Id.*

[3] *Id.* at 364–65.

[4] *Id.* (quoting *Freeport-McMoran Sulphur, LLC v. Mike Mullen Energy Equip. Res., Inc.,* No. 03-1496, 2004 WL 1299042, at *25 (E.D. La. June 4, 2004)).

[5] *Freeport-McMoran Sulphur, LLC*, 2004 WL 1299042, at *5.

[6] *Id.*

justify invocation of the work-product doctrine. Please either produced the documents highlighted in yellow on the enclosure or modify the privilege log to provide the requisite information.

Additionally, TBC-1180 does not appear to be listed on the privilege log. By itself, the redacted email from Mr. Grabowski to Mr. Warneke does not give sufficient information to show that the document was produced in anticipation of litigation.

Common-interest privilege

Finally, it is our position that the common interest privilege does not apply to the majority of the documents withheld under the common interest privilege on your privilege log. Federal Rule of Evidence 501 provides that state law governs claims of privilege in a civil action for which state law supplies the decision. Therefore, Louisiana law governs the applicability of the "common interest" privilege here.[7] Louisiana Code of Evidence article 506(B)(3) contains Louisiana's version of the common interest privilege. Article 506(B)(3) provides that a communication is privileged when it is "[b]y the client or his lawyer, or a representative of either, *to a lawyer, or representative of a lawyer*, who represents another party concerning a matter of common interest." Accordingly, any document that does not satisfy Article 506(B)(3) cannot be withheld under the common interest privilege. As noted on the enclosure, the majority of the documents withheld under the common interest privilege do not satisfy the narrow confines of Louisiana's common interest privilege. Please produce the documents highlighted in green on the enclosure.

Sinkhole Documents

In your supplemental response to request for production number 12 in Dow's first set of discovery requests, which requested all emails, notes, logs, records, or documents indicating the location of the Dow # 18 Well cavern in relation to TBC's adjacent property, you indicated that "any documents potentially responsive to this request that were generated by TBC's attorney's and/or consultants" in connection with the sinkhole litigation, including 15 separate lawsuits, are privileged. Nevertheless, TBC has not produced a privilege log to support the invocation of any privilege over the potentially responsive documents.

---

[7] *Accord Benson v. Rosenthal*, 2016 WL 3001129, at *3 (E.D. La. May 25, 2016); *Vintage Assets, Inc. v. Tennessee Gas Pipeline Company, L.L.C.*, 2017 WL 2812967, at *3 (E.D. La. June 29, 2017).

In your November 10, 2016 letter addressing this issue, you have took the position that a privilege log is not required in this instance because (1) a party need not identify a privilege log for documents created after the inception of litigation; (2) the request for a privilege log is irrelevant because any such documents were not created for the purpose of demonstrating the relationship of the cavern to any property boundaries; (3) this request for a privilege log is disproportionate to the needs of this litigation; and (4) the request is overly broad because the request seeks documents dating back to 1986.

TBC's rationale for not providing a privilege log for the withheld sinkhole documents is insufficient for the following reasons. First, Rule 26(b)(5) requires a party withholding documents on the basis of privilege to produce a privilege log that expressly makes the claim of privilege and describes the document with sufficient particularity to allow other parties to assess the claim.[8] Although Dow does not dispute that a party need not list work product created in connection with a lawsuit after that lawsuit is filed, documents created in prior litigation are not exempt from disclosure in subsequent litigation.

Second, the motivation for the creation of the sinkhole documents—like the Ratigan map—is irrelevant as to whether the documents put TBC on notice of the issues in this litigation. Without any jurisprudential authority for this proposition, it is insufficient to base withholding documents or listing them on a privilege log.

Third, TBC and/or Louisiana Salt have made a $109 million claim against Dow. Regardless of whether the proportionality considerations have any bearing on a party's duty to produce a privilege log, which is denied, Dow finds it unlikely the Court will find the request disproportionate to the needs of the litigation at this point.

Fourth, you may respond to Request for Production number 12 as if the request seeks documents depicting the Dow 18 cavern dating back to 2002—the year TBC purchased the Property.

---

[8] *Shaw Group, Inc. v. Surich American Ins. Co.*, No. 12-257, 2014 WL 1784051, at *5 (M.D. La. May 5, 2014).

