UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| TEXAS BRINE COMPANY, LLC, ET AL. | * | CIVIL ACTION NO. 15-1102 |
| | * | c/w No. 15-3324 |
| | * | |
| VERSUS | * | SECTION: "N"(1) |
| | * | |
| DOW CHEMICAL COMPANY, ET AL. | * | JUDGE KURT D. ENGELHARDT |
| | * | |
| | * | MAGISTRATE JUDGE |
| ***Applies to all cases*** | | JANIS VAN MEERVELD |
| ************************************* | * | |

ORDER AND REASONS

Before the Court are the (1) Motion to Compel Complete or Supplemental Responses to First, Second, and Fourth Sets of Discovery, filed by The Dow Chemical Company, Dow Hydrocarbons & Resources, LLC, and Clifton Land Corporation (collectively the "Defendants" or "Dow")  (Rec. Doc. 116) and (2) the Motion to Compel Complete Responses to Sixth Set of Discovery filed by plaintiff Texas Brine Company, LLC ("Texas Brine") and Louisiana Salt, LLC ("Louisiana Salt" and with Texas Brine, "Plaintiffs") (Rec. Doc. 126). After oral argument, conducted November 1, 2017, the Court ruled on the Defendants' Motion in part and took the remainder under submission, and the Court took the entirety of the Plaintiffs' Motion under submission. (Rec. Doc. 157). For the following reasons, the Defendants' Motion to Compel (Rec. Doc. 116) is DENIED[1] as to the request that  Plaintiffs produce a Rule 26(a)(2)(B) expert report for Wayne Sneed and Plaintiffs' Motion to Compel (Rec. Doc. 126) is DENIED.

---

[1] The Court notes that the issue of whether Plaintiffs will be required to distinguish damages sought by Texas Brine and Louisiana Salt, which was also raised in Defendants' Motion to Compel (Rec. Doc. 116), remains under submission. As ordered by the Court on November 1, 2017, the parties shall attempt to resolve this issue on or before November 15, 2017.

Background

In this lawsuit, Plaintiffs allege that solution mining cavern Well Serial # 971667 located in Assumption Parish, Louisiana ("Dow #18") has encroached onto or within one foot of Texas Brine's property (owned by Texas Brine at the time of the alleged encroachment, but now owned by Louisiana Salt). Dow #18 is owned, operated, and/or leased by Dow. Plaintiffs allege that as a result of the encroachment, Dow has mined salt belonging to Plaintiffs and Dow has deprived Plaintiffs of their ability to operate solution mining operations as close to their property line as they otherwise would have been able to do.

Texas Brine filed this lawsuit on April 7, 2015 (Rec. Doc. 1), it filed its First Amended Complaint (Rec. Doc. 5) on August 7, 2015, it filed its Second Amended Complaint (Rec. Doc. 55) on July 1, 2016, and it filed its Third Amended Complaint on February 9, 2017, joining as plaintiff Louisiana Salt– the current owner of the property at issue in the lawsuit. At oral argument, counsel for the Plaintiffs explained that although Louisiana Salt is not a subsidiary of Texas Brine or Texas Brine's parent, it is an affiliated company that is part of the same family of companies.[2] Louisiana Salt is now the property owner, while Texas Brine remains the salt operator for the family of companies.

The Plaintiffs seek damages as well as injunctive relief prohibiting Dow from further operation of Dow #18. The damages alleged by Texas Brine are (1) the value of salt that Dow mined on the property as well as the value of salt on the property that can no longer be mined because of the close proximity of Dow #18, (2) additional costs and expenses incurred due to Dow's improper operation of Dow #18 and the encroachment of this well onto the property, (3) interest, (4) all other damages related to Dow's operation of the Dow #18 well and the creation of

---

[2] Plaintiffs' counsel underscored that Louisiana Salt and Texas Brine maintain proper corporate formalities and cannot be conflated.

the cavern encroaching onto the property, and (5) all other general and equitable relief. (Rec. Doc. 55). Louisiana Salt alleges identical damages. (Rec. Doc. 92). Trial is currently set to begin on March 26, 2018.

