UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| TEXAS BRINE COMPANY, LLC, ET AL. | * | CIVIL ACTION NO. 15-1102 |
| | * | c/w No. 15-3324 |
| | * | |
| VERSUS | * | SECTION: "N"(1) |
| | * | |
| DOW CHEMICAL COMPANY, ET AL. | * | JUDGE KURT D. ENGELHARDT |
| | * | |
| | * | MAGISTRATE JUDGE |
| *Applies to all cases* | | JANIS VAN MEERVELD |
| ************************************ | * | |

ORDER AND REASONS

On November 1, 2017, the Court ordered certain documents be produced for *in camera* review to determine whether such documents were properly designated as privileged. In conjunction with their *in camera* submission, Plaintiffs revised their privilege log and filed a Motion to Maintain Privilege over Documents Produced *in camera*. (Rec. Doc. 165). For the following reasons, the Motion to Maintain Privilege is GRANTED in part and DENIED in part.

Background

This lawsuit concerns the alleged encroachment of a solution mining cavern (known as Dow #18) onto property that was owned by plaintiff Texas Brine Company, LLC ("Texas Brine"), and is now owned by plaintiff Louisiana Salt, LLC ("Louisiana Salt" and with Texas Brine, the "Plaintiffs). Dow #18 is (or was during the relevant period) owned, operated and/or leased by the defendants The Dow Chemical Company, Dow Hydrocarbons & Resources, LLC, and Clifton Land Corporation (collectively, "Dow"). The Plaintiffs allege damages in excess of $100 million.

Several discovery issues came before this Court, including Dow's challenge to the Plaintiffs' privilege log entries. On November 1, 2017, this Court ordered certain privilege log entries were sufficient to determine that the documents were privileged, certain documents were clearly not privileged, some privilege log entries required further detail, and some documents over

1

which the Plaintiffs had asserted the attorney-client privilege should be produced to the Court for *in camera* review. This order addresses the last category of documents.

Law and Analysis

1. *Privileged Materials*

"[T]he attorney-client privilege protects communications made in confidence by a client to his lawyer for the purpose of obtaining legal advice." Hodges, Grant & Kaufmann v. U.S. Gov't, Dep't of the Treasury, I.R.S., 768 F.2d 719, 720 (5th Cir. 1985). The purpose of the privilege:

> is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice. The privilege recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client.

Upjohn Co. v. United States, 449 U.S. 383, 389 (1981). For a communication to be protected under the privilege, the proponent "must prove: (1) that he made a *confidential* communication; (2) to a lawyer or his subordinate; (3) for the primary purpose of securing either a legal opinion or legal services, or assistance in some legal proceeding." United States v. Robinson, 121 F.3d 971, 974 (5th Cir. 1997) (emphasis in original). Communications by the lawyer to the client are protected "if they would tend to disclose the client's confidential communications." Hodges, 768 F.2d at 720. "The burden of demonstrating the applicability of the privilege rests on the party who invokes it." Id.

Determining whether the primary purpose of a communication with an attorney was to provide or receive legal advice can be complicated when the communication involves in-house counsel because these attorneys may serve in multiple roles (including non-legal).[1]

---

[1] "[B]ecause in-house counsel has an increased level of participation in the day-to-day operations of the corporation, it is more difficult to define the scope of the privilege when a communication is made to in-house counsel." Stoffels v. SBC Commc'ns, Inc., 263 F.R.D. 406, 411 (W.D. Tex. 2009)).

"[C]ommunications by a corporation with its attorney, who at the time is acting solely in his capacity as a business advisor, [are not] privileged, nor are documents sent from one corporate officer to another merely because a copy is also sent to counsel." Equal Employment Opportunity Comm'n v. BDO USA, L.L.P., No. 16-20314, 2017 WL 5494237, at *4 (5th Cir. Nov. 16, 2017). (citations and quotations omitted). Further, "a document that simply transmits a document to other individuals without more does not garner the protection of the attorney-client or work product privilege." Freeport-McMoran Sulphur, LLC v. Mike Mullen Energy Equip. Res., Inc., No. CIV.A. 03-1496, 2004 WL 1299042, at *6 (E.D. La. June 4, 2004).

> The test for the application of the attorney-client privilege to communications with legal counsel in which a mixture of services are sought is whether counsel was participating in the communications primarily for the purpose of rendering legal advice or assistance. Therefore, merely because a legal issue can be identified that relates to on-going communications does not justify shielding them from discovery. The lawyer's role as a lawyer must be primary to her participation.

In re Vioxx Prod. Liab. Litig., 501 F. Supp. 2d 789, 798 (E.D. La. 2007) (quoting Special Master's Report).

