UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| TEXAS BRINE COMPANY, LLC, ET AL. | * | CIVIL ACTION NO. 15-1102 |
| | * | C/W 15-3325 |
| VERSUS | * | SECTION: "N"(1) |
| DOW CHEMICAL COMPANY, ET AL. | * | JUDGE KURT D. ENGELHARDT |
| | * | |
| | * | MAGISTRATE JUDGE |
| *Applies to all cases* | | JANIS VAN MEERVELD |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\* *

ORDER AND REASONS

Before the Court is the Motion for Protective Order filed by defendants the Dow Chemical Company and Dow Hydrocarbons & Resources, LLC ("Dow") and Clifton Land Corporation ("Clifton" and with Dow, "Defendants"). (Rec. Doc. 264). For the following reasons, the Motion is GRANTED in part and taken under submission in part, pending further briefing and in camera review of DOW_TBC180130-180133 as further provided herein.

Background

In this lawsuit, Plaintiff Texas Brine Co. ("Texas Brine") alleges that solution mining cavern Well Serial # 971667 located in Assumption Parish, Louisiana ("Dow # 18") has encroached onto or within one foot of property owned by Texas Brine at the time of filing suit and now owned by plaintiff Louisiana Salt, LLC ("Louisiana Salt" and with Texas Brine, the "Plaintiffs"). During the relevant time period, Dow # 18 was operated by Dow, and owned by Clifton. Texas Brine alleges that as a result of the encroachment, Defendants have mined salt belonging to Texas Brine and they have deprived Texas Brine of its ability to operate solution mining operations as close to its property line as it otherwise would have been able to do.

1

Texas Brine filed this lawsuit on April 7, 2016 (Rec. Doc. 1), it filed its First Amended Complaint (Rec. Doc. 5) on August 7, 2015, it filed its Second Amended Complaint (Rec. Doc. 55) on July 1, 2016, and it filed its Third Amended Complaint on February 9, 2017, joining Louisiana Salt as a plaintiff. The Plaintiffs seek damages as well as injunctive relief prohibiting Dow from further operation of Dow #18. Trial is currently set to begin on March 26, 2018.

<u>Discovery Issue</u>

On November 8, 2017, this Court denied a Motion to Compel filed by the Plaintiffs seeking to compel Dow to amend its responses to Plaintiffs' Requests for Production 78 through 88, which concerned certain financial and mining records that Plaintiffs argued were relevant to their damages model. The Court was not convinced by this argument, finding instead that there was "no basis for discovery of Dow's financial information." (Rec. Doc. 162, at 8). Plaintiffs appealed this ruling to the District Judge. The District Judge overruled their objections on January 22, 2018. (Rec. Doc. 299).

Defendants have filed the present Motion for Protective Order because they say that Plaintiffs have served additional discovery requests that seek information this Court has already ruled is irrelevant to the issues in this case. Plaintiffs respond that some of the information is relevant to their negligence claims under Louisiana Civil Code Article 667. Under that article, "if the work [a landowner] makes on his estate deprives his neighbor of enjoyment or causes damage to him, he is answerable for damages only upon a showing that he knew or, in the exercise of reasonable care, should have known that his works would cause damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care." La. Civ. Code art. 667. Plaintiffs argue that other requests are relevant to their damages model, but are not encompassed by the Court's November 8, 2017, Order. Oral Argument

was held on January 19, 2018. Below, the Court summarizes the rulings made in open Court and addresses the issues taken under submission.

## Law and Analysis

1. *Scope of Discovery*

The Federal Rules of Civil Procedure provide that "parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. Proc. 26(b)(1). Of note, with the 2015 amendment to Rule 26, it is now clear that "[i]nformation within this scope of discovery need not be admissible in evidence to be discoverable." Id. In assessing proportionality of discovery, the following should be considered: "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Id. The advisory committee comments to the 2015 amendment to Rule 26 make clear that the parties and the court have a collective responsibility to ensure that discovery is proportional. The party claiming it would suffer an undue burden or expense is typically in the best position to explain why, while the party claiming the information sought is important to resolve the issues in the case should be able "to explain the ways in which the underlying information bears on the issues as that party understands them." Id. advisory committee comments to 2015 amendment. "The court's responsibility, using all the information provided by the parties, is to consider these and all the other factors in reaching a case-specific determination of the appropriate scope of discovery." Id.

