# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| TEXAS BRINE COMPANY, LLC | CIVIL ACTION |
| VERSUS | NO.     15-1102 c/w<br>15-3324 |
| DOW CHEMICAL COMPANY, ET AL. | SECTION "N" (1) |

## ORDER AND REASONS

   Presently before the Court are two motions for partial summary judgment filed by

Defendants. *See* Rec. Docs. 200 and 207. Having carefully reviewed the parties' submissions, the

record in this matter, and applicable law, the Court rules on the motions as stated herein.

   (1) **IT IS ORDERED** that "Defendants' Motion for [Partial] Summary Judgment

Regarding No Cause of Action Pursuant to Cavern Spacing Regulations" (Rec. Doc. 200) is

**GRANTED** to the extent it seeks dismissal with prejudice of any claims asserted by Plaintiffs either

pursuant to, or premised upon, the restrictions set forth in Title 43, section 3315(B)(1) and (2) of the

Louisiana Administrative Code.[1] As urged by Defendants, those regulations establish substantive

spacing requirements that, given the absence of contrary legislative expression, apply only

---

   [1]  As stated in their reply memorandum, "Defendants do not suggest that plaintiffs are precluded from offering other evidence to establish that it was the solution-mining industry 'custom' not to operate a solution-mining well within 100 feet of a property boundary during the relevant time period." *See* Rec. Doc. 321 at p. 4 of 5 (emphasis added). As further suggested by Defendants, however, the subsequent enactment of § 3315(B), standing alone, is not sufficient to establish the existence of such a custom during the years the Dow 18 was actively mined.

prospectively, *i.e.* relative to conduct occurring on the effective date of the regulation and

thereafter.[2] Thus, because § 3315(B)(1)and (2) were not effective (or even promulgated) until years

after the Dow 18 mining operations ceased in 2010, the provisions cannot be applied retroactively

to determine or define the scope of Defendants' duties relative to those operations between 1986 and

September 2010.[3]

Consistent with these principles, moreover, it is evident, upon careful analysis, that

the spacing restrictions in § 3315(B)(1)(a) and (2), as a practical matter, only prospectively limit the

"*continued operation*" of existing solution-mining caverns, *i.e.* those permitted prior to the effective

date of the regulations.[4] That is, the restrictions in §3315(B)(1) and (2) relative to *pre-existing*

solution-mining caverns simply define the conditions under which those caverns may *thereafter*

---

[2]     *See* La. Civ. Code art 6;  *see also,  e.g., Sawicki v. K/S Stavanger Prince*, 802 So. 2d
598, 603-04 (La. 2001).

[3]     The regulations were promulgated in 2013 pursuant to legislation enacted the same
year. *See* 2013 La. Acts, Act 368 of the 2013 Regular Legislative Session (adding La. Rev. Stat.
3:40(M)); La. Admin Code. tit. 43, Pt XVII, § 3301, et seq.   The regulations became effective on
February 20, 2014. *See*  La. Admin. Code. tit. 43, Pt XVII, § 3301, et seq.

[4]     *See* La. Admin. Code. tit. 43, Pt XVII § 3315(B). *See also*  La. Admin. Code. tit. 43,
Pt XVII, § 3301 ("Existing Solution-Mining Well or Project – a well, salt cavern, or project
permitted to solution-mine prior to the effective date of these regulations."); *Id.* ("Active Cavern
Well – a solution-mining well that is actively being used, or capable of being used, to mine minerals,
including standby wells. The term does not include an inactive cavern well."); *Id.* ("Inactive Cavern
Well – a solution-mining well that is capable of being used to solution-mine minerals but is not
being so used, as evidenced by the filing of a written notice with the Office of Conservation in
accordance with §3309.I.3 and §3331"); *Id.*  at § 3315(B)(1) (restricting "[c]ontinued operation .
. . of an existing solution-mining cavern"); *Id.* at §:3315(B(2) (restricting "continued operation" of
"solution-mining caverns permitted prior to the effective date of these regulations"); *Id.* at § 3331
(establishing requirements for salt caverns without injection for one year and caverns for which the
operator is prepared to conclude mining activities).  Defendants have represented to the Court that
"Dow 18 is an inactive well that has not been operation since 2010 (i.e. for more than a year),[thus]
La Admin. Code §43:3331 governs Dow's responsibilities regarding Dow 18." *See* Rec. Doc. 200-2
at p. 11 of 14.

2

continue *ongoing* mining operations. Finally, because no triable issue of material fact has been shown to exist in Plaintiffs' favor relative to whether such post-February 2014 conduct has occurred here, the Court grants Defendants' motion for partial summary judgment as set forth above.

(2) Considering the legal principles previously discussed in the August 28, 2017 Order and Reasons (Rec. Doc. 111), **IT IS ORDERED** that "Defendants' Motion for Partial Summary Judgment on Prescription" (Rec. Doc. 207 ) is **DENIED** to the extent it seeks pre-trial dismissal, on grounds of timeliness, of Plaintiffs' claims premised upon the Dow 18 cavern's alleged subsurface extension *across* the dividing boundary *onto* Plaintiffs' southern adjacent property. Specifically, the Court is not convinced that Plaintiffs' alleged ability to ascertain the location of TBC's northern property line from documents in its possession, combined with Joel Warneke's March 26, 2014 observation that the July 2013 Ratigan map portrays the perimeter of the Dow 18 cavern as "very close/right on the TBC/Dow property line," were sufficient, as a matter of law, to commence the running of prescription more than one year prior to the April 7, 2015 filing date of this litigation.

In reaching this conclusion, the Court notes its additional receipt of evidence from the parties relative to prescription since its prior denial (Rec. Doc. 111) of Defendants' earlier prescription motion (Rec. Doc. 77). Nevertheless, given (1) TBC's understandable initial focus, in late March/early April 2014, on the cavern spacing regulations newly effective on February 20, 2014; (2) the notice requirement set forth in those regulations;[5] (3) the subsurface nature of the alleged trespass; (4) Plaintiffs' apparently undisputed lack of access to Dow's sonar surveys showing the Dow 18 cavern had actually crossed TBC's property line; (5) the acknowledged rate of error of

---

[5]     *See* La. Admin. Code. tit. 43, Pt XVII § 3315(B)(1)(a)(i).

the sonar surveys utilized by Joe Ratigan in preparing his July 2013 map; and (6) applicable legal principles governing prescription and summary judgment, the Court finds this particular issue appropriately left to determination by the trier of fact.

New Orleans, Louisiana, this 16th day of February 2018.

**KURT D. ENGELHARDT**
**UNITED STATES DISTRICT JUDGE**

**<u>Clerk to Copy:</u>**

Magistrate Judge Janis van Meerveld