Miscellaneous

Please produce unredacted copies of TBC-1542, TBC-1587-1590, and TBC-1595. You previously indicated that these documents had confidential pricing information redacted. Considering the stipulated protective order governing this case, as well as the issues in this litigation, this is an insufficient reason to redact portions of the documents.

### First Set of Discovery Requests to Texas Brine Company

**Request for Admission number 18**
**Interrogatory number 4:**
Your response does not fairly respond to the substance of the request. The request for admission asks whether the "outline of the cavern associated with Dow Well #18" depicted on the map attached to TBC's original petition is identical to the map attached as Appendix D to the Ratigan and Hill Report. Your response indicating that "the maps are not identical" broadens the scope of the request to the entire map instead of the Dow #18 Cavern.

**Request for Admission number 19:**
Dow objects to your objection as to the term "knowledge." For the purpose of your response, please consider knowledge to include sufficient information to prompt TBC to further investigate the proximity of the Dow #18 Cavern to the property boundary. Dow also shows that Rule 36(a)(1)(A) specifically contemplates the application of law to fact. Accordingly, Dow objects to TBC's refusal to respond to the request because it calls for a legal conclusion.

### Second Set of Discovery Requests to Texas Brine Company

**Requests for Admission Numbers 1 and 2**
Your response to each of these requests is premised upon John Sergo's email indicating that "TBC was in the process of ongoing due diligence regarding property boundary lines of the property it owned in Section 46 at the Napoleonville salt dome at that time." During his deposition, Mr. Sergo clarified that there was never a dispute that TBC owned the property at issue in this litigation:

```
                         110
     9   Q.  As you sit here today, do you have any
    10   information to say that the words written in your
    11   e-mail of April 17, 2014 are not accurate?
    12              MR. MADIGAN:  Object to form.  Go
```

```
13  ahead.
14     A.  I mean, again, I'm not -- I'm having trouble
15  figuring out what you're going for.  I can expand on
16  it.  "Surprisingly difficult to get everyone to agree"
17  was kind of tongue in cheek because there were a
18  couple of pieces of property, little slivers of land
19  not in this section of land related to this case where
20  there was some discussion about whether we owned them
21  or not.
22        There was some debate about whether we owned
23  or leased the driveway going to the Oxy.  Just little
24  nits that Kenneth and A.B. couldn't agree on.  So
25  maybe I was being a little tongue in cheek there.  And
                         111
 1  that's why I went on to say that there may be a sliver
 2  or two missing from what you asked for, but to draw
 3  our property boundaries on, this will work.
 4  BY MR. VIATOR:
 5     Q.  I think you clarified.  One of the questions
 6  I have is with regards to the difficulty to get
 7  everyone to agree on what we owned.  Am I correct that
 8  there was no disagreement on Texas Brine's ownership
 9  of the property at issue in this case?
10             MR. MADIGAN:  Object to form.
11     A.  That is correct.
```

Considering this testimony, please advise whether you are able to supplement your response to Request for Admission Numbers 1 and 2.

**Interrogatory Numbers 1 and 2**
**Request for Production Number 1**
Dow objects to your characterization of "depict or describe" as vague and ambiguous. Please confirm whether your response to this interrogatory is complete, notwithstanding your objections. Additionally, documents 1587-1591 and 1596 are redacted. Please produce an unredacted version of these documents.  Your response to interrogatory number 2 is non-responsive because the dates are not listed. Please identify the dates you obtained the documents listed in your response to interrogatory number 1. If TBC obtained the documents on the dates reflected on each document, please so state.

**Interrogatory Number 3**
**Request for Production Number 3**
Please state whether documents have been withheld as privileged. Additionally, this interrogatory calls for identification of all documents associated with the investigation of TBC's property lines. To the extent documents other than TBC-1503 and TBC-1183 are associated with that investigation, please supplement this response.

**Interrogatory Number 4**
**Request for Production Number 4**
Your responses refer to John Sergo's April 17, 2014 email "as an example" of a document demonstrating TBC's diligence in determining the boundaries of properties owned by TBC. Please confirm whether this response is complete and, if not, supplement this response.