Prescription Issue

A key issue that has played out in discovery of this matter is Dow's contention that the Plaintiffs' lawsuit is untimely because the applicable one-year prescriptive period began to run, at the latest, on March 26, 2014, when Ted Grabowski, President of Texas Brine and Joel Warneke, the Manager of Wells for a Texas Brine subsidiary, exchanged emails regarding a map prepared by Joe Ratigan in July 2013. Ratigan had issued the July 2013 map on behalf of a group of solution-mining cavern operators in response to a Louisiana Department of Natural Resources directive requiring operators to "demonstrate the proximity of the outer walls of their respective salt caverns to the periphery of the salt stock" with updated maps in the wake of the Bayou Corne sink hole. The March 26, 2014, email between Grabowski and Warneke discussed the July 2013 map and characterized the Dow #18 cavern as "very close/right on the TBS/Dow property line." In it, Grabowski asked that someone draw Texas Brine's property lines into the Ratigan map. A map was drafted by A.B. Trevino on April 7, 2014—and it was this map that Texas Brine attached to its lawsuit.

On April 17, 2014, John Sergo provided additional ownership information to Grabowski, and on April 28, 2014, Grabowksi contacted Steve Mims at Dow to discuss the companies' wells and respective property lines. It is Texas Brine's position that prescription began to run, at the earliest, on April 28, 2014. This theory was tested in Dow's Motion for Summary Judgment, which was denied by the District Judge. The Court found both sides' arguments non-frivolous, but concluded that a reasonableness determination would be required (that apparently could not be

made as a matter of law). Dow has moved for a certificate of appealability, which remains pending before the District Judge.

Law and Analysis

1. *Scope of Discovery*

The Federal Rules of Civil Procedure provide that "parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. Proc. 26(b)(1). In determining proportionality, the parties (and the Court if called to weigh in) should consider:

> the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. Proc. 26(b)(1). "Information within this scope of discovery need not be admissible in evidence to be discoverable." Id.

A party may move for an order compelling a discovery response when another party fails to produce documents requested under Rule 34 or fails to answer an interrogatory under Rule 33. Fed. R. Civ. Proc. 37(a)(3)(B). The Rules instruct that "an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." Id. 37(a)(4).

2. *Wayne Sneed Expert Report (Rec. Doc. 116)*

Although Dow concedes that Plaintiffs "have produced an expert report for Wayne Sneed," Dow complains that Plaintiff Louisiana Salt has not produced the expert report mandated by Federal Rule of Civil Procedure 26(a)(2)(B). That Rule requires six categories of information be included in an expert report to be produced "if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony." Fed. R. Civ. Proc. 26(a)(2)(B). The six categories of information

4

include a complete statement of all opinions and the basis and reasons for them, the facts or data considered by the witness in forming them, any exhibits that will be used, the witness' qualifications including publications, a list of other cases in which the witness has testified as an expert during the past four years, and a statement of the compensation to be paid. Id.  For experts that are not required to produce an expert report by Rule 26(a)(2)(B), the party need only disclose the subject matter on which the witness is expected to present evidence and a summary of the facts and opinions to which the witness is expected to testify. Fed. R. Civ. Proc. 26(a)(2)(C).

The report of Mr. Sneed is two pages long. Mr. Sneed states that he is the President and CEO of Texas United Corporation ("TUC"), which, through a subsidiary, provides services like accounting, legal, and human resources, to TUC's related parties including Texas Brine. (Rec. Doc. 116-15). He explains that his opinion is based on his experience, his first-hand knowledge of certain facts, and his participation in Texas Brine lease negotiations and storage agreements over a period of 25 years. He included his curriculum vitae. He opines that the encroachment of Dow #18 "cost Texas Brine 35,000,000 plus tons of salt." He also opines about the royalty value of the salt in place and the depletion benefit that a producer derives under the United States Tax Code. He further opines on the value the caverns could have had as hydrocarbon storage space after salt reserves had been exhausted.