The work-product doctrine protects from discovery documents and tangible things "prepared by an attorney 'acting for his client in anticipation of litigation.'" United States v. Nobles, 422 U.S. 225, 238 (1975) (quoting Hickman v. Taylor, 329 U.S. 495, 508 (1947)). Codified at Federal Rule of Civil Procedure 26(b)(3), the work-product protection extends to materials prepared by the party itself and representatives other than attorneys. The protection "can apply where litigation is not imminent, 'as long as the primary motivating purpose behind the creation of the document was to aid in possible future litigation.'" In re Kaiser Aluminum & Chem. Co., 214 F.3d 586, 593 (5th Cir. 2000) (quoting United States v. El Paso Co., 682 F.2d 530, 542 (5th Cir. 1982)). "At its core, the work-product doctrine shelters the mental processes of the

attorney, providing a privileged area within which he can analyze and prepare his client's case." United States v. Campos, 20 F.3d 1171 (5th Cir. 1994) (quoting Nobles, 422 U.S. at 238) (alteration omitted).

   *2. Texas Brine Documents*

The documents submitted for *in camera* review are communications involving in house counsel. The Court finds that the following entries are properly designated as protected by the attorney-client privilege: 45, 477, 577, 595, 597, 633, and 641. The remainder, however, are not protected.

The following are not privileged because they merely forward information from a non-attorney to an in-house attorney and there is no indication that legal advice is being sought: 312 and 673. Document 3 and 674 are not privileged for similar reasons. Each of these emails is actually between two non-attorneys (in the case of document 674, it is not even clear if the recipient, Joel Miller, is employed by Texas Brine because the domain of his email address is "cox-internet"). Each 674 and 3 is an email that forwards an earlier email that was sent by a non-attorney to an in-house attorney. The underlying email in each case is not privileged because there is no indication that legal advice is being sought.

The following are not privileged because although they include in-house counsel as a co-recipient along with at least one other individual, the communications do not seek legal advice: 60, 133, 138, 191, 292, 299, 312, 356, 378, 443, 463, 479, 584, 586, 590, 607, 609, 617, 622, 628, 644 and 645. More specifically, documents 60, 479, 609, and 645 merely discuss the name of certain wells. Asking an in-house attorney what name has been chosen for a well does not seem to amount to a request for the attorney's legal advice. Documents 133, 138, 191, and 299 discuss well layouts and while these emails may implicate the application of certain regulations, it is clear that

4

these emails are between and among employees providing their business and/or technical expertise. There is no indication of any legal advice sought or provided. Similarly, documents 584 and 674 are not privileged. These emails involve discussions regarding property boundaries. They are made between individuals providing technical expertise and there is no indication that legal advice has been sought or provided, let alone that the primary purpose of the communication is to obtain legal advice. Document 443 is not privileged because it is a document prepared by a non-lawyer and sent to a non-lawyer with no indication that legal advice has been sought even though in- house counsel is included as a recipient. Documents 356, 378, 622, and 644, are not privileged because although they discuss the status of obtaining encroachment waivers from neighboring property owners, which could involve legal issues, there is no indication that the communication itself was made for the purpose of obtaining legal advice.

Nor can it be said that any of these communications amount to some type of assistance with a legal proceeding. For each of the aforementioned emails, Plaintiffs assert that the email was "in anticipation of potential administrative enforcement action from LADNR or suit from or against adjoining property owner." The court notes that Plaintiffs have not taken the position that the work product protection is applicable to any of these documents. The Plaintiffs' rather generic reference to the possibility of some kind of unspecified legal or regulatory action is not enough to convert an email between non-lawyers that merely copies an in house attorney and discusses technical and business matters into a privileged communication. Plaintiffs do not claim, for example, that the email communications present technical information that was requested by counsel for the purpose of conducting a confidential legal investigation.[2] The Court notes that this

---

[2] For example, in Upjohn, the Supreme Court found that communications between non-management employees and counsel were protected attorney-client communications where the information was provided in order for the corporation to secure legal advice during an internal investigation, the employees knew this was the purpose, and the communications were considered highly confidential. 449 U.S. at 394-95.

is not Plaintiffs' first attempt at a privilege log. To the extent the aforementioned technical emails between non-attorneys implicated a specific legal investigation or analysis and a specific request of counsel, Plaintiffs have not used their revised privilege log to explain that to the Court. Nor have any affidavits or other evidence been submitted.

Documents 292, 463, 586, 590, 607, 617, and 628 are not privileged because they summarize meetings with representatives of Axiall or Dow. Some also include thoughts by non-lawyer employees regarding next steps. None of the emails provide or request legal advice. Further, in summarizing a meeting with an outside party, most do not even include information that is confidential to the Plaintiffs' company. Document 605 is similar to the above email summaries, although the Court has found that this email contains some notes that should be redacted as privileged. The Court will provide a redacted copy of this document to counsel for the Plaintiffs by email for inclusion in their production to Dow.

## Conclusion

For the foregoing reasons, the Motion to Maintain Privilege over Documents Produced *in camera* (Rec. Doc. 165) is GRANTED in part and DENIED in part. Privilege log entries 45, 477, 577, 595, 597, 633, and 641 are privileged and shall not be subject to disclosure. Privilege log entries 3, 60, 133, 138, 191, 292, 299, 312, 356, 378, 443, 463, 479, 584, 586, 590, 607, 609, 617, 622, 628, 644, 645, 673, and 674, are not protected by the attorney-client privilege and shall be produced within 7 days. Document 605 shall be produced in its redacted form within 7 days.

New Orleans, Louisiana, this 21st day of November, 2017.

                                                Janis van Meerveld
                                     United States Magistrate Judge