Rule 26(c) provides that the Court "may, for good cause," protect a party from "annoyance, embarrassment, oppression, or undue burden or expense" by issuing an order "forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters." Fed. R. Civ. Proc. 26(c)(1)(D).

2. *Plaintiffs' Discovery Requests*

   a. <u>RFP 63 - Geomechanical Studies</u>

Plaintiffs' Request for Production 63 asks for all documents "reflecting or related to geomechanical studies and/or geomechanical analyses conducted of solution-mining caverns owned or operated by Dow on the Napoleonville salt dome." Defendants insist that, except for documents related to Dow # 18, the requested documents are irrelevant to the issues in this case, just as the other well information has already been found outside the scope of discovery. Dow's other wells are not adjacent to the property at issue.

Plaintiffs' memorandum in opposition did not address Request for Production 63. The Court finds that any opposition to Defendants' motion as to this request has been waived. Moreover, the Court finds unavailing the argument raised by counsel at oral argument—that studies and analysis of other caverns are relevant to what Dow knew or should have known about the possibility of the damages allegedly caused by its operations at Dow # 18. As ruled by the Court at oral argument on January 19, 2018, the Court has found good cause to order that Defendants not be required to provide the requested geomechanical data except as to Dow # 18.

   b. <u>RFP 94 – Dow's Response to Gulf South Cavern Failure</u>

In Request for Production 94, Plaintiffs ask for "all reports, communications, or other Documents generated in connection with any root cause analyses and/or root cause investigations ("RCI") undertaken in response to the Gulf South cavern failure." Defendants explain that the

"Gulf South cavern failure" refers to a 2003 natural gas leak from two Dow caverns, which were being leased and operated by Gulf South Pipeline, L.P. ("Gulf South") to store natural gas. The caverns are not adjacent to the property at issue here. Dow #18 was not involved. Defendants say the requested information is irrelevant. They add that much of the information sought is publically available because of LDNR's involvement.

Plaintiffs respond that Request for Production 94 seeks information that is relevant to their Article 667 claim because if Dow's RCI into the Gulf South cavern failure identified a causal factor that is similar to "inattentiveness to caverns" (which they say is the "negligence that occurred in the over-mining of the Dow 18"), then this would support their argument that Dow knew or should have known that mining of Dow #18 could cause harm to the Plaintiffs. They add that the magnitude of the failure is also important because it shows the magnitude of harm that results from inattentiveness.

In reply, Defendants say that the request is disproportionate to the needs of the case because it occurred long ago in 2003 and involved caverns that had been in storage service for at least ten years prior. Dow notes that its position has always been that operator Gulf South was responsible for the failure. Dow also argues that the documents are voluminous involving hundreds of thousands of documents exchanged.

The Court finds the sought after information is not relevant to the issues in this case. The 2003 incident does not appear to have any similarities to the incident here such that it would have put Dow on notice of the possibility of the harm allegedly suffered here. Given the volume of documents at issue, the request is not proportionate to the needs of the case. As ruled by the Court at oral argument, the Court the Court has found good cause to order that Defendants are not required to respond to Request for Production 94.

c. RFP 105 – Dow's Salt Stability Team Meeting Minutes from 2005-2010

In Request for Production 105, Plaintiffs seek "all spreadsheets and/or workbooks relating to [Salt Stability Team ("SST")] meetings in native format, including all tabs and hyperlinks or the spreadsheets and/or workbooks, for the years 2005-2010." Defendants explain that the SST meets weekly to discuss a wide range of issues related to 100-150 caverns owned or operated by Dow. Each meeting is documented with its own tab in an Excel workbook that is kept for each year of SST meetings. Defendants say that they have already searched all SST minutes for materials related in any way to Dow #18 and have produced, without redaction, all tabs/sheets that reference Dow #18. They say they have also produced all workbook tabs, all available "participation" tabs, and all available "action register" tabs.