### Fourth Set of Discovery Requests to Texas Brine Company

**Interrogatory Number 10**
**Request for Production Numbers 14 and 34**
We discussed these requests in the prior Rule 37 Conference. To date, the only responsive documents produced have been the property appraisal and the Act of Sale Please supplement your responses to identify whether any documents have been withheld as privileged and provide the requested information regarding sub parts a-h. As we discussed, Dow objects to your characterization of the term "salt reserves" as vague and confusing given TBC's experience in the solution-mining industry.

**Interrogatory Number 17**
**Request for Production Number 5**
Please supplement this response as discussed in the prior Rule 37 conference to provide information concerning the salt reserve estimates on the property.

**Interrogatory Number 21**
Please supplement this response to identify all information in your possession supporting your position that the salt stock may have a zone of water soluble potassium chloride in the vicinity of the Dow #18 wing. Mr. Chabannes' report only refers to the possibility of such a zone without providing the basis for his premise.

**Interrogatory Number 22**
**Request for Production Numbers 7, 8, 9, 10, 11, and 12**
Please supplement your response with the category and quantum of damages Texas Brine Company, LLC will claim at trial. As discussed in our prior Rule 37

conference, the expert reports do not distinguish between the damages claimed by TBC and Louisiana Salt.

**Request for Production Number 2**
Please advise whether any documents have been withheld in your response to this request. Furthermore, your response to Request number 2 is non-responsive and circular, as Interrogatory number 6 in Dow's First Set of Discovery did not address the 2013 Ratigan Report.

**Request for Production Number 3**
Please advise whether any documents have been withheld in your response to this request. Furthermore, your response to Request number 2 is non-responsive and circular, as Interrogatory number 6 in Dow's First Set of Discovery did not address the 2015 Notice of Encroachment.

**Request for Production Number 15**
Please advise whether any documents have been withheld as privileged or otherwise.

**Request for Production Number 16**
Please advise whether any documents have been withheld as privileged or otherwise.

**Request for Production Number 30, 32, and 33**
Please clarify whether any documents have been withheld as privileged. Furthermore, please produce every document that was supplied to, collected by or reviewed by Wayne Sneed.

## First Set of Discovery to Louisiana Salt, LLC

**Interrogatory Number 13**
**Requests for Production Number 2, 18**
Please clarify if any information or documents have been withheld in your responses to these requests. Additionally, as with Interrogatory Number 10 and Requests for Production numbers 14 and 34 in the Fourth Set of Discovery propounded to TBC, Dow has only received limited documentation in response to these requests. Please supplement your response with any responsive documentation not previously produced.

**Interrogatory Number 20**
Please supplement this response to identify all information in your possession supporting your position that the salt stock may have a zone of water soluble

potassium chloride in the vicinity of the Dow #18 wing. Mr. Chabannes report only refers to the possibility of such a zone without providing the basis for his premise.

**Interrogatory Number 21**
**Request for Production Numbers 12, 13, 14, 15, 16, and 17**
Please supplement your response with the category and quantum of damages Louisiana Salt, LLC will claim at trial. As discussed in our prior Rule 37 conference, the expert reports do not distinguish between the damages claimed by TBC and Louisiana Salt.

**Request for Production Number 3**
Your response to Request for Production number 3 is mislabeled as "Response to Request for Production number 4." Please advise whether any documents have been withheld as privileged or otherwise.

**Request for Production Numbers 27, 29, and 30**
Please clarify whether any documents have been withheld as privileged. Furthermore, please produce every document that was supplied to, collected by, or reviewed by Wayne Sneed.

### Expert Report of Wayne Sneed

Texas Brine Company has offered the Wayne Sneed as an expert under Rule 26(a)(2)(C). As such, his expert report does not comply with Rule 26(a)(2)(B). Your discovery responses make clear that Louisiana Salt—a separate legal entity—intends to rely on Mr. Sneeds' report as well. We ask that you advise whether you continue to believe Mr. Sneed is exempt from the requirements of Rule 26(A)(2)(B) considering Louisiana Salt's retention of Mr. Sneed.

Thank you for your attention to these issues. We look forward to speaking with you on Friday.

Best Regards,

**Bienvenu, Bonnecaze, Foco,
Viator & Holinga, APLLC**

*s/ Patrick H. Hunt*

Patrick H. Hunt

Enclosures: (1)