Dow argues that Mr. Sneed is not employed by Louisiana Salt and that, accordingly, Mr. Sneed must be "specially retained" by Louisiana Salt to the extent his opinion testimony will be offered on behalf of Louisiana Salt. Dow points out that Louisiana Salt and Texas Brine purport to be separate legal entities. Plaintiffs counter that Mr. Sneed provides the same financial services to Louisiana Salt as he does to Texas Brine. They explain that he assists in the preparation of the company financials and the tax documents of both companies. At oral argument, counsel for

5

Plaintiffs represented that there is no separate engagement letter or compensation between Louisiana Salt and Mr. Sneed related to his expert opinion in this case. Counsel agreed that Louisiana Salt is essentially taking advantage of the Sneed expert report prepared for Texas Brine because the opinions therein also work for Louisiana Salt.

The Court finds that Mr. Sneed is not required to produce a Rule 26(a)(2)(B) expert report. He is not retained or specially employed for the purpose of providing expert testimony. It is clear that his expert opinion is derived from his personal experience with the financials on which he bases his opinion and not his independent experience or his experience providing expert testimony. Mr. Sneed's relationship with Texas Brine and Louisiana Salt is based on the services he regularly provides to those companies, and his role as an expert flows from his primary role providing financial services. Critically, there is no special engagement or compensation for his service as an expert. The Court notes that Rule 26(a)(2)(B) does not require that the expert be an employee of the party in order to be excluded from the expert report requirement. Because Mr. Sneed was not specially retained by Texas Brine or Louisiana Salt for the purpose of providing expert testimony in this case, he will not be required to produce a Rule 26(a)(2)(B) report. As to this request, Dow's Motion to Compel (Rec. Doc. 116) is DENIED.

   3. *Plaintiffs' Motion to Compel Financial Information and Well Logs (Rec. Doc. 126)*

Plaintiffs' Motion to Compel concerns certain financial and mining records that Plaintiffs say are relevant to their damage model. Requests for Production of Documents 78-88 are broad, seeking, among other things "all documents demonstrating Dow's internal expectation and/or reserve expectation for brine production of each well drilled by or for Dow on the Napoleonville salt dome," "all documents demonstrating the actual total amount of brine production from each solution-mining well drilled by or for Dow on the Napoleonville salt dome," "all documents

demonstrating the royalty rates at which Dow either bought or sold brine in the Gulf Coast region for the years 2005 through the present date, including documents demonstrating increases in royalty rates over that time," and "all documents demonstrating any tax depletion benefit that Dow realized and were related to solution-mining operations in the Gulf Coast region for the years 2005 through present date, including documents demonstrating the extent to which Dow shared that tax depletion benefit with another party." Plaintiffs also seek annual financial statements, tax returns, brine production volume, and storage/volume space for 2009 to the present as related to Dow's solution-mining operations on the Napoleonville salt dome.

Plaintiffs explain that their damage claims include revenue lost from the inability to mine caverns that they would have been able to drill or use for storage, but for the encroachment of the Dow #18 cavern. Plaintiffs anticipate that Dow will argue that Plaintiffs' damages figure is unsupported. They say this is why they seek evidence of the amount of salt Dow mined during Dow's own past solution-mining operations as well as Dow's revenue from those operations and related financial information. Essentially, Plaintiffs argue that they are entitled to this information because if Dow's past revenues show that Plaintiffs' projected damages are reasonable, Plaintiffs will have strong evidence to rebut Dow's challenge to the reasonableness of their claimed damages.

Dow responds that the Plaintiffs' damage model cannot be measured by the profitability of Dow's solution mining business. They explain that their business models differ (Dow is vertically integrated, while Texas Brine and Louisiana Salt are solely brine producers and storage lessors). They add that their past profits have no bearing on Plaintiffs' future lost revenue. They argue that Plaintiffs "should not be allowed to use this litigation as a mechanism by which to obtain a competitor's confidential business information."