Plaintiffs' opposition memorandum did not address Request for Production 105. The Court finds any opposition to Defendants motion as to Request for Production 105 has been waived. Moreover, as ruled at oral argument, the Court has found good cause to order that Dow's response to Request for Production 105 be limited to information related to Dow # 18.

d. RFP 106- Dow's Grand Bayou Operations Budget Documents

In Request for Production 106, Plaintiffs seek "all plant budgeting Documents for Dow's Grand Bayou operations for the years 2005-2010." Dow says they are working to produce redacted budget documents, which reference a sonar for Dow #18 being removed from the 2005 GBO budget for the brine expense cost center. They say there is no indication that any other sonars for Dow #18 were removed from any other budget documents.

Plaintiffs' opposition memorandum did not address Request for Production 106. At oral argument, Plaintiffs informed the Court that Defendants have not yet produced the information they reference above. As ruled at oral argument, the Court finds there is good cause to order that Dow's response to Request for Production 106 be limited to information related to Dow # 18. To the extent it has not already done so, it is further ordered that Dow shall complete production of such information within seven days.

   e. RFP 108- Dow's 2015 Transaction with Olin

In Request for Production 108, Plaintiffs seek "all Documents related to [Dow's] 2015 transaction with Olin regarding [Dow's] Grand Bayou operations ["GBO"], including, but not limited to, all contracts or agreements between [Dow] and Olin relating to operations at Grand Bayou." Dow argues that the request encompasses highly confidential information that is unrelated to the present litigation.

Plaintiffs say the requested information is relevant for several reasons. They say the transaction's due diligence documents would likely show disclosures related to the risks posed by Dow #18, which Plaintiffs say is probably why Dow #18 was not included in the transaction. Dow responds that Plaintiffs are merely attempting to manufacture relevance. They explain that the Dow-Olin transaction involved the sale of active solution-mining wells. Dow retained inactive solution-mining wells like Dow #18.

Plaintiffs say the Dow-Olin transaction will likely show the caverns in which Olin was granted an interest and salt reserve information for those caverns. Plaintiffs insist this is important because this information could ultimately counter Dow's anticipated argument that the future demand for the salt on Plaintiffs' property is speculative. To get to this conclusion, Plaintiffs say that Olin is a potential customer of Plaintiffs on the property at issue in this litigation and if Olin

acquired rights in a limited number of caverns and has only limited reserves, then this would tend to show that Olin would need to locate wells on Plaintiffs' property sooner rather than later. This, Plaintiffs claim, is relevant to proving their damages.

Defendants respond that Plaintiffs' argument assumes that Olin and Plaintiffs have the only salt reserves on the Dome, but this is not true because another company has submitted permits for two new Occidental wells on the Dome. Defendants also note that Plaintiffs already know the identity of the wells involved in the transaction. Defendants insist that salt reserve information is highly confidential because it heavily affects a company's overall cost of manufacturing and sustainability. Knowledge of Olin's salt reserves, Defendants say, would give Plaintiffs an advantage in negotiations with this "potential customer." At oral argument, Defendants' counsel explained that Plaintiffs' request seems to be a follow up to Defendants' discovery requests seeking to understand the evidence Plaintiffs have to back up their expert's claim regarding demand. Counsel argued that such a request does not make the same information in the Defendants' possession relevant.

Plaintiffs also argue that if Dow and Olin negotiated Dow's supply of salt to Olin based on market rates, this information would be relevant to Plaintiffs' claim for lost profits. Plaintiffs point out that with respect to Olin, Dow has a similar business model as Texas Brine in that they both supply brine to a customer for profit. Dow insists that its business model remains different.

Plaintiffs' request for all documents related to the Dow-Olin transaction is overly broad and extends to irrelevant and highly confidential information. With regards to the evidence of Olin's reserves, as discussed further in section g below, the Court has already found this information too tangentially relevant to justify the burden of production. The issue of reserves was

also addressed by this Court's November 7, 2018, order,[1] and Plaintiffs have presented no basis for relevance that causes the Court to reconsider its decision there. The Court rejects Plaintiffs' suggestion that because the Dow and Olin transaction included Dow taking on the role of operator supplying brine to Olin, this means that the Dow and Olin arrangement provides evidence relevant to the potential market for Texas Brine's services. This aspect of the transaction is just one part of the entire deal rendering the argument that Dow now has a similar business model to Texas Brine unconvincing. Moreover, it is unclear how Dow or Olin's analysis of the market (if such information even exists) would be relevant to Plaintiff's burden to prove their claims regarding the existing market. With regards to the possibility that the transaction documents might contain some information regarding Dow's assessment of the risks involved with the Dow #18 well, Plaintiffs' request is the kind of fishing expedition this Court must guard against. To the extent such a document would even bear relevance to the issues in this case, there is no reasonable basis to suspect that any such documents exist. The Court finds good cause to limit Dow's disclosure of the Dow-Olin transaction documents. It is ordered that Dow shall not be required to provide a response to Request for Production 108.