The Court finds there is no basis for discovery of Dow's financial information. The fact that Dow's revenues may be similar, more, or less, than the damages claimed by the Plaintiffs has no bearing on whether the Plaintiffs have suffered damages. To the extent historical information bears on future revenues, it seems Texas Brine's own past financial information as a salt operator is better evidence of the reasonableness of its predicted future revenues than the financial information of an unrelated company with a different business model. Plaintiffs' Requests for Production 78-84 and 86-87 are incredibly broad in their reach and far exceed the boundaries of relevant information. Moreover, the sought after information is highly confidential and, although there is a protective order in place, the Court finds it necessary to be particularly careful where one party seeks the production of confidential business information from a competitor. If the information, as here, is not relevant to the case, it will not be subject to production.

Similarly, the Court finds that Plaintiffs' request for "all other wells located on the same property on which the Dow #18 Well is located" seeks information that is not relevant and not within the scope of discovery. Plaintiffs argue that the sought after well logs contain information regarding the content of salt extracted from the well cavern. They say they need this information to determine how much and the quality of salt that may be extracted from nearby future wells. Dow objects to production of well logs for wells other than Dow #18.[3] As to the other wells, Dow says the information is not relevant. Dow points out that Plaintiffs' expert Joel Warneke disagrees with the position that core from one part of the dome has any bearing on the salt content for another part of the dome.[4] Thus, Dow insists, its well logs (which contain confidential information and

---

[3] At oral argument, Dow represented that it would complete production of the requested Dow #18 well logs by November 2, 2017.

[4] Mr. Warneke testified in his deposition that he had not been able to conduct proper modeling because he did not have "core" in that section of the dome. He stated "there's people that will argue that point. They'll say that core from any part of the dome has got enough properties that you can go off them, and I wholeheartedly disagree with that."

would be burdensome to collect) have no relevance to a determination of the quality or quantity of salt on the property at issue in this lawsuit.

At oral argument, the parties confirmed that the two wells adjacent to the property that was allegedly injured are Dow #18 and an Occidental well that Texas Brine operated (and for which, presumably, Texas Brine can obtain well logs). The remainder of the Dow wells for which Texas Brine seeks well logs are not adjacent to the property at issue.

The Court finds that Plaintiffs have failed to establish the relevance of the well logs. Plaintiffs do not appear to dispute Mr. Warneke's opinion that a core sample from the property at issue, and not from other parts of the same dome, would be needed for proper modeling. Dow suggested in its brief that Texas Brine conduct sampling of the property at issue and Texas Brine does not seem to refute this as an appropriate method to predict the quantity and quality of salt to be mined from the property.  Plaintiffs have presented nothing to indicate that the well logs of Dow's other wells would bear on the determination of the damages Plaintiffs allege they have suffered other than suggesting that more data is better. Moreover, the Court finds to the extent data from adjacent wells could have some relevance, Texas Brine has access to data from the wells it has operated adjacent to the property and Dow has or will be producing well logs for Dow #18, the only Dow well adjacent to the property. Because the sought after documents bear little to no relevance to the claims and defenses in this lawsuit, the Defendants shall not be required to undertake the burden of collecting them. And, as with the financial information sought, the Court finds this confidential information should not be produced where the relevance of the information is so tangential to the issues in the case. Accordingly, neither the financial information nor the well logs (other than the Dow #18 well logs) shall be compelled at this time. Plaintiffs' Motion to Compel is DENIED.

Conclusion

For the foregoing reasons, Defendants' Motion to Compel (Rec. Doc. 116) is DENIED as to the request that  Plaintiffs produce a Rule 26(a)(2)(B) expert report for Wayne Sneed and Plaintiffs Motion to Compel (Rec. Doc. 126) is DENIED.

New Orleans, Louisiana, this 7th day of November, 2017.

Janis van Meerveld
United States Magistrate Judge