      f.   <u>RFP 110 – Mining Plans for Napoleonville Salt Dome</u>

Request for Production 110 seeks "all mining plans prepared by or for [Dow] for any solution mining wells owned or operated by [Dow] on the Napoleonville Salt Dome since the year 2005." Plaintiffs say this request is relevant to their Article 667 claims because if Plaintiffs could show that Dow had a mining plan for wells other that Dow #18, it would indicate Dow was deviating from a standard of care it followed in other instances. Plaintiffs say that Dow testified

---

[1] Request for Production 78 asked for "all documents demonstrating Dow's internal expectation and/or reserve expectation for brine production of each well drilled by or for Dow on the Napoleonville salt dome." (Rec. Doc 126-2). Along with Requests for Production 79-88, the Court denied Plaintiffs motion to compel a response to Request for Production 78. (Rec. Doc. 162).

that its objective is to have a documented mining plan for each cavern. At oral argument, Plaintiffs expanded this argument somewhat and argued than if other mining plans advise against top injection (which they seem to argue was a procedure that Dow negligently employed at Dow #18), this is relevant because it would reflect Dow's knowledge of the riskiness of using this procedure.

Defendants respond that Dow did have a mining plan for Dow #18 (by which Dow seems to refer to a general mining plan). Dow also argues that the testimony about Dow's objective of having a mining plan in place for each cavern was taken out of context because it involved a 2005 document stating that the mining plan should be planned in advance. But Dow points out that Dow #18 was drilled long before that in 1986. Dow says that Plaintiffs actually want the mining plans to support their damages model and further, that the mining plans are highly technical, proprietary, and confidential. At oral argument, Dow elaborated that the mining plans would contain the type of information about other wells that the Court has ruled would be irrelevant to Plaintiffs' claim for damages.

The Court finds that Plaintiffs' Request for Production 110 is overly broad. Although it appears that Dow #18 was drilled between 1986 and 2010, Plaintiffs argue that a 2005 policy requiring a well specific mining plan prior to beginning work should have resulted in a well specific mining plan for Dow # 18. At oral argument, Plaintiffs insisted that mining plans after 2010 were relevant because Dow should have been revising its methods. But it remains unclear to the Court what such plans could show in terms of Dow's knowledge at the time it operated Dow #18 before 2010. Nor is it clear why mining plans of other wells implicated by the 2005 policy (that is, drilled after such date), would indicate that Dow was negligent in not having a similar mining plan for Dow #18 when drilling began in 1986. The argument raised by Plaintiffs at oral argument—that information in the other mining plans might indicate a policy against using the

10

same procedures that Dow actually did use after 2005 when drilling Dow #18—is considered waived because it was not raised in the opposition memorandum. Moreover, the Court finds this basis for relevance of the sought after mining plans almost as tenuous as that advocated in Plaintiffs' brief.

Because the Court finds the mining plans of other wells are irrelevant to the issues raised by this matter, the Court finds good cause to limit disclosure of Dow's mining plans to those related to Dow #18. Accordingly, it is ordered that Dow's response to Request for Production 110 shall be limited to those responsive documents that relate to Dow #18.

g. RFPs 111-114 -- Salt Reserve Estimates

Request for Production 111 seeks "all salt reserve estimates prepared by or for [Dow] for any solution mining wells owned or operated by [Dow] on the Napoleonville Salt Dome since the year 2005." Request for Production 112 seeks all salt reserve estimates provided by Dow to prospective or current customers for the same wells and time period. Request for Production 113 seeks salt reserve estimates provided to prospective or current customers for solution mining wells Dow plans to drill in the future on the Napoleonville Salt Dome. And Request for Production 114 seeks all documents relating to salt reserves on Dow's property on the Napoleonville Salt Dome, including the number and location of future wells. Dow says the requests are unduly burdensome and irrelevant.

Plaintiffs say the information sought is relevant to their claim for lost profits because they plan to show that a new brine well must be drilled every other year to keep pace with current demand. They say that if Defendants' reserve estimates reveal that its caverns are near exhaustion, this would indicate that new replacement wells need to be drilled in the near future to meet market demand. They point to Defendants' counsel's questioning of Wayne Sneed, Texas United

11

Corporations' President and CEO. They say because counsel asked Sneed if he knew what Olin's reserves are, Defendants "know the reserve estimates support Plaintiffs' claim for damages."

Plaintiffs say their request for all documents relating to salt reserves, including the number and location of future wells, is also relevant to their claim for lost profits. Plaintiffs take the position that the new brine wells that must be drilled every other year to keep pace with demand would need to be drilled on Plaintiffs' property. They say they need to know the number and location of Dow's future wells to determine whether space is available for additional wells on Defendant's property or whether Defendants would need to drill the wells elsewhere such as Plaintiffs' property.

In reply, Defendants insist that the information sought is highly confidential. They say that Request for Production 114 seeks information about Olin's salt reserves and potential future wells since Dow spun off its solution-mining operations on the Napoleonville Salt Dome to Olin. As argued above, Dow says Plaintiffs would have an unfair advantage in negotiations with Olin if they obtained the salt reserve information.

The Court finds that Requests for Production 111-114 seek irrelevant information. The evidence of Olin's salt reserves is of tangential relevance to Plaintiffs' lost profit claim. To get from the reserves of one of several companies operating on the Napoleonville Salt Dome, which is one salt dome of several in the state of Louisiana, which is one of any number of salt domes in the region, to market demand for brine from the Plaintiffs' property is such a stretch the Court can barely make sense of it. In light of this, the Court finds the burden of production is disproportionate to any possible relevance of the sought after salt reserves. Further, the disclosure of Olin's reserve information would give Plaintiffs a commercial advantage in negotiating with Olin that they would

not have had without this litigation.[2] Accordingly, the Court finds good cause to limit disclosure of the requested salt reserve information. It is ordered that Dow shall not be required to provide responsive documents to Request for Production 111 through 114.

    h. RFPs 115-17 – Brine Demand

Requests for Production 115 through 117 seek documents relating to Dow's current and future brine demands and Dow's future wells all on the Napoleonville Sale Dome. Plaintiffs did not address these requests for production for documents in their opposition memorandum so any opposition to Defendants' motion as to these requests is deemed waived. Moreover, the Court finds unavailing the Plaintiffs argument at oral argument that Dow's brine demands are relevant to either their lost profit claim or their rebuttal to Dow's argument that Plaintiffs have no data to back up their claims regarding high demand. The Court finds there is good cause to order that Dow not be required to provide further responses to Requests for Production 115 through 117.

    i. RFPs 118-19 – Solution Mining to Hydrocarbon Storage Transition

Requests for Production 118 through 119 seek documents analyzing whether a solution mining well is suitable for hydrocarbon storage service after salt reserves are exhausted and Dow's policies and procedures for transitioning a solution mining well into hydrocarbon storage service. Plaintiffs' opposition memorandum did not address Requests for Production 118 through 119. Moreover, the Court cannot agree with Plaintiffs' attempt to explain relevance at oral argument by arguing that Dow's documents regarding transitioning wells to hydrocarbon storage might reflect their allegedly unsafe operations on Dow # 18 because Dow # 18 has not been transitioned to hydrocarbon storage, which Plaintiffs believe is because it would be unsafe to do so. As ruled at

---

[2] The Court notes that at oral argument the parties considered an "attorney's eyes only" disclosure, but determined it would probably not be possible here because the experts with whom Plaintiffs would expect to share the information are internal to the companies.

13

oral argument, the Court finds good cause to reject disclosure of the hydrocarbon storage transition documents because production is disproportionate to the needs of the case.

  j. <u>RFPs 121-24 – Drilling Permits</u>

Request for Production 121 seeks documents discussing Dow's actual or potential problems obtaining permits from LDNR from May 1, 2012, to the present. Request for Production 122 seeks documents discussing the likelihood that LDNR would approve a permit for Dow to drill or operate a solution mining cavern from May 1, 2012, through the present. Request for Production 123 seeks documents discussing Dow's actual or perceived problems obtaining permits from LDNR for the Napoleonville Salt Dome from May 1, 2012 to the present. Request for Production 124 seeks documents discussing the likelihood that LDNR would approve a permit for Dow to drill or operate a solution mining cavern on the Napoleonville Salt Dome from May 1, 2012, to the present.

Plaintiffs say this information is relevant to their claim for lost profits "because permits are necessary to drill a well." They say that if Dow has been able to obtain permits, it weakens Dow's claim that Plaintiffs' damages are speculative because LDNR has been reluctant to issue permits since the sinkhole occurred. They argue that if Dow has encountered the same problems obtaining permits before and after the sinkhole, it cannot argue that it is unlikely LDNR will issue the Plaintiffs a permit in the future.

In reply, Defendants say that they do not claim that LDNR has been reluctant to issue permits since the Bayou Corne sinkhole. Instead, they contend that Texas Brine may have issues obtaining permits from the LDNR because it was found 35% at fault for the formation of the sinkhole. They say that Dow's ability to obtain permits is irrelevant to this argument.

The Court cannot find that Dow's analysis of its ability to obtain permits is relevant to Plaintiffs' claim for damages. As ruled at oral argument, the Court finds good cause to reject disclosure of documents sought by request for Production 121 through 124.

k. RFP 126 – Dow's Ability to Obtain Customers

In Request for Production 126, Plaintiffs seek documents from January 1, 2012, to the present discussing Dow's ability to obtain customers for brine extracted from the Napoleonville Salt Dome. Dow explains that this information is irrelevant. They point out that prior to 2015, its own Plaquemine, Louisiana facility was its primary customer for brine operations on the Napoleonville Salt Dome and after the Olin transaction, Dow merely operates and maintains three active solution mining wells (now owned by Olin) on the Napoleonville Salt Dome. Thus, they say, they are not in the market of obtaining customers for brine.

Plaintiffs confirmed at oral argument that they do not oppose Dow's Motion as to Request for Production 126. As ruled at oral argument, the Court finds good cause to order that Dow not be required to provide further responses to Request for Production 126.

l. Redactions

Defendants also seek a protective order regarding certain redactions they have made to documents produced to the Plaintiffs. It appears they have redacted information that is not related to Dow #18. Plaintiffs oppose, arguing that Defendants cannot redact information on the basis of relevance. They point out that Defendants have not claimed a privilege over the redacted information and have not provided a privilege log for the redacted information. Plaintiffs submit that numerous federal courts have found redactions on the grounds of relevance to be inappropriate. E.g., Neonatal Prod. Grp., Inc., v. Shields, No. 13-2601-DDC, 2015 WL 7078796, at *5 (D. Kan. Nov. 13, 2015) (disallowing redaction of confidential information that was

15

purportedly irrelevant in a document that the party had produced as responsive). As explained by a district court in Minnesota

> Redaction is an inappropriate tool for excluding alleged irrelevant information from documents that are otherwise responsive to a discovery request. It is a rare document that contains only relevant information. And irrelevant information within a document that contains relevant information may be highly useful to providing context for the relevant information.

Bartholomew v. Avalon Capital Grp., Inc., 278 F.R.D. 441, 451 (D. Minn. 2011) (footnote omitted).

In reply, Defendants do not appear to challenge the rule announced by the cases cited by the Plaintiffs. Instead, Defendants insist that their redaction is appropriate and analogous to Plaintiffs producing only portions of Mr. Slezak's notebook.

The first document at issue is labeled DOW_TBC180124-180135. This document is made up of an email, with an attached spreadsheet. The spreadsheet includes a section labeled GBO Brine Demand, with a row for each of 14 wells and columns for the years 2010 through 2020. Except for the Dow #18 row, each row of this sheet is redacted, along with rows that appear to calculate totals and forecasts at an aggregate level. It also contains a sheet with columns for sonar date, sonar volume, and data regarding diameter mined and planned. Again, the rows for wells other than Dow #18 are redacted. There are also four pages that are completely redacted -- DOW_TBC180130-180133. It is not clear what they contain. The emails included in the document set have not been redacted. The Court finds the redaction of DOW_TBC180124-180129 and DOW_TBC180134-180135 appropriate. On these documents, the redaction of data relative to other wells does not impede the reader's ability to understand the relevant Dow #18 data. The emails describing the attachment are unredacted and the headings for each column are visible. As such, the redacted information is not useful or necessary to providing context for the relevant

information. While redactions for relevance may be disfavored in the law, they are appropriate here, particularly since the Court has already ruled that confidential well information for anything other than Dow #18 does not have to be produced. (Rec. Doc. 162, at 8-9). Plaintiffs should not be able to circumvent this ruling simply because that confidential data happens to appear on the same spreadsheet as Dow #18 data. Plaintiffs have no need for, or right to, the redacted data contained in DOW_TBC180124-180129 and DOW_TBC180134-180135. The redacted information is both confidential and irrelevant, and there is good cause to protect Dow from disclosing it.

With regard to DOW_TBC180130-180133, however, the Court is unable to determine what these documents are. They are not in landscape orientation like the well data spreadsheets, and no description is provided. No later than Friday, February 2, 2018, Defendants are to provide a description of what was contained in those redacted pages and the basis for redaction by filing a supplemental memorandum of no more than 5 pages. By that date, Defendants shall also deliver to the Court an unredacted copy of DOW_TBC180130-180133 by email to efile-vanmeerveld@laed.uscourts.gov. To the extent the Plaintiffs wish to challenge the appropriateness of the redaction, they must do so by Tuesday, February 6, by filing a supplemental memorandum of no more than 5 pages.

The second document at issue is labeled DOW_TBC003092-003221. It is labeled Strategy Report and is a total of 130 pages. It appears to be a table with two columns, the first column shows the well name and the second column contains the narrative strategy. The column with the well name has not been redacted, but each page with rows pertaining to a well other than Dow #18 has the strategy section redacted. The Court finds that the redaction of DOW_TBC003092-003221 is also appropriate. The redaction is equivalent to producing only the relevant portions of a larger

document, or, in the analogy provided by Defendants, production of the relevant portion of a document, while withholding the remaining irrelevant portion, which was precisely the position Plaintiffs took regarding Dow's request for production of Matt Slezak's entire notebook, a withholding of which the Court approved. (Rec. Doc. 135). The fact that all pages of the document happen to be included in one spreadsheet, rather than a different spreadsheet for each well, does not amount to a selective redaction of irrelevant information as contemplated by the cases Plaintiffs cite. Importantly, here again, the information redacted does not affect the ability of Dow to understand the relevant information. The redacted information is both confidential and irrelevant, and there is good cause to protect Dow from disclosing it. Accordingly, it is ordered that Dow shall not be required to produce DOW_TBC003092-003221.

The third document at issue is labeled DOW_TBC185496-185763. These documents include approximately 12 emails and about 250 pages of attachments. The first attachment contains interface information for mining wells. The sheets with information regarding Dow #18 are included, but the sheets regarding other wells are redacted, except for column headings. The next attachment to another email appears to be information gathered by an employee for the Dow # 18 RCI. One of the sheets contains salt production by month for 2004 through 2007 and has wells other than Dow # 18 redacted. The remaining information in this attachment have not been redacted. The remaining attachments do not appear to contain redactions. The Court finds that DOW_TBC185496-185763 is appropriate. The redactions found in pages DOW_TBC185500-DOW_TBC185698 are similar to that of the strategy report above and are similarly appropriate. Accordingly, there is good cause to prohibit disclosure of the redacted information and the court orders that Dow is not required to produce DOW_TBC185500-DOW_TBC185698 in unredacted form. Furthermore, the redactions found on page DOW_TBC185705, which relate to salt

production for various wells from 2004 to 2007, are appropriate for the same reasons as stated in regard to DOW_TBC180124-180129, above.  It appears that the document just happened to capture salt production relating to wells other than Dow #18, as well as Dow #18.  Given that the salt production figures for wells other than Dow # 18 are irrelevant and confidential, this happenstance should not result in their production.

## Conclusion

For the foregoing reasons, the Motion is GRANTED in part and taken under submission in part, pending further briefing and in camera review of DOW_TBC180130-180133 as further provided herein.

New Orleans, Louisiana, this 31st day of January, 2018.

*Janis van Meerveld*
Janis van Meerveld
United States Magistrate Judge